**\*\* § 362 INFORMATION COVER SHEET \*\*†**

| Schulte Properties LLC | 18-12734-mkn | _____ |
|---|---|---|
| **Debtor(s)** | **Case No:** | **Motion #:** |

The Bank of New York Mellon f/k/a The Bank of New York        **Chapter:** 11
successor in interest to JP Morgan Chase Bank, N.A., successor
in interest to Bank One, National Association, as Trustee for
CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-27
**MOVANT**

```
    Certification of Attempt to Resolve the Matter without Court Action:

  Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been
  made to resolve the matter without court action, but movant has been unable to do so.


  Date:  August 17, 2018                    Signature:   Jason C. Kolbe, Esq.
                                                        Attorney for Movant
```

PROPERTY INVOLVED IN THIS MOTION: 509 Canyon Greens Drive, Las Vegas, NV 89144

NOTICE SERVED ON:        Debtor(s) ☒;        Debtor(s) Counsel ☒;        Trustee ☒

DATE OF SERVICE: August 17, 2018

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS:* | The EXTENT and PRIORITY of LIENS: |
| Movant: $1,366,435.19 | 1st _____ |
| Second Line: Stripped in previous bankruptcy | 2nd _____ |
| Third lien: UNKNOWN | 3rd _____ |
| Total Encumbrances: $1,366,435.19 | 4th _____ |
| APPRAISAL or OPINION as to VALUE: | Other: _____ |
| "Per Schedule "A" $2,085,740.00 | Total Encumbrances: $_____ |
|  | APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR:* | DEBTOR'S OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: $960,000.00 | |
| Interest Rate: 6.25% | |
| Duration: 30 Year | |
| Payment Per Month: $7,567.64 | |
| Date of Default: December 1, 2009 | |
| Amount of Contractual Arrearages: $810,497.97 | |
| Date of Notice of Default: May 8, 2009 | |
| SPECIAL CIRCUMSTANCES: **The undersigned hereby certifies that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than three (3) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.** | |
|  | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: Jason C. Kolbe, Esq. | SUBMITTED BY: _____ |
| SIGNATURE: /s/ Jason C. Kolbe, Esq. | SIGNATURE: |

* All amounts due to Movant as of July 31, 2018

**TIFFANY & BOSCO, P.A**
Jason C. Kolbe, Esq.
Nevada Bar No. 11624
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone:  702 258-8200
Fax:  702 258-8787
nvbk@tblaw.com
The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase
Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB Mortgage-
Backed Pass-Through Certificates, Series 2003-27
09-74063

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

## LAS VEGAS DIVISION

| In Re: | BK Case No.: 18-12734-mkn |
|---|---|
| Schulte Properties LLC | Date:  September 19, 2018<br>Time: 9:30 AM |
| | Chapter 11 |
| Debtor. | |

### MOTION FOR RELIEF FROM AUTOMATIC STAY AND IN REM RELIEF

The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan

Chase Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB

Mortgage-Backed Pass-Through Certificates, Series 2003-27, Secured Creditor herein, ("Secured

Creditor" or "Movant" hereinafter), hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief

from the automatic stay with respect to certain real property of the Debtor(s) having an address of 509

Canyon Greens Drive, Las Vegas, NV 89144 (the "Property").  In further support of this Motion,

Movant respectfully states: This Motion is supported by the attached Memorandum of Points and

Authorities, which is incorporated herein by this reference.

### MEMORANDUM OF POINTS AND AUTHORITIES

It is abundantly clear from the Debtor's repeated filings and lack of intent to complete their previous bankruptcy cases that the Debtor intends to file these cases to forestall Secured Creditor from pursuing its state law remedies against the Property.  Secured Creditor further requests the Court grant *in rem* relief pursuant to section 11 U.S.C. § 362(d)(4)(B), and the stay imposed under Rule 4001(a)(3), Fed. R. Bankr. P. be waived.

### I.    RELEVANT FACTS

1.      On or about May 5, 2003, William R. Schulte executed a Note secured by a Deed of Trust in the amount of $960,000.00 in which Secured Creditor became the beneficiary via Assignment of Deed of Trust.  Attached hereto as Exhibits "A", "B", and "C" are the properly endorsed Note, recorded Deed of Trust, and recorded Assignment of Deed of Trust relating to the subject Property. Movant is an entity entitled to enforce the Note and Deed of Trust.

2.      William R. Schulte executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust. Then the property was grant deeded to William R. Schulte and Melanie Schulte on or about May 13, 2003, please see attached hereto as Exhibit "D," incorporated herein by reference.

3.      There is no Loan Modification in process.

4.      On or about July 2, 2004, an unauthorized Grant, Bargain, Sale Deed was executed and Subsequently recorded on July 8, 2004, with the Clark County Recorder's Office whereby William R. Schulte and Melani Schulte, husband and wife as joint tenants with rights of survivorship, purported to transfer an interest in the Property to a William R. Schulte and Melani Schulte, Trustees of the William and Melani Schulte Trust, dated July 2, 2004 as a "gift," for no consideration. A copy of the unauthorized Grant, Bargain, Sale Deed is attached hereto as Exhibit "E," and incorporated herein by reference.

5.      On or about July 26, 2005, an unauthorized QuitClaim Deed was executed and subsequently recorded on August 1, 2005, with the Clark County Recorder's Office whereby William R. Schulte and Melani Schulte, Trustees of the William and Melani Schulte Trust, dated July 2, 2004, purported to transfer interest in the Property to a William R. Schulte and Melani Schulte, husband and wife, as joint tenants, as a "gift," for no consideration. A copy of the unauthorized QuitClaim Deed is attached hereto as Exhibit "F," and incorporated herein by reference.

6.      On or about July 26, 2005, an unauthorized QuitClaim Deed was executed and subsequently recorded on August 1, 2005, with the Clark County Recorder's Office whereby William R. Schulte, a spouse of the grantee purported to transfer an interest in the Property to a Melani Schulte, a married woman, as her sole and separate property, as a "gift," for no consideration. A copy of the unauthorized QuitClaim Deed is attached hereto as Exhibit "G," and incorporated herein by reference.

7.      On or about August 3, 2005, an unauthorized Grant, Bargain, Sale Deed was executed and subsequently recorded on August 4, 2005, with the Clark County Recorder's Office whereby Melani Schulte, a married woman, as her sole and separate property, purported to transfer an interest in the Property to a William R. Schulte and Melani Schulte, husband and wife, as joint tenants with right of survivorship, as a "gift," for no consideration. A copy of the unauthorized grant deed is attached hereto as Exhibit "H," and incorporated herein by reference.

8.      On or about August 3, 2005, an unauthorized Grant, Bargain, Sale Deed was executed and subsequently recorded on August 4, 2005, with the Clark County Recorder's Office whereby William R. Schulte and Melani Schulte, husband and wife, as joint tenants with right of survivorship, purported to transfer an interest in the Property to a William R. Schulte and Melani Schulte, Trustees of the William and Melani Schulte Trust, dated July 2, 2004, as a "gift," for no consideration. A copy of the unauthorized Grant, Bargain, Sale Deed is attached hereto as Exhibit "I," and incorporated herein by reference.

9.      On or about October 26, 2011, an unauthorized Grant, Bargain, Sale Deed was executed

and subsequently recorded on October 26, 2011, with the Clark County Recorder's Office whereby William R. Schulte and Melani Schulte, Trustees of the William and Melani Schulte Trust, dated July 2, 2004, purported to transfer an interest in the Property to a William R. Schulte and Melani Schulte, husband and wife, as Joint Tenants, with right of survivorship, as a "gift," for no consideration. A copy of the unauthorized Grant, Bargain, Sale Deed is attached hereto as Exhibit "J," and incorporated herein by reference.

10.     On or about August 16, 2013, an unauthorized Grant, Bargain, Sale Deed was executed and subsequently recorded on August 21, 2013, with the Clark County Recorder's Office whereby William R. Schulte and Melani Schulte, husband and wife, as Joint Tenants with right of survivorship, purported to transfer an interest in the Property to a Melani Schulte, a single unmarried woman, as her sole and separate property, as a "gift," for no consideration. A copy of the unauthorized Grant, Bargain, Sale Deed is attached hereto as Exhibit "K," and incorporated herein by reference.

11.     On or about June 10, 2015, an unauthorized Grant, Bargain, Sale Deed was executed and subsequently recorded on June 18, 2015, with the Clark County Recorder's Office whereby Melani Schulte, a single unmarried woman, as her sole and separate property, purported to transfer an interest in the Property to a Melani Schulte, Trustee of the Melani Schulte Living Trust Dated December 30, 2013, as a "gift," for no consideration. A copy of the unauthorized Grant, Bargain, Sale Deed is attached hereto as Exhibit "L," and incorporated herein by reference.

12.     On or about April 6, 2018, an unauthorized Grant, Bargain, Sale Deed was executed and subsequently recorded on April 6, 2018, with the Clark County Recorder's Office whereby Melani Schulte, Trustee of the Melani Schulte Living Trust Dated December 30, 2013, purported to transfer an interest in the Property to a Schulte Properties LLC, a Nevada Limited Liability Company. A copy of the unauthorized Grant, Bargain, Sale Deed is attached hereto as Exhibit "M," and incorporated herein by reference.

13.     On June 8, 2009, William R. and Melani Schulte filed their first voluntary petition

seeking protection under Chapter 7 of the Bankruptcy Code in the District of Nevada (Bankruptcy Case 09-19658-BAM) (the "First Case").

14.    On August 4, 2009, the First Case was dismissed for failure to file information.

15.    On October 11, 2009, William R. and Melani Schulte filed their second voluntary petition seeking protection under Chapter 11, of the Bankruptcy Code in the District of Nevada (Bankruptcy Case No: 09-29123-MKN) (the "Second Case").

16.    On December 15, 2015, the Second Case was discharged.

17.    On May 31, 2017, Schulte Properties, LLC filed their third voluntary petition seeking protection under Chapter 11 of the Bankruptcy Code in the District of Nevada (Las Vegas) (Bankruptcy Case No: 17-12883-MKN) (the "Third Case").

18.    On January 16, 2018, the Third Case was dismissed for other reasons.

19.    On May 10, 2018, Schulte Properties, LLC filed their fourth voluntary petition seeking bankruptcy protection under Chapter 11of the Bankruptcy Code in the District of Nevada (Bankruptcy Case No: 18-12734-MKN) (the "Fourth Case").

## II.    LEGAL ARGUMENT

### A.  Relief From Stay Pursuant to 11 U.S.C. § 362(d)(1) and (2) is Warranted.

Secured Creditor requests that the Court enter an Order terminating the automatic stay as to this Secured Creditor.  This loan is contractually due for 01/01/2013.  Bankruptcy Code Sections 362(d)(1) and (2) provide as follows:

**(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
(2) with respect to a stay of an act against property under subsection (a) of this section, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization;

This loan is contractually due for December 1, 2009, and as of July 31, 2018 has $810,956.79 in monthly payment arrears, less $5,458.82 suspense for total monthly payments due of $805,497.97. Although the majority of the arrears are pre-petition delinquency, it is important to note the Borrower has been in and out of bankruptcy four times since June 8, 2009, in an obvious attempt to avoid foreclosure. The Borrowers have been filing bankruptcies with no apparent intention of fulfilling the requirements of the Bankruptcy Code. Additionally, the Secured Creditor lacks adequate protection. Therefore, cause for relief under section 362(d)(1) exists.

**B.  *In Rem* Relief is Warranted Under Section 11 U.S.C. § 362(d)(4)(B) as the Debtor is Scheming to Delay Foreclosure by the Filing of Multiple Bankruptcies.**

Section 11 U.S.C. § 362(d)(4)(B) states:
> **(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> . . . .
> > (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
> > (B) multiple bankruptcy filings affecting such real property.

*In rem* relief is critical here because the Debtor is clearly seeking to delay and hinder the exercise of the Secured Creditor's rights, particularly with respect to foreclosure. In this case, even if the Court lifts the stay, Secured Creditor will have to expend additional fees and costs seeking relief in future bankruptcy filings, unless *in rem* relief is granted.

Secured Creditor requests, pursuant to 11 U.S.C.§ 362(d)(4), that the Court's order lifting the automatic stay contain findings that (1) Debtor's bankruptcy is part of a scheme; (2) the object of the scheme is to delay and hinder Secured Creditor; and (3) the scheme involves multiple bankruptcy filings affecting the Property. In other words, Secured Creditor asks that the order lifting the stay be binding, *in rem*, with respect to the Property. Secured Creditor submits that, in light of the factual history presented above, there can be no doubt that the requirements of section 362(d)(4)(B) are met.

## CONCLUSION

Based on the foregoing reasons, Secured Creditor requests that the Court lift the stay pursuant to 11 U.S.C. § 362(d)(1) and (2).  Moreover, Secured Creditor also requests pursuant to 11 U.S.C. § 362(d)(4)(B), that the Court grant *in rem* relief and that the order contain findings that (1) Debtor's bankruptcy is part of a scheme; (2) the object of the scheme is delay and hinder, Secured Creditor; and (4) the scheme involves multiple bankruptcy filings affecting the Subject Property.

DATED this 17th day of August, 2018.

**TIFFANY & BOSCO, P.A**

By:___/s/ Jason C. Kolbe_____
     **JASON C. KOLBE, ESQ.**
     Attorney for Secured Creditor
     10100 W. Charleston Boulevard, Suite 220
     Las Vegas, NV 89135

**TIFFANY & BOSCO, P.A**
Jason C. Kolbe, Esq.
Nevada Bar No. 11624
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone:  702 258-8200
Fax:  702 258-8787
nvbk@tblaw.com
The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase
Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB Mortgage-
Backed Pass-Through Certificates, Series 2003-27
09-74063

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In Re: | BK Case No.: 18-12734-mkn |
| Schulte Properties LLC | Date:  September 19, 2018<br>Time: 9:30 AM |
| | Chapter 11 |
| Debtor. | |

**CERTIFICATE OF SERVICE OF NOTICE AND**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

1.  On August 17, 2018 I served the following documents:

**NOTICE, MOTION FOR RELIEF FROM AUTOMATIC STAY, AND DECLARATION IN**
**SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**

2.  I caused to be served the above-named documents by the following means to the persons as

listed below:

X   **a. ECF System**

> Matthew L. Johnson
> annabelle@mjohnsonlaw.com
> Attorney for Debtor

> U.S. Trustee - LV - 11
> USTPRegion17.lv.ecf@usdoj.gov
> Trustee

X  **b. United States mail, postage fully prepaid:**

Matthew L. Johnson
8831 West Sahara Avenue
Las Vegas, NV 89117
Attorney for Debtor

Schulte Properties LLC
9811 W. Charleston Blvd
Ste 2-351
Las Vegas, NV  89117
Debtor

Z'REA Limited Partnership
7201 W Lake Mead Blvd #550
Las Vegas, NV 89128

David Pierce
509 Canyon Greens Drive
Las Vegas, NV 89144

Melani Schulte
9811 W. Charleston Blvd. Suite 2-351
Las Vegas, NV 89117

William R. Schulte
8252 Nice Court
Las Vegas, NV 89129

☐  **c. Personal Service**

I personally delivered the document(s) to the persons at these addresses:

☐ 1.     For a party represented by an attorney, delivery was made by handing the document(s) to the attorney's office with a clerk or other person in charge, or if no one is charge by leaving the document(s) in a conspicuous place in the office.

☐ 2.     For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐  **d. By direct mail**

Based upon the written assignment of the parties to accept service by email or a court order. I caused the document(s) to be sent to the persons at the mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **e. By fax transmission**

Based upon the written assignment of the parties to accept service by fax transmission or a court order. I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ **f. By messenger**

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

**I declare under penalty of perjury the foregoing is true and correct.**

DATED this 17th day of August, 2018.

By: _/s/ Brad Anderson_

## Exhibit "A"

| MIN: | **NOTE** | Loan Number: |
|------|----------|--------------|

| MAY 5, 2003 | HENDERSON | NEVADA |
|-------------|-----------|--------|
| [Date] | [City] | [State] |

509 CANYON GREENS DRIVE, LAS VEGAS, NEVADA 89144
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 960,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is SILVER STATE FINANCIAL SERVICES, DBA SILVER STATE MORTGAGE, A NEVADA CORPORATION    .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on    JULY 1    , 2003    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    JUNE 1, 2033    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2920 N. GREEN VALLEY PKWY., #424, HENDERSON, NEVADA 89014
    or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 5,910.89    .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01                    Page 1 of 3

DocMagic *CForms* 800-649-1362
www.docmagic.com

Us3200l.not



**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01

Page 2 of 3

*DocMagic eForms* 800-649-1362
www.docmagic.com

Us32002.nst

## 1.0. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED



_____ (Seal)
WILLIAM R SCHULTE           -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us32003.not

## ALLONGE TO PROMISSORY NOTE

**FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE:**

**LOAN NUMBER:**

**ORIGINAL LOAN AMOUNT:** 960,000

**ORIGINATING LENDER:** SILVER STATE FINANCIAL SERVICES

**BORROWER'S NAME:** William R Schulte

**CO-BORROWER'S NAME:**

**PROPERTY ADDRESS:** 509 Canyon Greens DR. Las Vegas NV 89144

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE, BY SILVER STATE FINANCIAL SERVICES DBA SILVER STATE MORTGAGE, A NEVADA CORPORATION**

LYNN WOODRUM / PRESIDENT

 

2003051 2
.01840

**Exhibit "B"**

Assessor's Parcel Number:

~~Recording Requested~~ By:
SILVER STATE FINANCIAL SERVICES,
DBA SILVER STATE MORTGAGE

And When Recorded Return To:
SILVER STATE FINANCIAL SERVICES, DBA S
ILVER STATE MORTGAGE 2920 N. GREEN VAL
LEY PKWY., #424 HENDERSON, NEVADA 89014
Loan Number: [Space Above This Line For Recording Data]

# DEED OF TRUST

**MIN:**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated   MAY   5            , 2003, together with all Riders to this document.
**(B)** "Borrower" is WILLIAM R SCHULTE AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is SILVER STATE FINANCIAL SERVICES, DBA SILVER STATE MORTGAGE
Lender is a   CORPORATION                                          organized
and existing under the laws of  NEVADA
Lender's address is 2920 N. GREEN VALLEY PKWY., #424, HENDERSON, NEVADA 89014
**(D)** "Trustee" is FIRST AMERICAN TITLE CO

Nv30291.mzd



20030512
.01840

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated     MAY   5           , 2003. The Note states that Borrower owes Lender    NINE HUNDRED SIXTY THOUSAND AND 00/100                     Dollars (U.S. $ 960,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     JUNE 1, 2033               .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

DocMagic *eForms* 800-649-1362
www.docmagic.com

Nv30292.mzd

20030512
.01840

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | CLARK |
|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".
A.P.N. #: ▮▮▮▮▮▮▮▮▮

which currently has the address of  509 CANYON GREENS DRIVE

[Street]

LAS VEGAS                    , Nevada     89144                    ("Property Address"):

[City]                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Nv30293.mzd

200305 12
.01840

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA,

Nv30294.mzd

200305 12
.01840

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

Nv30295.mzd

200305 12
.01840

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

20030512
.01840

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                        Page 7 of 13                        DocMagic *eRrmms* 800-649-1362
                                                                                        *www.docmagic.com*

Nv30297.mzd

200305 12
.01840

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

Nv30298.mzd

20030512
.01840

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

20030512
.01840

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

   **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18,

20030512
.01840

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3029 1/01                                      Page 11 of 13                    *DocMagic* 800-649-1362
                                                                                    www.docmagic.com

Nv302911.mzd

20030512
.01840

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Nv302912.mzd

200305 12
.01840

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
WILLIAM R SCHULTE          -Borrower                                                  -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                                  -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                                  -Borrower

Witness:                                          Witness:

_____                 _____


State of Nevada
County of   CLARK

        This instrument was acknowledged before me on   *May 5, 2003*                          by
WILLIAM R SCHULTE

Notary Public - State of Nevada
County of Clark
CORY BAKER
My Appointment Expires
December 3, 2006
No: 03-80054-1

_____
                                                                        Notary Public

        (Seal)                                    My commission expires:  *Dec 3, 2006*

---

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          *DocMagic* ℰℱℴ𝓇𝓂𝓈 800-649-1362
Form 3029 1/01                              Page 13 of 13                          www.docmagic.com

Nv302913.mzd

2003051 2
.01840

Loan Number: ████████

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        5th        day of
MAY   2003                    , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date,
given by the undersigned (the "Borrower") to secure Borrower's Note to SILVER STATE
FINANCIAL SERVICES, DBA SILVER STATE MORTGAGE
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

509 CANYON GREENS DRIVE, LAS VEGAS, NEVADA 89144
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other
such parcels and certain common areas and facilities, as described in  COVENANTS, CONDITIONS
AND RESTRICTIONS OF RECORD

(the "Declaration").  The Property is a part of a planned unit development known as

SUMMERLIN VILLAGE
[Name of Planned Unit Development]

(the "PUD").  The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  PUD Obligations.   Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents.  The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or
other rules or regulations of the Owners Association.  Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

B.  Property Insurance.  So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and
which provides insurance coverage in the amounts (including deductible levels), for the periods, and against
loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but
not limited to, earthquakes and floods, for which Lender requires insurance, then:  (i) Lender waives the
provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property
insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the
Owners Association policy.

---

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                              Page 1 of 2

DocMagic *€Remos* 800-649-1362
*www.docmagic.com*

Us31501.rid

2003051 2
01840

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)       _____ (Seal)
WILLIAM R SCHULTE              -Borrower                                     -Borrower

_____ (Seal)       _____ (Seal)
                              -Borrower                                     -Borrower

_____ (Seal)       _____ (Seal)
                              -Borrower                                     -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 2 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3150z.rid



20030512
.01840

File Number: ███████

## EXHIBIT "A"

## LEGAL DESCRIPTION

LOT TWELVE (12) IN BLOCK "A" OF CANYON FAIRWAYS" AS SHOWN ON THE
FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS, UNIT NO. 1, AS SHOWN BY
MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36, AND AS AMENDED BY
CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK 960820 AS
DOCUMENT NO. 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
COUNTY, NEVADA.

*****                    CLARK COUNTY, NEVADA                  *****
          *****          FRANCES DEANE, RECORDER
          RECORDED AT REQUEST OF: FIRST AMERICAN TITLE COMPANY
          05-12-2003   14:23        CDO        PAGE COUNT:  16
                                 OFFICIAL RECORDS
          BOOK/INSTR:20030512-01840              FEE:    29.00
                                                 RPTT:     .00

5

# Exhibit "C"

Inst #: 20180410-0001328
Fees: $40.00
04/10/2018 12:28:39 PM
Receipt #: 3370580
Requestor:
WELLS FARGO - DA L2
Recorded By: SOV  Pge: 3
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**
Src: ERECORD
Ofc: ERECORD

Assessor's/Tax ID No. ███████

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:
ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC: N9289-016
PO BOX 1629
EAGAN, MN 55121-4400

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST

Clark, Nevada
"SCHULTE"

**MIN #:** ███████    SIS #: 1-888-679-6377

THE UNDERSIGNED DOES HEREBY AFFIRM THAT THIS DOCUMENT SUBMITTED
FOR RECORDING DOES NOT CONTAIN PERSONAL INFORMATION ABOUT ANY
PERSON.

Date of Assignment: April 5th, 2018
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
FOR SILVER STATE FINANCIAL SERVICES, DOING BUSINESS AS SILVER STATE
MORTGAGE, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK
SUCCESSOR IN INTEREST TO JP MORGAN CHASE BANK, N.A., SUCCESSOR IN
INTEREST TO BANK ONE, NATIONAL ASSOCIATION, AS TRUSTEE FOR CSFB
MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-27 at ONE WALL
STREET, NEW YORK, NY 10286

Executed By: WILLIAM R SCHULTE AS HIS SOLE AND SEPARATE PROPERTY  To:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,  AS NOMINEE FOR
SILVER STATE FINANCIAL SERVICES, DOING BUSINESS AS SILVER STATE
MORTGAGE, ITS SUCCESSORS AND ASSIGNS
Date of Deed of Trust: 05/05/2003 Recorded: 05/12/2003 in Book: 20030512 as Instrument No.:
01840 In the County of Clark, State of Nevada.

Property Address: 509 CANYON GREENS DRIVE, LAS VEGAS, NV 89144

Legal: N/A

This Corrective Assignment is being recorded to amend that Assignment recorded 5/18/2010 as
instrument number 2010051800001779, as that Assignment incorrectly shows the assignee name to

ᴴRecorded

CORRECTIVE ASSIGNMENT OF DEED OF TRUST Page 2 of 3

be Bank of New York Mellon, successor in interest to JPMorgan Chase, successor in interest to
Bank One, National Association, as Trustee for Credit Suisse First Boston Mortgage-Backed
Pass-Through Trusts, Series 2003-27, whereas it should show The Bank of New York Mellon f/k/a
The Bank of New York successor in interest to JP Morgan Chase Bank, N.A., successor in interest
to Bank One, National Association, as Trustee for CSFB Mortgage-Backed Pass-Through
Certificates, Series 2003-27

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the
receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto
the above-named Assignee, the said Deed of Trust having an original principal sum of
$960,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto
the said Assignee, the Assignor's interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said
Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS
WHEREOF, the assignor has executed these presents the day and year first above written:

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
SILVER STATE FINANCIAL SERVICES, DOING BUSINESS AS SILVER STATE
MORTGAGE, ITS SUCCESSORS AND ASSIGNS
On _____4-6-18_____

By: _____
   John Kealy
   Assistant Secretary

eRecorded

CORRECTIVE ASSIGNMENT OF DEED OF TRUST Page 3 of 3

STATE OF Minnesota
COUNTY OF Dakota

Yves Akara Kenao

This instrument was acknowledged before me, _____, a Notary Public,
on **4-6-18**    by __John Kealy_____    as Assistant Secretary of
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
SILVER STATE FINANCIAL SERVICES, DOING BUSINESS AS SILVER STATE
MORTGAGE, ITS SUCCESSORS AND ASSIGNS.

WITNESS my hand and official seal,

_____
Yves Akara Kenao

Notary Expires:   /   /
**1|31|22**

```
┌──────────────────────────────┐
│  ╱◯╲    YVES AKARA KENAO      │
│ ◯   ◯  NOTARY PUBLIC - MINNESOTA │
│  ╲◯╱   MY COMMISSION EXPIRES 01/31/2022 │
└──────────────────────────────┘
```

(This area for notarial seal)

Mail Tax Statements To: WILLIAM SCHULTE, 509 CANYON GREENS DRIVE, LAS
VEGAS, NV 89144

Recorded

# Exhibit "D"

**STATE OF NEVADA**
**DECLARATION OF VALUE**

200305 14
.02956

1. Assessor Parcel Number(s)
   a) ████████████████
   b) _____
   c) _____
   d) _____

2. Type of Property:
   a) ☐ Vacant Land   b) ☑ Single Fam. Res.
   c) ☐ Condo/Twnhse   d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg   f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural   h) ☐ Mobile Home
   ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
|---|
| Document/Instrument #: _____ |
| Book_____ Page:_____ |
| Date of Recording: _____ |
| Notes: _____ |

3. Total Value/Sales Price of Property          $ _____
   Deed in Lieu of Foreclosure Only (value of property)  ( _____ )
   Transfer Tax Value:                          $ _____
   Real Property Transfer Tax Due               $ _____

**4. If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption: _____
   _____

5. Partial Interest: Percentage being transferred: _____ %

   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS.375.060
and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be
supported by documentation if called upon to substantiate the information provided herein. Furthermore, the
parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may
result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer
and Seller shall be jointly and severally liable for any additional amount owed.

Signature _Melon Schulte_          Capacity _Grantor_
Signature _____         Capacity _____

| SELLER (GRANTOR) INFORMATION (REQUIRED) | BUYER (GRANTEE) INFORMATION (REQUIRED) |
|---|---|
| Print Name: _____ | Print Name: _W. R & Melan Schulte_ |
| Address: _____ | Address: _7201 W Lake Mead Bl #130_ |
| City: _____ | City: _Las Vegas_ |
| State: _____ Zip: _____ | State: _NV_ Zip: _89128_ |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name: _____          Escrow # _____
Address: _____
City: _____   State: _____   Zip: _____

(AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)

RECORDING REQUESTED BY:

20030514
02956

When Recorded Mail Document
and Tax Statement To:
Mr. and Mrs. William R. Schulte.
~~500 Canyon Greens~~ 7201 N Lake Mead Bl #550
Las Vegas, NV ~~89144~~ 89128

RPTT:
APN: ██████████

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH:** That William R. Schulte, a married man as his sole and separate property

**FOR A VALUABLE CONSIDERATION,** receipt of which is hereby acknowledged, do(es) hereby Grant, Bargain, Sell and Convey to,
**William R. Schulte and Melani Schulte, Husband and Wife, as joint tenants with right of survivorship** all the right, title, and interest of the undersigned in and to the real property situated in the County of Clark, State of Nevada, described as follows:

LOT TWELVE (12) IN BLOCK "A" OF CANYON FAIRWAYS AS SHOWN ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS, UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36 AND AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK 960820 AS DOCUMENT NO. 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

SUBJECT TO:  1.    Taxes for the fiscal year 2002-2003
2.    Covenants, Conditions, Reservations, Rights, Rights of Way and Easements now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED:  May 13, 2003

STATE OF NEVADA
COUNTY OF  Clark

This instrument was acknowledged before me
on  May 13, 2003
by  William R. Schulte

_William R. Schulte_

Signature

My Commission Expires:  2-17-07

Notary Public

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
RAY MACKELPRANG
Appt. No. 99-54757-1
My Appt. Expires Feb 17, 2007

```
+++++     CLARK COUNTY, NEVADA     +++++
          FRANCES DEANE, RECORDER
      RECORDED AT REQUEST OF: W SCHULTE
05-14-2003  16:55    SUC    PAGE COUNT:   1
                OFFICIAL RECORDS
BOOK/INSTR:20030514-02956    FEE:    14.00
                             RPTT:   870005
```

MAIL TAX STATEMENTS AS DIRECTED ABOVE

NV (Rev 6/97)                                GRANT DEED

## Exhibit "E"



APN:
$0.00 Consideration

20040709-0004806
Fee $17.00        RPTT EXH036
07/09/2004 14:50:10   T20040052888
Req: MARQUIS & AURBACH
Frances Deane
Clark County Recorder  Pgs: 4



## GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH:      That  WILLIAM  R.  SCHULTE and MELANI SCHULTE, husband and wife as joint tenants with rights of survivorship, for good and other valuable consideration, do hereby Grant, Bargain, Sell and Convey to WILLIAM R. SCHULTE and MELANI SCHULTE, Trustees of THE WILLIAM AND MELANI SCHULTE TRUST, dated _____ , 2004, as amended, or restated, or their successors, all of their right, title and interest in that real property situated in the County of Clark, State of Nevada, bounded and described as follows:

LOT TWELVE (12) IN BLOCK "A" OF CANYON FAIRWAYS AS SHOWN ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS, UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36 AND AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK 960820 AS DOCUMENT NO. 01216 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

Property commonly known as:  509 Canyon Greens Drive, Las Vegas, Nevada

SUBJECT TO:      1.    All general and special taxes for the fiscal year.
                 2.    Covenants, conditions, restrictions, reservations, rights, rights of way and easements now of record.

MAIL TAX STATEMENTS TO GRANTEES ADDRESS: WILLIAM R. SCHULTE and MELANI SCHULTE, 7201 West Lake Mead Boulevard, Suite 550, Las Vegas, Nevada 89128

SUBJECT TO: Powers of Trustees attached hereto as Exhibit "A" and by this reference incorporated herein.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining.

Witness their hands this 2nd day of ( July , 2004.

                                                          WILLIAM R. SCHULTE

                                                          MELANI SCHULTE

STATE OF NEVADA      )

                         ) ss.

COUNTY OF CLARK     )

      On this 2nd day of July , 2004, before me the undersigned, a Notary Public in and for the said County of Clark, State of Nevada, personally appeared WILLIAM R. SCHULTE and MELANI SCHULTE personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signatures on the instrument, the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

Mail Tax Statements to &
When Recorded, Mail to:

                         JOHN E. DAWSON
                       Notary Public State of Nevada
                       No.98-0939-1
                       My appt exp June 13, 2005

Mr. and Mrs. Schulte
7201 West Lake Mead Boulevard, Suite 550
Las Vegas, Nevada 89128

## EXHIBIT "A"
## POWERS OF TRUSTEES

WILLIAM R. SCHULTE and MELANI SCHULTE, Trustees, are hereby vested with complete powers of disposition of the real Estate herein described, including the power to plat, sell, encumber, mortgage and convey as a whole or in parcels, and no person dealing with said Trustees shall be obligated to look beyond the terms of this instrument for power in the Trustees to sell, encumber, mortgage or convey, the real estate described herein.

Said Grantees are likewise hereby excused from any and all duties of diligence and responsibility respecting the propriety of any act of said Trustees purporting to be done under or by virtue of the terms of this issue.

This conveyance is made in Trust pursuant to and in accordance with **"THE WILLIAM AND MELANI SCHULTE TRUST"** which was executed on _July 2_, 2004.

STATE OF NEVADA
DECLARATION OF VALUE

1. Assessor Parcel Number(s):
   a.) ▓▓▓▓▓▓▓▓▓▓
   b.) _____
   c.) _____
   d.) _____
   Notes _____

   FOR RECORDERS OPTIONAL USE ONLY
   Documentation/Instrument #: _____
   Book: _____ Page: _____
   Date of Recording: _____

2. Type of Property:
   a.) ☐ Vacant Land        b.) ☒ Single Fam. Res.
   c.) ☐ Condo/Twnhse       d.) ☐ 2-4 Plex
   e.) ☐ Apt. Bldg          f.) ☐ Comm'l/Ind'l
   g.) ☐ Agricultural       h.) ☐ Mobile Home
   i.) ☐ Other

3. Total Value/Sales Price of Property          $ _____
   Deed in Lieu of Foreclosure Only (Value of Property)  $ _____
   Transfer Tax Value                           $ _____
   Real Property Transfer Tax Due               $ _____

   If Exemption Claimed:
   a. Transfer Tax Exemption per NRS 375.090, Section          6
   b. Explain Reason for Exemption:   Transfer to or from a trust, without consideration, certificate of trust attached

4. Partial Interest: Percentage being transferred:          _____ %

The undersigned declares and acknowledges, under penalty of pursuant to NRS 375.060 and NRS 375.110, then the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature: _William R. Schulte_          Capacity: _____Grantor_____
Signature: _Melani Schulte_              Capacity: _____Grantee_____

| SELLER (GRANTOR INFORMATION) | | BUYER (GRANTEE INFORMATION) | |
|---|---|---|---|
| Print Name: | William R. Schulte | Print Name: | Melani Schulte |
| Address: | 7201 W. Lake Mead Blvd., Suite 550 | Address: | 7201 W. Lake Mead Blvd., Suite 550 |
| City: | Las Vegas | City: | Las Vegas |
| State: | NV   Zip: | 89128 | State: | NV   Zip: | 89128 |
| Phone: | ▓▓▓▓▓▓ | Phone: | ▓▓▓▓▓▓ |

COMPANY REQUESTING RECORDING (required if not seller or buyer)
Print Name:   Marquis & Aurbach                Escrow No: ▓▓▓▓▓▓
Address:   10001 Park Run Drive
City:   Las Vegas   State:   NV   Zip:   89145

## Exhibit "F"

```
20050801-0001863
Fee: $17.00      RPTT: EX#007
N/C Fee:  $0.00

08/01/2005                   09:53:27
T20050138437
Requestor:
   TICOR TITLE OF NEVADA INC
Frances Deane              LeahR
Clark County Recorder     Pgs: 4
```

APN ████████

Escrow No. ████████
R.P.T.T. $ Exempt 7 Out of Trust

Space Above for Recorder's Use Only

### QUITCLAIM DEED

**THIS INDENTURE WITNESSETH:** That William R. Schulte and Melani Schulte, Trustees of the

William and Melani Schulte Trust, dated July 2, 2004, FOR A VALUABLE CONSIDERATION, receipt

of which is hereby acknowledged, hereby quitclaim to William R. Schulte and Melani Schulte, husband and

wife, as joint tenants all that real property in the County of **Clark**, State of Nevada, bounded and described

as follows:

   SEE EXHIBIT "A" ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF

_____, Trustee              _____, Trustee
William R. Schulte, Trustee                   Melani Schulte, Trustee

*SEE PAGE TWO (2) FOR NOTARY ACKNOWLEDGEMENT*

███

### *NOTARY ACKNOWLEDGEMENT FOR QUITCLAIM DEED*

Escrow No: ████

STATE OF NEVADA
COUNTY OF CLARK                    } SS:

This instrument was acknowledged before me on *July 26, 2005*,

by *Melani Schulte*

_____
NOTARY PUBLIC   *Lovett*


NOTARY PUBLIC
STATE OF NEVADA
(Seal) County of Clark
K. LOVETT
No. 01-2934-1
My Appointment Expires May 20, 2008

_____
WHEN RECORDED MAIL TO:
Melani Schulte
509 Canyon Green
Las Vegas, NV
MAIL TAX STATEMENTS TO:
Melani Schulte
509 Canyon Green
Las Vegas, NV

STATE OF NEVADA  
COUNTY OF CLARK

} SS:

This instrument was acknowledged before me on ___7·26·05___ , by William R. Schulte.

_Linda R Johnson_  
NOTARY PUBLIC

> **LINDA R. JOHNSON**  
> Notary Public State of Nevada  
> No. 05-97757-1  
> My appt. exp. May 13, 2009

NOTARY

Escrow No. 

**EXHIBIT A**
**LEGAL DESCRIPTION**

Lot Twelve (12) in Block "A" of Canyon Fairways, as shown on the FINAL MAP OF
SUMMERLIN VILLAGE 3 CUSTOM LOTS UNIT NO. 1, as shown by map thereof on file in
Book 74 of Plats, Page 36, and amended by Certificate of Amendment recorded August 20, 1996 in
Book 960820 as Document No. 01210, in the Office of the County Recorder of Clark County,
Nevada.

# Exhibit "G"

```
20050801-0001864
```

Fee: $17.00        RPTT: EX#006
N/C Fee:  $0.00

08/01/2005              09:53:27
T20050138437
Requestor:
   TICOR TITLE OF NEVADA INC
Frances Deane                LeahR
Clark County Recorder    Pgs: 4

APN ████████

**Space Above for Recorder's Use Only**

Escrow No. ████████
R.P.T.T. $ Exempt 6 Spousal Deed

## QUITCLAIM DEED

**THIS INDENTURE WITNESSETH:** That William R. Schulte, spouse of the grantee, FOR A

VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, hereby quitclaim to Melani

Schulte, a married woman, as her sole and separate property, all that real property in the County of **Clark**,

State of Nevada, bounded and described as follows:

   SEE EXHIBIT "A" ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF

It is the express intent of the grantor, being the spouse of the grantee, to convey all right, title and interest
of the grantor, community or otherwise, in and to the herein described property, now and forever, to the
grantee as his/her sole and separate property.

_____        _____
William R. Schulte

***SEE PAGE TWO (2) FOR NOTARY ACKNOWLEDGEMENT***

*NOTARY ACKNOWLEDGEMENT FOR QUITCLAIM DEED*

Escrow No. ███████

STATE OF NEVADA          } SS:
COUNTY OF CLARK

This instrument was acknowledged before me on _7·26·05_ ,
by ___WR Schulte___

_Linda R Johnson_
NOTARY PUBLIC

LINDA R. JOHNSON
Notary Public State of Nevada
No. 05-97757-1
My appt. exp. May 13, 2009

(Notary Seal)

WHEN RECORDED MAIL TO:
Melani Schulte
509 Canyon Green
Las Vegas, NV
MAIL TAX STATEMENTS TO:
Melani Schulte
509 Canyon Green
Las Vegas, NV

Escrow No. 

**EXHIBIT A**
**LEGAL DESCRIPTION**

Lot Twelve (12) in Block "A" of Canyon Fairways, as shown on the FINAL MAP OF
SUMMERLIN VILLAGE 3 CUSTOM LOTS UNIT NO. 1, as shown by map thereof on file in
Book 74 of Plats, Page 36, and amended by Certificate of Amendment recorded August 20, 1996 in
Book 960820 as Document No. 01210, in the Office of the County Recorder of Clark County,
Nevada.

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**
1.  Assessor Parcel Number(s) ███████████
     a) _____
     b) _____
     c) _____
     d) _____

2.  Type of Property:
     a) ☐ Vacant Land   b) ☑ Single Fam. Res
     c) ☐ Condo/Twnhse  d) ☐ 2-4 Plex
     e) ☐ Apt. Bldg    f) ☐ Comm'l/Ind'l
     g) ☐ Agricultural   h) ☐ Mobile Home
     ☐ Other_____

| FOR RECORDER'S OPTIONAL USE ONLY |
| --- |
| Book:_____ Page:_____ |
| Date of Recording:_____ |
| Notes: |

3.  Total Value/Sales Price of Property    $ 0.00
    Deed in Lieu of Foreclosure Only (value of property) ( )
    Transfer Tax Value:    $_____
    Real Property Transfer Tax Due   $ 0.00

4.  **If Exemption Claimed:**
    a.    Transfer Tax Exemption per NRS 375.090, Section 6_____
    b.    Explain Reason for Exemption:_Spousal Deed_____

5.  Partial Interest: Percentage being transferred: _____%
    The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.
Signature _____  Capacity _grantee_____
Signature _____  Capacity _Grantor_____

| **SELLER (GRANTOR) INFORMATION** **(REQUIRED)** | **BUYER (GRANTEE) INFORMATION** **(REQUIRED)** |
| --- | --- |
| Print Name: William R. Schulte_____ | Print Name: Melani Schulte_____ |
| Address:_509 Canyon Green_____ | Address:_509 Canyon Green_____ |
| City:_Las Vegas, NV_____ | City:_Las Vegas, NV_____ |
| State:_____ Zip:_____ | State:_____ Zip:_____ |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buy)**
Print Name Ticor Title of Nevada, Inc.____    Escrow #████████
Address: 777 No. Rainbow Blvd., #150_____
City:  Las Vegas    State:_____NV_____    Zip:____89107_____
AN ADDITIONAL RECORDING FEE OF $1.00 WILL APPLY FOR EACH DECLARATION
OF VALUE TO CLARK COUNTY, EFFECTIVE JUNE 1, 2004

## Exhibit "H"

20050804-0002453

Fee: $17.00    RPTT: EX#005
N/C Fee: $25.00

08/04/2005            10:35:51
T20050141619

Requestor:
    SABRECO INC

Frances Deane                CAE
Clark County Recorder    Pgs: 4

**RECORDING REQUESTED BY:**
WILLIAM R. SCHULTE
**When Recorded Mail Document**
**and Tax Statement To:**
WILLIAM R. SCHULTE and MELANI SCHULTE
7201 W. Lake Mead Blvd., #550
Las Vegas, NV 89128

APN:
ADDRESS: 509 CANYON GREENS DRIVE, LAS VEGAS, NV 89144
RPTT:

### GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH:** That  MELANI SCHULTE, a married woman, as her sole and separate property

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,** do(es) hereby Grant, Bargain, Sell and Convey to  WILLIAM R. SCHULTE and MELANI SCHULTE, husband and wife, as joint tenants, with right of survivorship

all that real property situated in Clark County, State of Nevada, bounded and described as follows:

As more fully described in Exhibit "A" attached herein and made a part thereof

SUBJECT TO:    1.    Taxes for the fiscal year 2005-2006
              2.    Covenants, Conditions, Reservations, Rights, Rights of Way and Easements now of
                    record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED:  August 2, 2005

STATE OF NEVADA,
COUNTY OF _____Clark_____

This instrument was acknowledged before me
on ____8-3-05____
by _Melani Schulte_

_____

Signature _Linda R Johnson_
                    Notary Public
My Commission Expires: _May 13, 2009_

_Melani Schulte_
MELANI SCHULTE

LINDA R. JOHNSON
Notary Public State of Nevada
No. 05-97757-1
My appt. exp. May 13, 2009

**EXHIBIT A**
**LEGAL DESCRIPTION**

Lot Twelve (12) in Block "A" of Canyon Fairways, as shown on the FINAL MAP OF
SUMMERLIN VILLAGE 3 CUSTOM LOTS UNIT NO. 1, as shown by map thereof on file in
Book 74 of Plats, Page 36, and amended by Certificate of Amendment recorded August 20, 1996 in
Book 960820 as Document No. 01210, in the Office of the County Recorder of Clark County,
Nevada.

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**
1. Assessor Parcel Number(s)
   a) ████████████████████
   b) ████████████████████
   c) _____
   d) _____
2. Type of Property:
   a) ☐ Vacant Land     b) ☑ Single Fam. Res.
   c) ☐ Condo/Twnhse    d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg       f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural    h) ☐ Mobile Home
   ☐ Other _____

| FOR RECORDER'S OPTIONAL USE ONLY |
|---|
| Book:_____ Page:_____ |
| Date of Recording:_____ |
| Notes: |

3. Total Value/Sales Price of Property                          $_____
   Deed in Lieu of Foreclosure Only (value of property)   (_____)
   Transfer Tax Value:                                           $_____
   Real Property Transfer Tax Due                               $_____
4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section ⑤
   b. Explain Reason for Exemption: *add spouse*
5. Partial Interest: Percentage being transferred: _____ %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to
NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their
information and belief, and can be supported by documentation if called upon to substantiate the
information provided herein. Furthermore, the parties agree that disallowance of any claimed
exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax
due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
jointly and severally liable for any additional amount owed.

Signature _____     Capacity _____

Signature _____     Capacity _____

**SELLER (GRANTOR) INFORMATION**              **BUYER (GRANTEE) INFORMATION**
**(REQUIRED)**                                **(REQUIRED)**
Print Name: W. R. & Melani Schulte            Print Name: _____
Address: 7201 W. Lake Mead Bl #550            Address: _____
City: Las Vegas                               City: _____
State: NV      Zip: 89128                     State: _____ Zip: _____

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name: _____           Escrow #: _____
Address: _____
City: _____                 State: _____ Zip: _____

2453

# CLARIFICATION

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a) ▮▮▮▮▮▮▮▮▮▮▮▮
   b) _____
   c) _____
   d) _____

2. Type of Property:
   | | | | |
   |---|---|---|---|
   | a) ☐ Vacant Land | b) ☑ Single Fam. Res. | | |
   | c) ☐ Condo/Twnhse | d) ☐ 2-4 Plex | | |
   | e) ☐ Apt. Bldg | f) ☐ Comm'l/Ind'l | | |
   | g) ☐ Agricultural | h) ☐ Mobile Home | | |
   | ☐ Other | | | |

   FOR RECORDER'S OPTIONAL USE ONLY
   Book:_____ Page:_____
   Date of Recording:_____
   Notes:

3. Total Value/Sales Price of Property                    $ _____
   Deed in Lieu of Foreclosure Only (value of property)   ( _____ )
   Transfer Tax Value:                                    $ _____
   Real Property Transfer Tax Due                         $ _____

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section ___ ⑤
   b. Explain Reason for Exemption: *add spouse*

5. Partial Interest: Percentage being transferred: _____ %

   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____  Capacity _grantor_

Signature _____  Capacity _____

| **SELLER (GRANTOR) INFORMATION** (REQUIRED) | **BUYER (GRANTEE) INFORMATION** (REQUIRED) |
|---|---|
| Print Name: _W. R. & MELANi  SCHULTE_ | Print Name: |
| Address: _7201 W. Lake Mead Bl #550_ | Address: |
| City: _LAS VEGAS_ | City: _same_ |
| State: _NV_  Zip: _89128_ | State: _____ Zip: _____ |

**COMPANY/PERSON REQUESTING RECORDING** (required if not seller or buyer)
Print Name:_____  Escrow #:_____
Address: _____
City:_____  State:_____  Zip: _____

2053

## Exhibit "I"

**20050804-0002454**

Fee: $17.00    RPTT: EX#007
N/C Fee: $25.00

08/04/2005    10:35:51
T20050141619

Requestor:
SABRECO INC

Frances Deane    CRE
Clark County Recorder    Pgs: 4

**RECORDING REQUESTED BY:**
WILLIAM R. SCHULTE
**When Recorded Mail Document
and Tax Statement To:**
WILLIAM R. SCHULTE and MELANI SCHULTE
7201 W. Lake Mead Blvd., #550
Las Vegas, NV  89128

APN [redacted]
ADDRESS: 509 CANYON GREENS DRIVE, LAS VEGAS, NV 89144
RPTT:

### GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH:** That WILLIAM R. SCHULTE and MELANI SCHULTE, husband and wife, as joint tenants, with right of survivorship

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,** do(es) hereby Grant, Bargain, Sell and Convey to WILLIAM R. SCHULTE and MELANI SCHULTE, Trustees of THE WILLIAM AND MELANI SCHULTE TRUST, dated July 2, 2004, as amended, or restated, or their successors, all of their right, title and interest

in that real property situated in Clark County, State of Nevada, bounded and described as follows:

As more fully described in Exhibit "A" attached herein and made a part thereof

SUBJECT TO:    1.    Taxes for the fiscal year 2005-2006
                2.    Covenants, Conditions, Reservations, Rights, Rights of Way and Easements now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED:  August 2, 2005

STATE OF NEVADA,
COUNTY OF ___Clark___

This instrument was acknowledged before me
on ___8-3-05___
by ___WR Schulte___
___Melani Schulte___

Signature ___Linda R Johnson___
Notary Public
My Commission Expires: ___May 13, 2009___

_____
WILLIAM R. SCHULTE

_____
MELANI SCHULTE

LINDA R. JOHNSON
Notary Public State of Nevada
No. 05-97757-1
My appt. exp. May 13, 2009

**EXHIBIT A**
**LEGAL DESCRIPTION**

Lot Twelve (12) in Block "A" of Canyon Fairways, as shown on the FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS UNIT NO. 1, as shown by map thereof on file in Book 74 of Plats, Page 36, and amended by Certificate of Amendment recorded August 20, 1996 in Book 960820 as Document No. 01210, in the Office of the County Recorder of Clark County, Nevada.

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a) ▓▓▓▓▓▓▓
   b) _____
   c) _____
   d) _____

2. Type of Property:
   a) ☐ Vacant Land     b) ☑ Single Fam. Res.
   c) ☐ Condo/Twnhse   d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg       f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural    h) ☐ Mobile Home
       ☐ Other_____

   | FOR RECORDER'S OPTIONAL USE ONLY |
   | Book:_____ Page:_____ |
   | Date of Recording:_____ |
   | Notes: |

3. Total Value/Sales Price of Property                              $ _____
   Deed in Lieu of Foreclosure Only (value of property)   ( _____ )
   Transfer Tax Value:                                             $ _____
   Real Property Transfer Tax Due                            $ _____

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section  ⑧ ⑦
   b. Explain Reason for Exemption: transfer to TRUST without Consideration

5. Partial Interest: Percentage being transferred: _____ %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to
   NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their
   information and belief, and can be supported by documentation if called upon to substantiate the
   information provided herein. Furthermore, the parties agree that disallowance of any claimed
   exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax
   due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
   jointly and severally liable for any additional amount owed.

   Signature _Milan Schulte_____ Capacity _grantor_____

   Signature _____ Capacity _____

   **SELLER (GRANTOR) INFORMATION**          **BUYER (GRANTEE) INFORMATION**
             **(REQUIRED)**                              **(REQUIRED)**
   Print Name: _W. R + MELAN; SCHULTE_      Print Name: _____
   Address: _7201 W. Lake Mead Bl #550_     Address: _Same_
   City: _LAS VEGAS_                          City: _____
   State: _NV_ Zip: _89128_                   State: _____ Zip: _____

   **COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
   Print Name: _____          Escrow #: _____
   Address: _____
   City: _____            State: _____ Zip: _____

   245⁵¹

# CLARIFICATION

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a) _____███████_____ /
   b) _____
   c) _____
   d) _____

2. Type of Property:
   a) ☐ Vacant Land      b) ☑ Single Fam. Res.
   c) ☐ Condo/Twnhse     d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg        f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural     h) ☐ Mobile Home
      ☐ Other

   | FOR RECORDER'S OPTIONAL USE ONLY |
   |---|
   | Book:_____ Page:_____ |
   | Date of Recording:_____ |
   | Notes:_____ |

3. Total Value/Sales Price of Property                                  $ _____
   Deed in Lieu of Foreclosure Only (value of property)   ( _____ )
   Transfer Tax Value:                                                        $ _____
   Real Property Transfer Tax Due                                     $ _____

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section  Ⓧ ⑦
   b. Explain Reason for Exemption: _transfer to TRUST_
   _without consideration_

5. Partial Interest: Percentage being transferred: _____ %

   The undersigned declares and acknowledges, under penalty of perjury, pursuant to
   NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their
   information and belief, and can be supported by documentation if called upon to substantiate the
   information provided herein. Furthermore, the parties agree that disallowance of any claimed
   exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax
   due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
   jointly and severally liable for any additional amount owed.

   Signature _Melan Schultz_                    Capacity _grantor_

   Signature _____          Capacity _____

**SELLER (GRANTOR) INFORMATION**              **BUYER (GRANTEE) INFORMATION**
**(REQUIRED)**                                 **(REQUIRED)**
Print Name: _W. R + MELAN, SCHULTE_            Print Name: _____
Address: _7201 W. Lake Mead Bl #50_           Address: _same_
City: _LAS VEGAS_                              City: _____
State: _NV_  Zip: _89128_                      State: _____ Zip: _____

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name:_____          Escrow #:_____
Address: _____
City:_____                State:_____ Zip: _____

2-454

# Exhibit "J"



Inst #: 201110260002086
Fees: $15.00 N/C Fee: $0.00
RPTT: $0.00 Ex: #007
10/26/2011 02:46:02 PM
Receipt #: 959090
Requestor:
MELANI SCHULTE
Recorded By: STN   Pgs: 3
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

**RECORDING REQUESTED BY:**
Melani Schulte
**When Recorded Mail Document
and Tax Statement To:**
WILLIAM R. SCHULTE and MELANI SCHULTE
7201 W. Lake Mead Blvd., Suite 550
Las Vegas, NV 89128

APN:
ADDRESS: 509 Canyon Greens Drive, Las Vegas, NV 89144

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH:** That  WILLIAM R. SCHULTE and MELANI SCHULTE, Trustees Of THE WILLIAM AND MELANI SCHULTE TRUST, dated July 2, 2004, as amended, or restated, or their successors, all of their right, title and interest

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,** do(es) hereby Grant, Bargain, Sell and Convey to  WILLIAM R. SCHULTE and MELANI SCHULTE, husband and wife, as Joint Tenants, with right of survivorship

All that real property situated in Clark County, State of Nevada, bounded and described as follows:

LOT TWELVE (12) IN BLOCK "A" OF CANYON FAIRWAYS" AS SHOWN ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS, UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36, AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK 960820 AS DOCUMENT NO. 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

SUBJECT TO:    1.    Taxes for the fiscal year 2011-2012
              2.    Covenants, Conditions, Reservations, Rights, Rights of Way and Easements
                    now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED: October 25, 2011

WILLIAM R. SCHULTE and MELANI SCHULTE, Trustees
Of THE WILLIAM AND MELANI SCHULTE TRUST,
Dated July 2, 2004

By: _____
    WILLIAM R. SCHULTE, Trustee

By: _____
    MELANI SCHULTE, Trustee

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me
on _October 26, 2011_

by _William R. Schulte_
_& Melani Schulte_

Signature _Mary Wood_
　　　　　　　　Notary Public

My Commission Expires: _4/24/2013_

MARY WOOD
NOTARY PUBLIC
STATE OF NEVADA
CLARK COUNTY
APPT. No. 01-67704-1
MY APPT. EXPIRES APRIL 24, 2013

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a. ████████████
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land       b. ☑ Single Fam. Res.
   c. ☐ Condo/Twnhse      d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg         f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural      h. ☐ Mobile Home
      ☐ Other _____

   **FOR RECORDER'S OPTIONAL USE ONLY**
   Book: _____ Page: _____
   Date of Recording: _____
   Notes:

3. a. Total Value/Sales Price of Property          $ _____
   b. Deed of Lieu of Foreclosure Only (value of property)   ( _____ )
   c. Transfer Tax Value:                          $ _____
   d. Real Property Transfer Tax Due               $ _____

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _7_
   b. Explain Reason for Exemption: _transfer from TRUST to INDIVIDUALS_
      _WiThoUT CONSIDERATION_

5. Partial Interest: Percentage being transferred: _____ %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature: _Melni Schulte_              Capacity: _GRANTOR_

Signature: _____        Capacity: _____

**SELLER (GRANTOR) INFORMATION**
**(REQUIRED)**

Print Name: _WILLIAM + MELANI SCHULTE TRUST_
Address: _7201 W. LAKE MEAD BLVD #550_
City: _LAS VEGAS , NV_
State: _NV_        Zip: _89128_

**BUYER (GRANTEE) INFORMATION**
**(REQUIRED)**

Print Name: _WILLIAM R. + MELANI SCHULTE_
Address: _7201 W. LAKE MEAD BLVD #550_
City: _LAS VEGAS_
State: _NV_     Zip: _89128_

**COMPANY REQUESTING RECORDING**
Print Name: _____
Address: _____
City: _____

Escrow #: _____

State: _____ Zip: _____

As a public record this form may be recorded/microfilmed

# Exhibit "K"

Inst #: 201308210002181
Fees: $17.00 N/C Fee: $0.00
RPTT: $0.00 Ex: #006
08/21/2013 12:47:45 PM
Receipt #: 1741360
Requestor:
MELANI SCHULTE
Recorded By: ANI  Pgs: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

**RECORDING REQUESTED BY:**
Melani Schulte
**When Recorded Mail Document
and Tax Statement To:**
MELANI SCHULTE
9330 W. Sahara Ave., Suite 210
Las Vegas, NV  89117



APN: 
ADDRESS: 509 Canyon Greens Drive, Las Vegas, NV 89144

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH:** That  WILLIAM R. SCHULTE and MELANI SCHULTE, husband and wife, as Joint Tenants, with right of survivorship

**In Consideration Of $10.00 and other VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged,** do(es) hereby Grant, Bargain, Sell and Convey to  MELANI SCHULTE , a single unmarried woman, as her sole and separate property

All that real property situated in Clark County, State of Nevada, bounded and described as follows:

LOT TWELVE (12) IN BLOCK "A" OF CANYON FAIRWAYS" AS SHOWN ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS, UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36, AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK 960820 AS DOCUMENT NO. 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

SUBJECT TO:    1.    Taxes for the fiscal year 2013-2014
                2.    Covenants, Conditions, Reservations, Rights, Rights of Way and Easements
                     now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED: July 17, 2013

STATE OF NEVADA
COUNTY OF CLARK

This instrument was acknowledged before me
on  9/16/13

by  WILLIAM R. SCHULTE

Signature  Hanna Julye
                                    Notary Public

My Commission Expires: 10-27-16

_WILLIAM R. SCHULTE_

HANNAH JULYE
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 06-27-16
Certificate No: 18-8090-1

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. ▢
   b. ▢
   c. _____
   d. _____

2. Type of Property:
   a. ▢ Vacant Land   b. ☑ Single Fam. Res.
   c. ▢ Condo/Twnhse   d. ▢ 2-4 Plex
   e. ▢ Apt. Bldg   f. ▢ Comm'l/Ind'l
   g. ▢ Agricultural   h. ▢ Mobile Home
   ▢ Other

   | FOR RECORDERS OPTIONAL USE ONLY |
   |---|
   | Book_____ Page:_____ |
   | Date of Recording: _____ |
   | Notes: |

3. a. Total Value/Sales Price of Property          $ _____
   b. Deed in Lieu of Foreclosure Only (value of property( _____ )
   c. Transfer Tax Value:          $ _____
   d. Real Property Transfer Tax Due          $ _____

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section 6
   b. Explain Reason for Exemption:   TRANSFER BETWEEN SPOUSES IN COMPLIANCE
      WITH A DIVORCE.

5. Partial Interest: Percentage being transferred: 100 %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060
and NRS 375.110, that the information provided is correct to the best of their information and belief,
and can be supported by documentation if called upon to substantiate the information provided herein.
Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of
additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant
to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _Melani Schulte_          Capacity: GRANTEE _____

Signature _____          Capacity: _____

| **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
|---|---|
| **(REQUIRED)** | **(REQUIRED)** |
| Print Name: WILLIAM R. SCHULTE | Print Name: MELANI SCHULTE |
| Address:9330 W. SAHARA AVE., SUITE 210 | Address: 9330 W. SAHARA AVE., SUITE 210 |
| City: LAS VEGAS | City: LAS VEGAS |
| State: NEVADA          Zip: 89117 | State: NEVADA          Zip: 89117 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**

| Print Name: | Escrow # |
|---|---|
| Address: | |
| City: | State:          Zip: |

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

# Exhibit "L"



Inst #: 20150618-0002095
Fees: $18.00 N/C Fee: $0.00
RPTT: $0.00 Ex: #007
06/18/2015 01:13:54 PM
Receipt #: 2464361
Requestor:
LAW OFFICES OF GARY L FALES
Recorded By: RYUD   Pgs: 3
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

A.P.N.
R.P.T.T.        $0

Recorded at the Request of
Melani Schulte, Trustee
Melani Schulte Living Trust
Dated December 30, 2013
Return to:
Law Offices of Gary L. Fales & Associates
2451 S Buffalo Drive Ste. 100
Las Vegas, NV 89117

Mail tax bill to:
Melani Schulte, Trustee
Melani Schulte Living Trust
Dated December 30, 2013
9811 W Charleston Blvd #2-351
Las Vegas, Nevada 89117

GRANTOR:

Melani Schulte
9811 W Charleston Blvd #2-351
Las Vegas, Nevada 89117

GRANTEE:

Melani Schulte, Trustee
Melani Schulte Living Trust
Dated December 30, 2013
9811 W Charleston Blvd #2-351
Las Vegas, Nevada 89117

## GRANT, BARGAIN AND SALE DEED

**FOR VALUABLE CONSIDERATION**, receipt of which is hereby acknowledged, **MELANI SCHULTE, a single unmarried woman**, hereby GRANT(S), BARGAIN(S), SELL(S) AND CONVEY(S) to **MELANI SCHULTE, Trustee of the MELANI SCHULTE LIVING TRUST DATED DECEMBER 30, 2013, and any amendments thereto,** that property in Clark County, Nevada described as follows:

LOT TWELVE (12) IN BLOCK "A" OF CANYON FAIRWAYS" AS SHOWN ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS, UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36, AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK 960820 AS DOCUMENT NO. 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

**Commonly known as 509 Canyon Greens Drive, Las Vegas, Nevada**

**SUBJECT TO:**

1. Taxes for the current fiscal year.

2. Covenants, Conditions, Reservations, Rights, Rights of Way and Easements now of record.

**TOGETHER WITH** all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

IN WITNESS WHEREOF, this instrument has been executed this _10th_ day of _JUNE_, 20_15_.

_(signature)_

MELANI SCHULTE

STATE OF _Nevada_          )
                          ) ss.
COUNTY OF _Clark_          )

On _June 10, 2015_ before me, the undersigned, a Notary Public in and for said State, personally appeared MELANI SCHULTE personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

AMANDA TRISCO
Notary Public
State of Nevada
Appt. No. 15-1111-1
My Appt. Expires Mar. 13, 2019

Signature: _Amanda Tri_
Name: _Amanda Trisco_

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. ▮▮▮▮▮▮▮▮ _____
   b. _____
   c. _____
   d. _____

2. Type of Property:
   a. ☐ Vacant Land       b. ☑ Single Fam. Res.
   c. ☐ Condo/Twnhse   d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg          f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural       h. ☐ Mobile Home
   ☐ Other

| FOR RECORDERS OPTIONAL USE ONLY |
|---|
| Book _____ Page:_____ |
| Date of Recording: _____ |
| Notes: |

3. a. Total Value/Sales Price of Property        $ 0.00
   b. Deed in Lieu of Foreclosure Only (value of property( _____ )
   c. Transfer Tax Value:                              $ 0.00
   d. Real Property Transfer Tax Due               $ 0.00

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section 7
   b. Explain Reason for Exemption: Transfer to or from a trust without consideration

5. Partial Interest: Percentage being transferred: 100 %
The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060
and NRS 375.110, that the information provided is correct to the best of their information and belief,
and can be supported by documentation if called upon to substantiate the information provided herein.
Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of
additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant
to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature ~~_____~~        Capacity: Representative

Signature _____              Capacity: _____

**SELLER (GRANTOR) INFORMATION**
**(REQUIRED)**
Print Name: Melani Schulte
Address: 9811 W Charleston Blvd #2-351
City: Las Vegas
State: Nevada          Zip: 89117

**BUYER (GRANTEE) INFORMATION**
**(REQUIRED)**
Print Name: MELANI SCHULTE, TTEE OF THE MELANI SCHULTE LIVING TRUST DATED DECEMBER 30, 2013, AND ANY AMENDMENTS THERETO.
Address: 9811 W Charleston Blvd #2-351
City: Las Vegas
State: Nevada          Zip: 89117

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**
Print Name: Law Offices of Gary L. Fales        Escrow # _____
Address: 2451 S Buffalo Drive, Suite 100
City: Las Vegas                                        State: NV       Zip: 89117

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

Jul 03 2018 09:33AM Lakes Law Offices 702-382-7903                     page 4

# Exhibit "M"

Inst #: 20180406-0002406
Fees: $40.00
RPTT: $0.00 Ex #: 007
04/06/2018 03:58:12 PM
Receipt #: 3388082
Requestor:
MELANI SCHULTE
Recorded By: GYOUNG  Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: FRONT COUNTER
Ofc: MAIN OFFICE

**RECORDING REQUESTED BY:**
MELANI SCHULTE
**When Recorded Mail Document
and Tax Statement To:**
SCHULTE PROPERTIES LLC
9811 W. Charleston Blvd #2-351
Las Vegas, NV 89117

APN█████████
ADDRESS: 509 Canyon Greens Drive, Las Vegas, NV 89144

## GRANT, BARGAIN, SALE DEED

**THIS INDENTURE WITNESSETH:** That, **MELANI SCHULTE**, Trustee of the **MELANI SCHULTE LIVING TRUST DATED DECEMBER 30, 2013, and any amendments thereto**

**In Consideration Of $10.00** and other **VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged,** do(es) hereby **GRANT, BARGAIN, SELL** and **CONVEY** to **SCHULTE PROPERTIES LLC, a Nevada Limited Liability Company**

All that real property situated in Clark County, State of Nevada, bounded and described as follows:

LOT TWELVE (12) IN BLOCK "A" OF CANYON FAIRWAYS" AS SHOWN ON THE FINAL MAP OF SUMMERLIN VILLAGE 3 CUSTOM LOTS, UNIT NO. 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 74 OF PLATS, PAGE 36, AND AS AMENDED BY CERTIFICATE OF AMENDMENT RECORDED AUGUST 20, 1996 IN BOOK 960820 AS DOCUMENT NO. 01210 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

SUBJECT TO:   1.   Taxes for the current fiscal year.
              2.   Covenants, Conditions, Reservations, Rights, Rights of Way and Easements
                   now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED: April 6, 2018

STATE OF NEVADA
COUNTY OF CLARK

This Instrument was acknowledged before
me on       April 6, 2018

By Melani Schulte, Trustee of the MELANI

SCHULTE LIVING TRUST dated December

30, 2013, and any amendments thereto

Signature _____
                              Notary Public

My Commission Expires:  10/31/18

_____ TRUSTEE
MELANI SCHULTE, Trustee of the MELANI
SCHULTE LIVING TRUST dated December 30,
2013, and any amendments thereto

Amberlea Davis
Notary Public
No: 14-14376-1 Exp 10/31/2018

Jul 03 2018 09:33AM Lakes Law Offices 702-382-7903                    page 5

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. ███████████
   b. _____
   c. _____
   d. _____

2. Type of Property:
   | | | | |
   |---|---|---|---|
   | a. | ☐ Vacant Land | b. | ☑ Single Fam. Res. |
   | c. | ☐ Condo/Twnhse | d. | ☐ 2-4 Plex |
   | e. | ☐ Apt. Bldg | f. | ☐ Comm'l/Ind'l |
   | g. | ☐ Agricultural | h. | ☐ Mobile Home |
   | | ☐ Other | | |

   FOR RECORDERS OPTIONAL USE ONLY
   Book_____ Page:_____
   Date of Recording: _____
   Notes:

3. a. Total Value/Sales Price of Property          $ 0.00
   b. Deed in Lieu of Foreclosure Only (value of property) (_____)
   c. Transfer Tax Value:                          $ 0.00
   d. Real Property Transfer Tax Due               $ 0.00

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _7_
   b. Explain Reason for Exemption: Transfer without consideration to or from a trust

5. Partial Interest: Percentage being transferred: 100 %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _Melani Schulte, TRUSTEE_    Capacity: GRANTOR

Signature _____    Capacity: GRANTEE

**SELLER (GRANTOR) INFORMATION**
**(REQUIRED)**
Print Name: Melani Schulte, Trustee of the
Address: 9811 W. Charleston Blvd #2-351
City: Las Vegas
State: NV          Zip: 89117

**BUYER (GRANTEE) INFORMATION**
**(REQUIRED)**
Print Name: SCHULTE PROPERTIES LLC
Address: 9811 W. Charleston Blvd #2-351
City: Las Vegas
State: NV          Zip: 89117

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**
Print Name: _____       Escrow # _____
Address: _____
City: _____        State: _____    Zip: _____

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED