Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Ashveen S. Dhillon (14189)
JOHNSON & GUBLER, P.C.
8831 West Sahara Avenue
Las Vegas, NV 89117
Telephone No. (702) 471-0065
Facsimile (702) 471-0075
mjohnson@mjohnsonlaw.com
*Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

|  |  |
|---|---|
| SCHULTE PROPERTIES LLC<br><br>Debtor, | Case No. BK-S-18-12734-MKN<br>Chapter 11<br><br>**OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND IN REM RELIEF**<br><br>Hearing Date: September 19, 2018<br>Hearing Time: 9:30 a.m. |

SCHULTE PROPERTIES LLC ("Debtor"), by and through its counsel, MATTHEW L. JOHNSON, ESQ. of JOHNSON & GUBLER, P.C., hereby opposes the Motion For Relief From Automatic Stay and In Rem Relief (the "Motion") filed by The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-27 ("Secured Creditor" or "Movant") regarding Debtor's property located at 509 Canyon Greens Drive, Las Vegas, NV 89144 (the "Property") as follows:

**I.    FACTS**

1. On May 5, 2003, William R. Schulte obtained a loan from Silver State Financial Services DBA Silver State Mortgage secured by the Property (the "Silver State Note"), which property was at

1

that time occupied by William Schulte and his then spouse, Melani Schulte. *See Declaration of Melani Schulte filed concurrently herewith.*

2. The Silver State Note was made in the amount of $960,000.00, to be paid over thirty years beginning July 1, 2003 and terminating on June 1, 2033, at a yearly interest rate of 6.25%, and with a monthly payment of $5,910.89. *See Exhibit 1, Silver State Note.*

3. On July 8, 2004, the Property was transferred to a family trust for the benefit of William R. Schulte and Melani Schulte, for estate planning purposes. *See Declaration of Melani Schulte.*

4. From August 1, 2005 to August 4, 2005, a series of deeds transferring the Property from the trust to William Schulte and Melani Schulte, then to Melani Schulte, then back to William Schulte and Melani Schulte, then back to the family trust, were recorded at the direction of Countrywide Home Loans in the course of obtaining a second deed of trust against the Property. *See Declaration of Melani Schulte.*

5. In February of 2007, on information and belief, Silver State Financial Services, DBA Silver State Mortgage, holder of the Silver State Note, ceased doing business. *See Declaration of Melani Schulte.*

6. On October 11, 2009, William R. Schulte and Melani Schulte filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, Case No. 09-29123-MKN (the "2009 Bankruptcy"). *See Exhibit 2, Docket Report, Case No. 09-29123-MKN, pages 1-3.*

7. At the time of the 2009 Bankruptcy, William R. Schulte and Melani Schulte earned their livelihood through the management of residential rental properties. Many of the rental properties were held by entities which were ultimately joint administrative debtors with William R. Schulte and Melani Schulte in the 2009 Bankruptcy. *See Exhibit 2. See also Declaration of Melani Schulte filed concurrently herewith.*

8. At the time of the filing of the 2009 Bankruptcy, America's Servicing Company, a division of Wells Fargo Bank (collectively hereafter "Wells Fargo"), was the servicer of the Silver State

Note.  *See Exhibit 3, America's Servicing Company correspondence. See also Declaration of Melani Schulte.*

9. At the time of the filing of the 2009 Bankruptcy, William Schulte and Melani Schulte were unaware who the successor in interest to the Silver State Note was.  *See Declaration of Melani Schulte.*

10. On February 17, 2010, Movant filed a Proof of Claim in the 2009 Bankruptcy asserting a secured claim in the amount of $873,265.57 (the "Proof of Claim").  *See Exhibit 4, Movant's Proof of Claim No. 63-1 filed in the 2009 Bankruptcy.*

11. The Proof of Claim restated the original terms of the Silver State Note including referencing the Silver State Note's maturity date of June 1, 2033, and an applicable annual interest rate of 6.25%. *See Exhibit 4.*

12. On May 18, 2010, an Assignment of Deed of Trust was recorded against the Property as instrument 201005180001779 (the "Assignment of Deed of Trust").  *See Exhibit 5, Assignment of Deed of Trust.*

13. The Assignment of Deed of Trust, executed by Herman John Kennerty aka John Kennerty ("Kennerty") on behalf of Mortgage Electronic Registration Systems, Inc., solely as nominee for Silver State Financial Services, DBA Silver State Mortgage, purports to assign the Silver State Note to Movant.  *See Exhibit 5.*

14. Debtor is not aware of any authority or documentation allowing Mortgage Electronic Registration Systems, Inc. to assign interests of the failed Silver State Financial Services.  *See Declaration of Melani Schulte.*

15. Debtor is not aware of any authority or documentation allowing Kennerty, a Wells Fargo employee, to execute documents on behalf of Mortgage Electronic Registration Systems, Inc. *See Declaration of Melani Schulte.*

16. On May 20, 2010, just two days after the Assignment of Deed of Trust was recorded against the Property, Kennerty was deposed in King County Washington Superior Court Case No. 09-2-46576-2, Lydia Geline v Northwest Trustee Services, Inc. et al regarding his employment with Wells Fargo and the process he goes through to sign documents such as the Assignment of Deed of Trust recorded against the Property. *See Exhibit 6, transcript of Kennerty deposition dated May 20, 2010.*

17. Kennerty's May 20, 2010 deposition includes the following exchanges between himself and the questioner, attorney Melissa A. Huelsman:

    a. Huelsman: By whom are you employed?

       Kennerty: Wells Fargo.

       Huelsman: Can you tell me which part of Wells Fargo?

       Kennerty: Wells Fargo Home Mortgage.

       *See Exhibit 6, P.4-5.*

    b. Huelsman: How often do you actually sign documents?

       Kennerty: Daily.

       Huelsman: Can you tell me about how many documents you sign a day?

       Kennerty: Anywhere from 50 to 150.

       *See Exhibit 6, P.8-9.*

    c. Huelsman: So what kind of documents do you regularly sign?

       Kennerty: Assignments; declarations; various affidavits.

       Huelsman: Are they all in connection with foreclosures or motions for relief to stay in bankruptcy?

       Kennerty: More so foreclosure.

       *See Exhibit 6, P.10.*

  d. Huelsman: So you're getting these documents, the loss mitigation declaration, and the beneficiary declaration, and those two documents are printed and presented to you by somebody else for signing; right?

Kennerty: Correct.

Huelsman: That's one of your other file clerks or staff people that gives you those documents?

Kennerty: Yes.

Huelsman: And those are part of the 50 to 150 documents per day that you sign; correct?

Kennerty: Yes.

Huelsman: Somebody comes and brings you those documents and you sit down to sign them. And you're looking at the documents to make sure that the date is correct and consistent with the date you're signing the document; correct?

Kennerty: Yes.

Huelsman: And you're looking on a computer screen at the foreclosure matrix that you described to me to make certain that the name of the foreclosing – of the beneficiary on the document that you're signing matches with the matrix; is that correct?

Kennerty: No. That's not correct.

Huelsman: Okay. What are you looking at on the matrix?

Kennerty: I'm not looking at the matrix.

Huelsman: Okay.

Kennerty: The matrix is updated daily, and this information is pulled from the matrix.

**Huelsman: So you're simply signing the document that's presented to you and you're just making sure that the date is correct?**

**Kennerty: Correct.**

1     Huelsman: So how do you know when you're signing this document that it's true and
2     correct?
3     Kennerty: There are people responsible for the – for maintaining that foreclosure
4     matrix.
5     *See Exhibit 6, P. 61-62.*
6     e.  Huelsman: And so when you sign this beneficiary declaration and any other beneficiary
7     declaration, you don't have any independent knowledge about whether or not the
8     information is truthful, you're relying on the other people in the process to make sure
9     that the information is correct on the document that you're signing?
10     Kennerty: Yes.
11     Huelsman: And do you know the difference between whether or not an entity has a – is
12     the actual holder of the promissory note or the requisite authority under RCW 62A.3-
13     301 to enforce the obligation?
14     Kennerty: Could you read the question again?
15     (Requested testimony was read.)
16     Kennerty: No.
17     *See Exhibit 6, P.64. (Emphasis added.)*
18  18. On March 8, 2011, an Order Confirming Chapter 11 Plan of Reorganization (the "Confirmation
19     Order") confirming the Third Amended Joint Plan of Reorganization of Melani Schulte and
20     William R. Schulte (the "Confirmed Plan") was entered in the 2009 bankruptcy as docket no.
21     912. *See Exhibit 7, Order Confirming the Debtors' Chapter 11 Plan of Reorganization.*
22  19. The Confirmation Order states, "The secured portions of the claims of the Debtors' lenders (the
23     "Lenders") are reduced to either the appraised value of the underlying properties (the
24     "Properties"), pursuant to 11 U.S.C. §506(a) or as agreed upon between the parties, as set forth
25     in this Order and the Plan." *See Exhibit 7.*
26

20. The Confirmed Plan ordered Movant's secured claims against the Property to be in the amount of $807,141.58 (the "Approved Claim") and Movant's unsecured claims against the debtors in the amount of $0.00. *See Exhibit 7, P.7 L.8.*

21. The Confirmed Plan ordered the Approved Claim to be treated "in accordance with the terms of its related note and mortgage." *See Exhibit A to Exhibit 7, P. 2. ¶2.01(b).*

22. The Approved Claim of **$807,141.58** is subject to an annual interest rate of **6.25%** (the "Approved Interest Rate") with a monthly payment as set forth in the Silver State Note of **$5,910.89** (the "Approved Monthly Payment"). *See Exhibit 1.*

23. On February 10, 2012, Melani Schulte filed for divorce from William R. Schulte, Case No. D-12-458809-D, in which case all interest in the Property was awarded to Melani Schulte as her sole and separate property. *See Declaration of Melani Schulte.*

24. On August 21, 2013, a Grant, Bargain, Sale Deed was recorded against the Property as instrument 201308210002181, conveying the Property from William R. Schulte and Melani Schulte as Joint Tenants to Melani Schulte as her sole and separate property. *See Declaration of Melani Schulte.*

25. Pursuant to the Confirmed Plan, " the unsecured portions of the Lenders' claims are reduced and shall be treated as 'general unsecured claims,' pursuant to 11 U.S.C. §506(a)" and any lenders holding secured claims against the Property in excess of the Approved Claim were deemed to be unsecured. *See Exhibit 7, P.6, L.32.*

26. On December 15, 2015, Melani Schulte and William R. Schulte received orders of discharge in the 2009 Bankruptcy, which discharge included any unsecured creditors that may have once had a secured claim against the Property in excess of the Approved Claim. *See Exhibit 2.*

27. The Confirmed Plan directs that "the Debtors shall transfer title to their properties to a Nevada limited liability company (the "Holding Company"), for liability purposes." *See Exhibit 7, P.57.*

28. The Confirmation Order directs that "the Debtors are authorized to undertake or cause to be undertaken any and all acts and actions contemplated by the Plan or required to consummate and implement the provisions of the Plan, prior to, on and after the Effective Date, including without limitation, entering, executing, delivering, filing or recording any agreements, instruments or documents necessary to implement the Plan." *See Exhibit 7, P. 23 L. 7.*

29. On April 6, 2018, Melani Schulte, in conformity with the Confirmation Order and the Confirmed Plan, transferred the Property into its' Holding Company, Schulte Properties LLC, which is the Debtor in the instant case, by recording a Grant, Bargain, Sale Deed as instrument 201804060002406. *See Declaration of Melani Schulte.*

30. Schulte Properties LLC and/or its agent Melani Schulte (collectively hereafter referred to as the "Debtor") maintained proper insurance on the Property. Having had numerous disputes with Wells Fargo regarding their application of payments in regards to the Property and other properties of the Debtor, Debtor insisted on paying for homeowner's insurance directly rather than paying through an escrow account. *See Declaration of Melani Schulte.*

31. Despite Debtor's requests to Wells Fargo and Debtor's insurance company, Wells Fargo persisted in billing Debtor for insurance through an escrow account. *See Exhibit 8, Wells Fargo Account Activity Statement.*

32. A non-exclusive list of Wells Fargo's unnecessarily billed hazard insurance includes the following:

| | |
|---|---|
| February 25, 2010 | $4849.00 |
| February 24, 2011 | $5005.00 |
| August 8, 2012 | $2198.00 |
| June 7, 2013 | $19,261.00 |
| February 24, 2014 | $4931.00 |
| February 29, 2016 | $5672.00 |

| February 28, 2017 | $6136.00 |

*See Exhibit 8.*

33. Wells Fargo's June 7, 2013 charge of $19,261.00 to the Debtor was, over 8 months later, refunded on February 25, 2014. *See Exhibit 8.*

34. Wells Fargo's February 28, 2017 charge of $6136.00 to the Debtor was also refunded, on May 12, 2017.  *See Exhibit 8.*

35. Debtor similarly sought to make tax payments directly rather than through Wells Fargo's escrow account, again, because of Debtor's wariness of Wells Fargo's account keeping practices, but was unsuccessful in persuading Wells Fargo to cease making direct tax payments and billing an escrow account. *See Declaration of Melani Schulte.*

36. Although the Confirmed Plan directed Movant's Approved Claim to be in the amount of $807,141.58 as of the March 8, 2011 Confirmation Order, Wells Fargo continues to seek collection of amounts in excess of the Approved Claim.  On March 8, 2011, Wells Fargo's Account Activity Statement reflects a correct Principal Balance owed of $807,141.58, and ALSO reflects an Escrow Balance owing of $36,490.95, an Outstanding Fee Balance owing of $7,700.29, and an Outstanding Corporate Advance Fee Balance owing of $3,961.52. *See Exhibit 8.*

37. Despite numerous requests, Movant has never yet provided the Debtor with accurate records reflecting removal of all fees and costs in excess of the Approved Claim. *See Declaration of Melani Schulte.*

38. The Debtor has been trying to obtain accurate records that reflect the Court's Confirmation Order and proper application of Debtor's payments from various lenders regarding all 32 of its properties, without success. *See Declaration of Melani Schulte.*

39. Facing foreclosure proceedings on several of its properties due to lenders' inaccurate records, the Debtor filed for Chapter 11 bankruptcy protection on May 31, 2017 as Case No. 17-12883-MKN (the "2017 Bankruptcy"). *See Declaration of Melani Schulte.*

40. Believing it could effectively negotiate and obtain proper records from secured lenders (Movant and others) outside of bankruptcy with reduced administrative costs, the Debtor sought and obtained voluntary dismissal of the 2017 Bankruptcy. *See Declaration of Melani Schulte.*

41. Following the dismissal of the 2017 Bankruptcy, several properties that had not yet been transferred to the Holding Company were transferred to Schulte Properties LLC as authorized and directed by the Confirmation Order. *See Declaration of Melani Schulte.*

42. Again facing foreclosure proceedings on several of its properties due to lenders' inaccurate records, and resigned to the necessity of bringing secured lenders to be held accountable before the Court for failure to abide by the Confirmation Order, Debtor again filed for Chapter 11 bankruptcy protection on May 10, 2018, which bankruptcy proceeding is the above-captioned Case No. 18-12734. *See Declaration of Melani Schulte.*

43. Debtor's Scheduled Value of the Property of $2,085,740.00 is based upon a Zillow.com "Zestimate" obtained on May 9, 2018, the day before Debtor's bankruptcy filing. *See Exhibit 9, Zillow.com estimate.*

44. There is over $450,000.00 undisputed equity in the Property. *See Exhibit 9.*

45. On August 17, 2018, Movant filed the instant Motion seeking relief from the automatic stay provided to the Debtor. Movant's Motion's coversheet alone contains numerous errors evidencing Movant's failure to maintain accurate records under the Confirmation Order, such as:

    a. "Total Encumbrances: $1,366,435.19" if accurate would reflect the Approved Claim of $807,141.58 plus any post-confirmation authorized unpaid interest and costs.

     b. "Payment per Month: $7,567.64" if accurate would reflect the Approved Monthly Payment of $5,910.89.

     c. "Amount of Contractual Arrearages: $810,497.97" if accurate would surely be far below the principal Approved Claim amount of $807,141.58.

*See Exhibit 10, Coversheet to Movant's Motion. See Also Exhibit 7.*

46. The Debtor is preparing a Motion to Assume Lease regarding the Property tenants, who make regular payments to the Debtor. *See Declaration of Melani Schulte.*

47. Post-petition, the Debtor has transmitted July and August payments to Movant in the Approved Monthly Payment of $5,910.89. *See Declaration of Melani Schulte.*

48. Although the Debtor is wary of its' lenders' inaccurate record keeping and misapplication of Debtor's payments, the Debtor fully intends to make all regular post-petition monthly payments to its creditors, including making the Approved Monthly Payment of $5,910.89 to Movant in payment of the Property Approved Claim. *See Declaration of Melani Schulte.*

## II. ARGUMENT

### A. Movant has Failed to Prove it has Authority to Make Claims Against Debtor

Having brought the Motion before the Court, it is incumbent upon Movant to prove the basis of its claims. The only link between Movant's purported claim and the Silver State Note is an Assignment of Deed of Trust signed by Kennerty, a Wells Fargo employee, purportedly on behalf of Mortgage Electronic Registration Systems, Inc., who has admitted that he does not independently verify any details of the documents he signs other than the document's date. *See Exhibit 6.* Given Kennerty's testimony, how can the Debtor or the Court possibly be confident that the Assignment of Deed of Trust is proper and valid, without additional documentation? Movant has not met its burden of proof to demonstrate it has authority to proceed under the Silver State Note, and Movant's Motion should be denied for failure to state a claim for relief against Debtor upon which relief can be granted.

## B. No Cause Exists to Grant Relief From Stay Pursuant to §362(d)(1) or (d)(2)

Movant has not demonstrated that any cause exists for relief from the stay pursuant to §362 (d)(1) or (d)(2) because no cause exists. The United States Bankruptcy Code provides pursuant to 11 U.S.C. §362:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

Here, the Debtor values the Property at approximately $2,085,740.00. Movant has not disputed the Debtor's estimated value. Further, the Approved Claim pursuant to the Confirmed Plan is $807,141.58. Following confirmation of the 2009 Bankruptcy plan, the Debtor and/or its predecessors made Approved Monthly Payments for a period of time. Due to Movant's servicer Wells Fargo's failure to provide the Debtor with accurate accounting, especially relating to its Escrow Account and other fees, the Debtor cannot be sure what the actual amount owing to Movant is. However, given that the Approved Claim is $807,141.58 (which was paid down by some unknown amount through Debtor's payments), even if you add to that Movant's claimed "Amount of Contractual Arrearages" of $810,497.97, <u>which amount Debtor vehemently disputes</u>, the sum is only $1,617,639.55, which would leave ***equity of $468,100.45*** in the Property. In actuality, the Debtor must have even more equity than this estimation, due to both Debtor's Approved Monthly Payments made, and Movant's servicer's faulty loan, escrow, and interest calculations. Thus, while the Debtor cannot be sure of the exact figures, it is crystal clear that there is significant equity in the Property, and therefore sufficient adequate protection exists. Movant has demonstrated no grounds to seek relief from the automatic stay pursuant to §362(d)(1) or (2).

**C.  No Cause Exists to Grant Relief From Stay Pursuant to 11 U.S.C. §362(d)(4)(B).**

The Debtor sought Chapter 11 Bankruptcy Protection precisely because its lenders, including Movant, have egregiously failed to abide by Judge Markell's Confirmation Order.  Movant's Motion is a prime example.  Although the Approved Claim is $807,141.58, the Motion states Movant's encumbrances on the Property total $1,366,435.19, due in part to Wells Fargo's carrying forward of pre-bankruptcy costs.  Wells Fargo has further persisted in billing Debtor many thousands of dollars of unnecessary hazard insurance charges.  Further, although the Approved Monthly Payment is $5,910.89, Movant asserts the payment per month is $7,567.64.  Given these discrepancies, it is easy to understand how Movant has relied upon its servicer Wells Fargo's faulty numbers and has generated unfounded alleged arrearages.

Debtor and/or Melani Schulte has spent an exhaustive amount of time and resources attempting to coax Movant, and various other lenders unrelated to the instant Motion, into complying with the  Confirmation Order, to no avail.  It is for this reason exactly that the Debtor has sought Chapter 11 bankruptcy protection, and for this reason exactly that the Debtor desperately needs the automatic stay in place.[1]  Movant must be prevented from foreclosing on Debtor's property based upon its false record keeping in violation of the Court's Confirmation Order in the 2009 Bankruptcy.  This Court must hold Movant accountable for its actions.

It should be noted that Movant makes numerous false or inexplicable statements in its Motion, which mislead or otherwise distract from actual facts.  Movant has completely misstated the terms of the loan owed by the Debtor, as outlined above.  Movant states, "This loan is contractually due for 01/01/2013".  *See Motion, P.6, L. 19.*  Movant also states, "This loan is contractually due for December 1, 2009".  *See Motion, P. 7, L. 1.*  Neither statement is true.  In fact, under the Confirmed

---

[1] Due to William R. Schulte and Melani Schulte's divorce, and the transfer of properties into a Holding Company per the Confirmed Plan, the Debtor filed this case rather than attempting to seek relief in Melani Schulte's 2009 Bankruptcy that was confirmed years ago.

13

Plan, the terms of the Silver State Note continue and the loan is due in June 2033. Finally, Movant throws around the word "scheme", making completely baseless allegations of mal intent.

In fact, the Debtor's intent is only for its creditors to honor the Court's Confirmation Order and be held accountable for failing to do so thus far. It is true that once it became clear to the Debtor and/or Melani Schulte that Approved Monthly Payments sent to Movant were not being properly applied, the Debtor ceased making payments and incurred attorney fees. However, given the stay afforded the Debtor in the present case, the Debtor is hopeful that Movant (and others) can be held accountable for its actions, the Debtor can continue making the Approved Monthly Payment, and any actual, justifiable arrearages, if any, can be resolved. In short, Debtor's intent is precisely what the stay afforded the Debtor is designed for. Movant's claims for relief under 11 U.S.C. §362(d)(4)(B) are unfounded and should be denied.

### III.    CONCLUSION

Make no mistake, Movant's Motion is about the numbers – Movant's **false** numbers. One has to wonder if it is more cost effective for Movant, and especially its servicer Wells Fargo, to persist in churning out mechanical responses and motions than for it to actually pause to comply with the Court's orders and other laws. Why Movant persists is unanswerable. Truly, if there is a party "scheming" here, it is not the Debtor. What the consequences should be for Movant's actions is better addressed by separate motion/action. However, it is clear that without having met a minimum requirement of accurate accounting, Movant has no right to proceed against the Debtor.

Movant's Motion should be denied for failure to state a claim for relief against Debtor upon which relief can be granted. Movant has not met its burden of proof to demonstrate it has authority to proceed under the Silver State Note.

Further, Movant's Motion should be denied because it completely fails in its arguments based upon §362(d)(1) or (d)(2), as the Property has undisputed equity in excess of $450,000.00. Movant even further fails to prove relief under §362(d)(4)(B) is justified, because Debtor's actions have been

in accordance with Court order or in seeking others to be accountable to the Court's order.  Had Movant and Debtor's other lenders properly complied with the Confirmation Order, years of exhaustive correspondence, litigation, and expense could have been avoided.

The Code provides the Debtor a much needed stay against actions of creditors, such as Movant, who would otherwise proceed against the Debtor in an unjust and unconscionable manner, detrimental to the Debtor's estate.  Movant has failed to provide cause for relief from this stay.  The Debtor therefore respectfully requests the Court deny Movant's Motion and grant the Debtor such other relief as it deems appropriate and just.

DATED: September 5, 2018.

                                                  JOHNSON & GUBLER, P.C.

                                                  */s/ Matthew L. Johnson*       .
                                                  Matthew L. Johnson (6004)
                                                  Russell G. Gubler (10889)
                                                  Ashveen S. Dhillon (14189)
                                                  JOHNSON & GUBLER, P.C.
                                                  8831 West Sahara Avenue
                                                  Las Vegas, NV  89117
                                                  Telephone No. (702) 471-0065
                                                  Facsimile (702) 471-0075
                                                  mjohnson@mjohnsonlaw.com
                                                  *Attorneys for Debtor*

# CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Johnson & Gubler, PC, and that on September 5, 2018 I caused to be served a true and correct copy of the **OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND IN REM RELIEF** in the following manner:

[X]   a.   **Electronic Service**

Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: September 5, 2018.

*/s/ Suzanne Alexander*                     .
An Employee of Johnson & Gubler, P.C.