Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Ashveen S. Dhillon (14189)
JOHNSON & GUBLER, P.C.
8831 West Sahara Avenue
Las Vegas, NV  89117
Telephone No. (702) 471-0065
Facsimile (702) 471-0075
mjohnson@mjohnsonlaw.com
*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SCHULTE PROPERTIES LLC<br><br>Debtor, | Case No. BK-S-18-12734-MKN<br>Chapter 11<br><br>**OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE ADEQUATE PROTECTION PAYMENTS**<br><br>Hearing Date: October 24, 2018<br>Hearing Time: 9:30 a.m. |

SCHULTE PROPERTIES LLC ("Debtor"), by and through its counsel, MATTHEW L. JOHNSON, ESQ. of JOHNSON & GUBLER, P.C., hereby opposes the Motion for Relief from Automatic Stay or, In the Alternative Adequate Protection Payments (the "Motion") filed by NEW PENN FINANCIAL LLC d/b/a SHELLPOINT MORTGAGE SERVICING ("NEW PENN") as follows:

**I.     FACTS**

1. On or about July 18, 2001, Melani Schulte signed a note and first position deed of trust (the "Golden Hawk DOT") in favor of Amera Mortgage Corporation and secured by the property

1

1. located at 1013 Golden Hawk Way, Las Vegas, Nevada ("Golden Hawk"). *See Declaration of Melani Schulte filed concurrently herewith.*

2. On October 11, 2009, William R. Schulte and Melani Schulte filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, Case No. 09-29123-MKN (the "2009 Bankruptcy"). *See Exhibit 1, Docket Report, Case No. 09-29123-MKN, pages 1-3.*

3. At the time of the 2009 Bankruptcy, William R. Schulte and Melani Schulte earned their livelihood through the management of residential rental properties. Many of the rental properties were held by entities which were ultimately joint administrative debtors with William R. Schulte and Melani Schulte in the 2009 Bankruptcy. *See Exhibit 1. See also Declaration of Melani Schulte.*

4. On February 16, 2010, CitiMortgage, Inc. filed a Proof of Claim in the 2009 Bankruptcy, asserting its claim to the Golden Hawk DOT by merger with ABN Amro Mortgage Group, Inc., *See Claim 61-1 in the 2009 Bankruptcy.*

5. On September 30, 2010, Judge Markell entered an order authorizing transfer of the Golden Hawk property then held by the single asset limited liability company "1013 Golden Hawk, LLC" to William R. Schulte and Melani Schulte, for judicial expediency purposes. *See Exhibit 2, Order Under 11 U.S.C. §§ 105, 363, and 365 Approving the Transfer of Real Property To, and the Assumption and Assignment of Executory Contracts and Unexpired Leases By, Melani Schulte and William R. Schulte, 2009 Bankruptcy Doc 749.*

6. On November 1, 2010, a Grant, Bargain, Sale Deed was recorded transferring Golden Hawk to William R. Schulte and Melani Schulte, in accordance with the Court's September 30, 2010 order. *See Exhibit 3, Grant, Bargain, Sale Deed dated November 1, 2010.*

7. On March 8, 2011, an Order Confirming Chapter 11 Plan of Reorganization (the "Confirmation Order") confirming the Third Amended Joint Plan of Reorganization of Melani Schulte and

William R. Schulte (the "Confirmed Plan") was entered in the 2009 bankruptcy as docket no. 912.  *See Exhibit 4, Order Confirming the Debtors' Chapter 11 Plan of Reorganization.*

8. The Confirmation Order states, "The secured portions of the claims of the Debtors' lenders (the "Lenders") are reduced to either the appraised value of the underlying properties (the "Properties"), pursuant to 11 U.S.C. §506(a) or as agreed upon between the parties, as set forth in this Order and the Plan."  *See Exhibit 4, P.6, L 27.*

9. The Confirmed Plan ordered CitiMortgage, Inc.'s secured claim against the Golden Hawk property to be in the amount of $64,854.69 (the "Approved CitiMortgage Claim") and CitiMortgage's unsecured claims against the debtors in the amount of $0.00.  *See Exhibit 4, P.12 L.31.*

10. The Confirmed Plan ordered the Approved CitiMortgage Claim to be treated "amortized at 5.25% over 30 years".  *See Exhibit A to Exhibit 4, PP. 11-12.*

11. The Approved CitiMortgage Claim of **$64,854.69** amortized at **5.25%** (the "Approved Interest Rate") over 30 years yielded a monthly payment due to CitiMortgage,Inc. of **$358.13** (the "Approved Monthly Payment").  *See Exhibit 5, Amortization Schedule.*

12. Prior to February 2014, although Debtor and/or Melani Schulte made the Approved Monthly Payment for years, CitiMortgage and/or its servicer failed to properly apply the payments, categorizing Approved Monthly Payments as "Unapplied Payments", then when funds built up applying the payment in principal and interest amounts contrary to the terms of the Confirmed Plan.  *See Exhibit 6, Shellpoint Mortgage Servicing Loan History, PP. 3-6.*

13. To compound the problem, when CitiMortgage Inc. finally applied payments to the loan, late charges were assessed, often referencing payment due dates PRIOR to confirmation of the Confirmed Plan.  *See Exhibit 6, PP. 3-6.*

14. On February 10, 2012, Melani Schulte filed for divorce from William R. Schulte, Case No. D-12-458809-D, in which case all interest in the Golden Hawk property was awarded to Melani Schulte as her sole and separate property. *See Declaration of Melani Schulte.*

15. On August 21, 2013, a Grant, Bargain, Sale Deed was recorded against the Golden Hawk property as instrument 201308210002194, conveying the Golden Hawk property from William R. Schulte and Melani Schulte as Joint Tenants to Melani Schulte as her sole and separate property. *See Exhibit 7, Grant Bargain, Sale Deed dated August 21, 2013.*

16. Pursuant to the Confirmed Plan, " the unsecured portions of the Lenders' claims are reduced and shall be treated as 'general unsecured claims,' pursuant to 11 U.S.C. §506(a)" and any lenders holding secured claims against the Golden Hawk property in excess of the Approved CitiMortgage Claim were deemed to be unsecured. *See Exhibit 4, P.6, L.32.*

17. On December 15, 2015, Melani Schulte and William R. Schulte received orders of discharge in the 2009 Bankruptcy, which discharge included any unsecured creditors that may have once had a secured claim against the Golden Hawk property in excess of the Approved CitiMortgage Claim. *See Exhibit 1.*

18. The Confirmed Plan directs that "the Debtors shall transfer title to their properties to a Nevada limited liability company (the "Holding Company"), for liability purposes." *See Exhibit A to Exhibit 4, P.27.*

19. The Confirmation Order directs that "the Debtors are authorized to undertake or cause to be undertaken any and all acts and actions contemplated by the Plan or required to consummate and implement the provisions of the Plan, prior to, on and after the Effective Date, including without limitation, entering, executing, delivering, filing or recording any agreements, instruments or documents necessary to implement the Plan." *See Exhibit 4, P. 23 L. 7.*

20. Schulte Properties LLC and/or its agent Melani Schulte (collectively hereafter referred to as the "Debtor") made proper Approved Monthly Payments under the Confirmed Plan to the Golden

Hawk Approved CitiMortgage for years.  *See Exhibit 6, PP. 3-6. See also Declaration of Melani Schulte.*

21. On or about March 21, 2016, CitiMortgage , Inc. Successor by Merger to ABN AMRO Mortgage Group, Inc. assigned the Golden Hawk DOT to Ditech Financial LLC F/K/A Green Tree Servicing LLC. *See Exhibit 8, New Penn Proof of Claim #13.*

22. On or about June 30, 2017, Ditech Financial LLC F/K/A Green Tree Servicing LLC assigned the Golden Hawk DPT to New Penn Financial, LCL D/B/A Shellpoint Mortgage Servicing. *See Exhibit 8.*

23. Despite numerous requests, CitiMortgage or its purported successor, NEW PENN, has never yet provided the Debtor with accurate records reflecting the Approved CitiMortgage Claim and the Debtor's Approved Monthly Payments thereto.  *See Declaration of Melani Schulte.*

24. The Debtor has been trying to obtain accurate records that reflect the Court's Confirmation Order and proper application of Debtor's payments from various lenders regarding all 32 of its properties, without success.  *See Declaration of Melani Schulte.*

25. Facing foreclosure proceedings on several of its properties due to lenders' inaccurate records, the Debtor filed for Chapter 11 bankruptcy protection on May 31, 2017 as Case No. 17-12883-MKN (the "2017 Bankruptcy").  *See Exhibit 9, Docket Report, Case No. 17-12883-MKN.*

26. Believing it could effectively negotiate and obtain proper records from secured lenders (NEW PENN and others) outside of bankruptcy with reduced administrative costs, the Debtor sought and obtained voluntary dismissal of the 2017 Bankruptcy.  *See Declaration of Melani Schulte.*

27. Following the dismissal of the 2017 Bankruptcy, several properties that had not yet been transferred to the Holding Company were transferred to Schulte Properties LLC as authorized and directed by the Confirmation Order.  *See Declaration of Melani Schulte.*

28. On April 6, 2018, Melani Schulte, in conformity with the Confirmation Order and the Confirmed Plan, transferred the Golden Hawk property into its' Holding Company, Schulte

1  Properties LLC, which is the Debtor in the instant case, by recording a Grant, Bargain, Sale
2  Deed as instrument 201804060002396.  *See Exhibit 10, Grant Bargain Sale Deed dated April*
3  *6, 2018. See also Declaration of Melani Schulte.*

29. Again facing foreclosure proceedings on several of its properties due to lenders' inaccurate records, and resigned to the necessity of bringing secured lenders to be held accountable before the Court for failure to abide by the Confirmation Order, Debtor filed for Chapter 11 bankruptcy protection on May 10, 2018, which bankruptcy proceeding is the above-captioned Case No. 18-12734.  *See Declaration of Melani Schulte.*

30. Debtor's Scheduled Value of the Golden Hawk property of $235,106.00 is based upon a Zillow.com "Zestimate" obtained on May 9, 2018, the day before Debtor's bankruptcy filing.  *See Exhibit 10, Zillow.com estimate.*

31. On September 11, 2018, NEW PENN filed a Proof of Claim in the instant case asserting a claim to the Golden Hawk DOT and alleging the "Amount Necessary to cure any default as of the date of the petition" to be $30,885.89.  *See Exhibit 8.*

32. On September 17, 2018, NEW PENN filed the instant Motion seeking relief from the automatic stay provided the Debtor.  NEW PENN's Motion's coversheet alone contains numerous errors evidencing NEW PENN or its predecessor's failure to maintain accurate records under the Confirmation Order, such as:

   a. "Amount of Note: $100,800.00" if accurate would reflect the Approved CitiMortgage Claim of $64,854.69.
   b. "Duration: 15 Years" if accurate would reflect the Court's approved term of 30 years.
   c. "Payment Per Month: $490.32" if accurate would reflect the Approved Monthly Payment of $358.13.

   *See Exhibit 12, Coversheet to NEW PENN's Motion.*

33. To the best of Debtor's counsel's knowledge and belief, no attempt to resolve this matter was made by NEW PENN.  *See Declaration of Matthew L. Johnson filed concurrently herewith.*

34. The Debtor has filed a Motion to Assume Leases Between Schulte Properties LLC and Residential Tenants regarding the Golden Hawk property tenants, who make regular payments to the Debtor.  *See Declaration of Melani Schulte.*

35. Contrary to NEW PENN's unsubstantiated claim, post-petition, the Debtor has transmitted payment to NEW PENN in the Approved Monthly Payment amount of $358.13 every month from July 2018 through October 2018.  *See Exhibit 13, US Bank cleared check images.  See also Declaration of Melani Schulte.*

36. Although the Debtor is wary of its' lenders' inaccurate record keeping and misapplication of Debtor's payments, the Debtor fully intends to continue making all regular post-petition monthly payments to its creditors, including continuing to make the Approved Monthly Payment of $358.13 to NEW PENN in payment of the Golden Hawk Approved NEW PENN Claim.  *See Declaration of Melani Schulte.*

## II.    ARGUMENT

### A.  NEW PENN has Failed to Comply with LR 4001(a)(2)

NEW PENN was required, pursuant to Local Rule 4001(a)(2), to in good faith attempt resolution of this matter prior to filing any motion for relief from the automatic stay.  LR 4001(a)(2) states:

> Parties in interest are directed to communicate in good faith regarding resolution of the motion before filing a motion for relief from stay including, as appropriate, communication with any trustee appointed in the case.  Such attempts to resolve the dispute must be made in a reasonable time frame prior to, but in any case no less than three (3) business days (if debtor is represented by an attorney) or five (5) business days (if debtor(s) are representing themselves), before the motion is filed.  **Movant must provide evidence of their attempt to resolve the matter with more than conclusory declarations, which shall be filed with the motion.  The court may refuse to entertain a motion or opposition if the parties do not comply with this rule.**  The court may award, deny, or adjust the fees of an attorney for noncompliance.  Compliance with this subsection is not required for motions for relief from stay

relating to property identified by the debtor as being surrendered in the schedules, statements, or the proposed plan of reorganization. [Emphasis added.]

Debtor's counsel, on information and belief, was not contacted in good faith by NEW PENN. Had NEW PENN made contact with Debtor's counsel, the Debtor would have expressed to NEW PENN, contrary to its assertions in the Motion, that the Debtor HAS in fact made monthly adequate protection payments in addition to the equity adequate protection NEW PENN already has, as discussed below.[1] Debtor has already made four Approved Monthly Payments towards the Approved CitiMortgage Claim since the commencement of the instant case. Furthermore, NEW PENN's only evidence of their alleged "communication in good faith" is a single declaratory sentence on the Motion's coversheet stating, "Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so," which statement was electronically signed by NEW PENN's counsel. No further correspondence or other evidence of NEW PENN's "communication in good faith" was presented as an attachment to the Motion, although clearly required by LR 4001(a)(2): "Movant must provide evidence of their attempt to resolve the matter with more than conclusory declarations, which shall be filed with the motion. The court may refuse to entertain a motion or opposition if the parties do not comply with this rule."

Having failed to 1) communicate in good faith, and 2) provide evidence of their attempt to resolve the matter with more than conclusory declarations, NEW PENN's Motion should be denied for failure to abide by Local Rule 4001(a)(2).

---

[1] On August 21, 2018, NEW PENN apparently sent a letter via email to a legal assistant at Johnson & Gubler, PC, but did not claim that they were not receiving the monthly payments that the Debtor had been paying each month since July 2018.

**B.  No Cause Exists to Grant Relief From Stay Pursuant to §362(d)(1) or (d)(2)**

NEW PENN has not demonstrated that any cause exists for relief from the stay pursuant to §362 (d)(1) or (d)(2) because no cause exists.  The United States Bankruptcy Code provides pursuant to 11 U.S.C. §362:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization.

Here, the Debtor values the Golden Hawk property at approximately $235,106.00.  NEW PENN has not disputed the Debtor's estimated value.  Further, the Approved CitiMortgage Claim pursuant to the Confirmed Plan is $64,854.69.  Following confirmation of the 2009 Bankruptcy plan, the Debtor and/or its predecessors made Approved Monthly Payments for a period of time.  Due to CitiMortgage, Inc. and NEW PENN's failure to provide the Debtor with accurate accounting, the Debtor cannot be sure what the actual amount owing to NEW PENN is, if in fact NEW PENN is the rightful successor to the Golden Hawk DOT.  However, given that the Approved CitiMortgage Claim is $64,854.69 (which was paid down by some unknown amount through Debtor's payments), even if you add to that NEW PENN's claimed "Amount necessary to cure any default as of the date of the petition" of $30,885.89, which amount Debtor disputes, the sum is only $95,740.58, which would leave **equity of $139,365.42** in the Golden Hawk property. *See Exhibit 11*.  In actuality, the Debtor must have even more equity than this estimation, due to both Debtor's Approved Monthly Payments made, and NEW PENN's faulty loan and interest calculations, and unnecessary late charges.  Thus, while we cannot be sure of the exact figures, it is crystal clear that significant equity in the Golden Hawk property, and therefore adequate protection, exists.  NEW PENN has demonstrated no grounds to seek relief from the automatic stay pursuant to §362(d)(1) or (2).

**C.  No Cause Exists to Grant Relief From Stay Pursuant to 11 U.S.C. §362(d)(4)(B).**

The Debtor sought Chapter 11 Bankruptcy Protection precisely because its lenders, including NEW PENN and its predecessor CitiMortgage, Inc., have egregiously failed to abide by Judge Markell's Confirmation Order.  NEW PENN's Motion is a prime example.  Although the Approved CitiMortgage Claim is $64,854.69, the Motion states the note amount is $100,800.00.  Although the Approved Monthly Payment is $358.13, NEW PENN asserts the payment per month is $490.32.  Given these discrepancies, it is easy to understand how NEW PENN and CitiMortgage, Inc. before it, have misapplied Debtor's Approved Monthly Payments over the years and have generated unfounded alleged arrearages.  As shown in Exhibit 6, a loan history provided to the Debtor by NEW PENN's servicer Shellpoint Mortgage, NEW PENN and/or CitiMortgage Inc. considered Debtor's payments of $358.13 as insufficient, and therefore charged extra fees and interest, and incurring unwarranted late charges, rather than properly paying down the Approved CitiMortgage Claim.

One example is taken from May 16, 2012, over a year after entry of the Confirmation Order was entered.  Page 6 of Exhibit 6 reflects the following servicer records:

| Trans Date Eff Date | Due Date | Trans Desc | Trans Amount | Principal Amount | Principal Balance |
|---|---|---|---|---|---|
| 5/16/12 | 10/01/09 | Unapplied Payment | $358.13 | | $58,690.46 |
| 5/16/12 | 11/01/09 | Regular Payment | $190.63 | $562.74 | $58,127.72 |
| 5/16/12 | 11/01/09 | Late Charge Assess | ($44.94) | | $58,127.72 |

Here, a Monthly Approved Payment of $358.13 was received on May 16, 2012 and categorized as an "Unapplied Payment".  Unapplied cash must have accumulated, because the servicer then applied a payment described as a "Regular Payment" of $562.74 to Principal.  A "Late Charge Assess" was also applied, referencing a payment "Due Date" of "11/01/09".  This procedure demonstrates a

complete failure of CitiMortgage or its servicer to apply the terms of the Confirmation Order, and appears to be the lender's pattern and practice, as demonstrated throughout pages 3-6 of Exhibit 6.

Furthermore, although NEW PENN's Motion falsely asserts that "Debtors have not made any post-petition payments to Secured Creditor…", Debtor has in fact transmitted four Approved Monthly Payments of $358.13 to NEW PENN's servicer, Shellpoint Mortgage, and Shellpoint Mortgage has cashed those checks. Exhibit 13 contains copies of the July, August, and September 2018 cleared checks, endorsed by Shellpoint Mortgage. (Debtor does not yet have a copy of the check transmitted for October 2018.) Accurate record keeping does not seem to be NEW PENN, and before it CitiMortgage, Inc's, forte.

Debtor and/or Melani Schulte have spent an exhaustive amount of time and resources attempting to coax NEW PENN, CitiMortgage, Inc., and various other lenders unrelated to the instant Motion, into complying with the Confirmation Order, to no avail. It is for this reason exactly that the Debtor has sought Chapter 11 bankruptcy protection, and for this reason exactly that the Debtor desperately needs the automatic stay in place.[2] NEW PENN must be prevented from foreclosing on Debtor's property based upon its' and its' predecessor's false record keeping in violation of the Court's Confirmation Order in the 2009 Bankruptcy. As holder of the Golden Hawk DOT, this Court must hold NEW PENN accountable for both its' and its' predecessor's failures in this matter.

Debtor's intent is only for its creditors to honor the Court's Confirmation Order and be held accountable for failing to do so thus far. It is true that once it became clear to the Debtor and/or Melani Schulte that Approved Monthly Payments sent to CitiMortgage, Inc. were not being properly applied, the Debtor ceased making payments for a time and instead incurred attorney fees. However, given the stay afforded the Debtor in the present case, the Debtor is hopeful that NEW PENN (and

---

[2] Due to William R. Schulte and Melani Schulte's divorce, and the transfer of properties into a Holding Company per the Confirmed Plan, the Debtor filed this case rather than attempting to seek relief in Melani Schulte's 2009 Bankruptcy that was confirmed years ago. William R. Schulte did not consent to filing anything regarding this matter in the 2009 Bankruptcy.

1  others) can be held accountable for their actions, the Debtor can continue making the Approved
2  Monthly Payment, and any actual, justifiable arrearages, if any, can be resolved.  In short, Debtor's
3  intent is precisely what the stay afforded the Debtor is designed for.  No cause exists under 11 U.S.C.
4  §362(d)(4)(B) for relief from the automatic stay.

5                                            **III.    CONCLUSION**

6       It is a shame that NEW PENN hastily filed its' Motion without a good faith effort to
7  communicate with counsel for the Debtor, as NEW PENN has itself suggested it would be content
8  with adequate protection payments, WHICH IT ALREADY RECEIVES.  A little communication
9  would have gone a long way to avoid expending resources unnecessarily.  However, as the Motion
10 was brought, Debtor asks the Court to put on the record an order denying NEW PENN's Motion, as
11 no cause for relief from the stay exists.

12      NEW PENN's Motion should be denied just for failure to abide by Local Rule 4001(a)(2).
13 However, NEW PENN also completely fails in its arguments based upon §362(d)(1) or (d)(2), as the
14 Golden Hawk property has equity estimated to be in excess of $135,000.  Although NEW PENN
15 makes no arguments for relief under §362(d)(4)(B), the Debtor also notes that this also would be
16 unwarranted, because Debtor's actions have been in accordance with Court order or in seeking others
17 to be accountable to the Court's order.  Further, NEW PENN has failed to provide any admissible
18 evidence whatsoever in support of its claim.  Had NEW PENN, CitiMortgage, Inc., and Debtor's
19 other lenders properly complied with the Confirmation Order, years of exhaustive correspondence,
20 litigation, and expense could have been avoided.

21      What the consequences should be for NEW PENN / CitiMortgage, Inc.'s actions is better
22 addressed by separate motion/action.  However, it is clear that without having met a minimum
23 requirement of accurate accounting, NEW PENN has no right to proceed against the Debtor.

24      The Code provides the Debtor a much needed stay against actions of creditors, such as NEW
25 PENN, who would otherwise proceed against the Debtor in an unjust and unconscionable manner,
26

detrimental to the Debtor's estate. NEW PENN has failed to provide cause for relief from this stay, and has failed to comply with LR 4001(a)(2). The Debtor therefore respectfully requests the Court deny NEW PENN's Motion and grant the Debtor such other relief as it deems appropriate and just.

DATED: October 9, 2018.

JOHNSON & GUBLER, P.C.

/s/ Matthew Johnson
Matthew L. Johnson (6004)
8831 West Sahara Avenue
Las Vegas, NV 89117
mjohnson@mjohnsonlaw.com
*Attorneys for Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Johnson & Gubler, PC, and that on October 10, 2018 I caused to be served a true and correct copy of the OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE ADEQUATE PROTECTION PAYMENTS in the following manner:

[X]   a.   **Electronic Service**

Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: October 10, 2018.

/s/ Suzanne Alexander
An Employee of Johnson & Gubler, P.C.

13