1  EDDIE R. JIMENEZ (SBN 10376)
   ejimenez@aldridgepite.com
2  RAYMOND JEREZA (SBN 11823)
   rjereza@aldridgepite.com
3  **ALDRIDGE PITE, LLP**
   520 South 4ᵗʰ St., Suite 360
4  Las Vegas, Nevada 89101
   Telephone: (858) 750-7600
5  Facsimile: (619) 590-1385

6  **Mailing Address**:
   4375 Jutland Drive, Suite 200
7  P.O. Box 17933
   San Diego, California 92177-0933
8
   Attorney for *Creditor*
9  Fifth Third Mortgage Company

10

11              **UNITED STATES BANKRUPTCY COURT**

12                     **DISTRICT OF NEVADA**

13  | In re | Bankruptcy Case No. 18-12734-mkn |

14  SCHULTE PROPERTIES LLC,            Chapter 11

15          Debtor.          **OBJECTION TO APPROVAL OF
                              DISCLOSURE STATEMENT AND**
16                            **CONFIRMATION OF CHAPTER 11
                              PLAN**
17
                              **SUBJECT PROPERTY:**
18                            5218 Misty Morning Drive
                              Las Vegas NV 89118
19
                              **HEARING**:
20                            Date:   April 17, 2019
                              Time:   9:30 a.m.
21                            Place:  Foley Federal Building, 300 Las
                              Vegas Blvd. South, Courtroom 2, Third
22                            Floor, Las Vegas, NV

23

24          Fifth Third Mortgage Company ("Creditor"), secured creditor of the above-entitled Debtors,

25  Schulte Properties, LLC, William Schulte and Melani Schulte (collectively the "Debtors")[1] hereby

26  submits the following *Objection to Approval of Debtors' Chapter 11 Disclosure Statement and*

27  _____

28  [1] Creditor asserts the "Borrower" under the Subject Loan, Melani Schulte, is the managing member and alter ego of the
    Debtor entity, Schulte Properties, LLC ("SPLLC"). As a result, Creditor may refer to the parties collectively as the
    "Debtors" in this pleading.

1    *Confirmation of Chapter 11 Plan* ("<u>Objection</u>"). The basis of the Objection is stated below.

2    /././

3    /././

4    /././

5    /././

6    /././

7    /././

8    /././

9    /././

10    /././

11    /././

12    /././

13    /././

14    /././

15    /././

16    /././

17    /././

18    /././

19    /././

20    /././

21    /././

22    /././

23    /././

24    /././

25    /././

26    /././

27    /././

28    /././

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL SUMMARY ........................................... 15

   A.   LOAN HISTORY ...................................................................................... 16

   B.   THE FIRST BANKRUPTCY CASE ....................................................... 20

   C.   THE SECOND BANKRUPTCY CASE.................................................... 25

   D.    THE INSTANT BANKRUPTCY CASE ................................................ 30

III.    LEGAL ARGUMENT .................................................................................... 41

   A.   THE DISCLOSURE STATEMENT FAILS TO CONTAIN ADEQUATE
INFORMATION AS REQUIRED BY 11 U.S.C. § 1125(a)(1) ....................... 42

   B.   THE PARTIES ARE OPERATING UNDER A SUBSTANTIALLY
CONSUMMATED   CONFIRMED PLAN ...................................................... 60

     1.   Schulte Properties, LLC is the Alter Ego of Melani Schulte.................... 63

     2.   SPLLC Attempts to Impermissibly Modify a Substantially Consummated Plan.. 72

       a.   *The First Plan has Been Substantially Consummated*................................. 87

       b.   *SPLLC has failed to Establish Circumstances to Justify Modification of the
Second Plan* ...................................................................................................... 92

   C.   THE PLAN IS NOT PROPOSED IN GOOD FAITH.............................. 115

     1.   Legal Standard ...................................................................................... 115

     2.   Multiple Bankruptcy Filings, Defaults, and Transfers........................... 128

     3.   Debtors' Bad Faith Actions are Contrary to Public Policy .................... 143

   D.   THE PARTIES LACK PRIVITY OF CONTRACT ................................. 147

   E.   THE PLAN VIOLATES 11 U.S.C. § 506 ................................................. 164

   F.   THE PLAN FAILS TO PROVIDE FOR THE CURE OF THE CONTRACTUAL
ARREARS ...................................................................................................... 168

   G.   THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE ............... 177

   H.   DEBTOR IS USING CREDITOR'S CASH COLLATERAL WITHOUT ............ 183
AUTHORIZATION............................................................................................... 183

# TABLE OF CONTENTS AND AUTHORITIES

## Cases

*In re 1633 Broadway Mars Rest. Corp.,* 388 B.R. at 502 n. 17 .................................................. 11

*In re Adams,* 218 B.R. at 602 .................................................................................................... 11

*In re Albany Partners, Ltd.*, 749 F2d 670, 674 (11th Cir. 1984) ................................................ 14

*In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir. 1989) ........................................ 17

*In re Antiquities of Nevada, Inc.*, 173 B.R. 926, 928 (B.A.P. 9th Cir. 1994) .............................. 9

*In re Bd. of Directors of Telecom Argentina, S.A.*, 528 F.3d 162, 174 (2d Cir. 2008) ................ 13

*In re BNEVMA, LLC*, Case No. 18-13392 (Bankr. S.D. Fla. 2018) ............................................ 8

*In re Bullion Hollow Enterprises, Inc.*, 185 B.R. 726, 729 (W.D. Va. 1995) ............................ 10

*Bouy Hall,* 208 B.R. at 745 ........................................................................................................ 11

*In re Cabral*, No. 12-12050-A-12, 2012 WL 8441317, at *4-5 (Bankr. E.D. Cal. Oct. 10, 2012)
    ....................................................................................................................................... 11, 14

*In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) ................................. 5

*In re Casa Loma Assocs.,* 122 B.R. at 818 ................................................................................. 11

*In re Caviata Attached Homes, LLC*, 481 B.R. 34, 47 (B.A.P. 9th Cir. 2012) .......... 11, 12, 14, 15

*In re Charfoos*, 979 F2d 390, 394-395 (6th Cir. 1992) ............................................................... 14

*In re Charterhouse, Inc.*, 84 B.R. 147, 152 (Bankr.D.Minn.1988) ............................................... 9

*In re Cottonwood Corners Phase V, LLC*, 2012 WL 566426, at *13 (Bankr. D.N.M. 2012) ...... 19

*In re Diamond Mortgage Corp.*, 105 B.R. 876, 880 (Bankr.N.D.Ill.1989) ................................... 9

*Downey Sav. & Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495, 1497 (9th Cir.1987) .............. 14

*In re Earley,* 74 B.R. 560 (Bankr.C.D.Ill.1987) ......................................................................... 10

*In re Elmwood Dev. Co.,* 964 F.2d at 512–13 ............................................................................. 11

*In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982) ................................................................... 14, 15

*Johnson v. Home State Bank,* 501 U.S. 78, 87 (1991) ................................................................ 14

*In re Jones,* 32 B.R. 951 (Bankr.D.Utah 1983) .......................................................................... 19

*In re Jorgensen,* 66 B.R. 104, 107 (9th Cir. BAP 1986) .............................................................. 9

*In re Laguna Assocs. Ltd. P'ship*, 30 F3d 734, 738 (6th Cir. 1994) ........................................... 14

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

*In re Lennington,* 288 B.R. 802, 804-06 (Bankr. C.D. Ill. 2003)................................................ 19

*Little Creek Develop. Co.*, 779 F2d 1068, 1072 (5th Cir. 1986) .............................................. 14

*In re Lowenschuss,* 67 F.3d 1394 (9th Cir. 1995).................................................................... 17

*In re Mableton–Booper Assocs.,* 127 B.R. at 944.................................................................... 11

*In re McCormick Road Assocs.*, 127 B.R. 410, 415 (Bankr. N.D. Il. 1991)............................... 13

*In re McMahan*, 481 B.R. 901 (S.D. Tex. Bankr. 2012) ........................................................... 10

*In re Metz,* 820 F.2d at 1498 ..................................................................................................... 14

*In re Motel Props., Inc.,* 314 B.R. at 896.................................................................................. 11

*In re Northtown Realty, Co.,* 215 B.R. at 913........................................................................... 11

*In re Pecht,* 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) ................................................................ 5

*Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070 (9th Cir.

    2002) *cert. denied* 123 S. Ct. 2097 (2003) ........................................................................ 13

*In re Robino*, 243 B.R. 472, 487 (Bankr. N.D. Al. 1999) .......................................................... 14

*In re Roxy Real Estate Co.,* 170 B.R. at 576 ............................................................................ 11

*Matter of Savannah, Ltd.,* 162 B.R. 912, 915 (Bankr.S.D.Ga.1993).......................................... 11

*In re Schatz*, 426 B.R. 24, 27 (Bankr.D.N.H.2009) ................................................................... 19

*In re Scotland Guard Services, Inc.,* 139 B.R. 264, 266 (Bankr. D. Puerto Rico 1991)........... 9, 10

*Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto*

    *Parts, Inc.)*, 113 B.R. 610, 616 (9th Cir. BAP 1990) ........................................................... 17

*In re Silberkraus*, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000)...................................................... 2

*In re Solis*, 356 B.R. 398 (Bankr. S.D. Tex. 2006) .................................................................... 17

*In re Southern Calif. Sound Systems, Inc.*, 69 B.R. 896, 901, fn. 2 (Bankr. S.D. Cal. 1987)....... 14

*In re Stevenson*, 148 B.R. 592, 595 (D.Idaho 1992) .................................................................... 9

*In re Stolrow's Inc*., 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) .................................................... 13

*In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 77 (9th Cir. BAP 1994) ................................... 17

*In re Sylmar Plaza, L.P.*, 314 F.3d at 1070................................................................................. 13

*In re Tillotson*, 266 B.R. at 569 ................................................................................................ 11

*In re Tri-Growth Centre City, Ltd.*, 136 B.R. 848, 852 (Bankr. S.D. Cal. 1992) ........................ 19

*Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir. 1982) ...................................... 17

*In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir.1994) ..................................................... 9

*In re U.S. Repeating Arms Co.*, 98 B.R. 138, 140 (Bankr. D. Conn. 1989) ................................. 9

*In re Woods,* 2011 WL 841270, at *4 ..................................................................... 11

*In re Woodson,* 213 B.R. at 405 ......................................................................... 11

*In re Zachary*, 811 F.3d 1191 (9th Cir. 2016) ....................................................... 1, 20

**Statutes**

11 U.S.C. § 363(a) ..................................................................................... 21

11 U.S.C. § 363(c)(2) .................................................................................. 20

11 U.S.C. § 506(a) ..................................................................................... 18

11 U.S.C. § 524(a)(2) .................................................................................. 17

11 U.S.C. § 524(e) ..................................................................................... 17

11 U.S.C. § 552(b) ..................................................................................... 20

11 U.S.C. § 1101(2) .................................................................................... 9

11 U.S.C. § 1112(b)(4)(D) .............................................................................. 20

11 U.S.C. § 1123(a)(5)(G) .............................................................................. 19

11 U.S.C. § 1123(d) .................................................................................... 19

11 U.S.C. § 1125(a)(1) ............................................................................... 5, 7

11 U.S.C. § 1125(b) ..................................................................................... 5

11 U.S.C. § 1127(b) .................................................................................... 10

11 U.S.C. § 1129(b)(2)(B) ............................................................................... 1

11 U.S.C. § 1141(a) ..................................................................................... 8

**Other Authorities**

7 Collier ¶ 1127.04[3], at 1127–9 ...................................................................... 9

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

# I.    INTRODUCTION

First, the Disclosure Statement fails to contain adequate information regarding the Borrower's First Bankruptcy Case and defaults thereunder. Creditor asserts the proposed Chapter 11 Plan is patently unconfirmable as it proposes to modify the confirmed Plan from the Borrower's First Bankruptcy (Case No. 09-29123). The First Plan has been substantially consummated and remains in effect. Section 1127 prohibits SPLLC from modifying the terms of the Plan in this case absent a showing of a significant unforeseen change in circumstances justifying the second filing. SPLLC has failed to meet its burden.

Second, Creditor submits the present Bankruptcy Case was filed in bad faith. The instant petition represents the **third bankruptcy filing** involving the **same parties** and **same real properties** (*See* Case Numbers: 09-29123; 17-12883, 18-12734). Although SPLLC attempts to distinguish itself from the original Borrower, it is clear Melani Schulte is the alter ego, sole owner, and managing member of SPLLC. As a result, SPLLC will be unable to satisfy the good faith requirement of §1129(a)(3).

Third, to the extent the Court concludes SPLLC is a separate party with the ability to modify the confirmed Plan from the First Case, Creditor asserts the parties lack privity of contract. SPLLC is not an obligor under the Subject Loan documents. Nor was SPLLC a party to the Confirmed Plan from the First Case. As a result, SPLLC lacks standing to modify the terms of the Subject Loan.

Fourth, the Plan violates the absolute priority rule. 11 U.S.C. §1129(b)(2)(B). *In re Zachary*, 811 F.3d 1191 (9th Cir. 2016). The Plan does not provide for Creditor's claim in full, while SPLLC attempts to retain an interest in the Property as a junior class member in violation of the absolute priority rule. Creditor has rejected the Plan. Therefore, the Plan violates the absolute priority rule and cannot be confirmed.

Fifth, SPLLC proposes to reduce the principal balance below the scheduled value of the Property, without providing for the cure of the contractual arrears.

Sixth, Creditor objects to the proposed changes to the principal balance, interest rate, payment schedule, and notice requirements. While SPLLC suggests the Confirmed Plan from the First Case will continue to bind creditors, the current Plan contains conflicting and confusing

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

statements suggesting otherwise. Although SPLLC's Plan incorporates some of the provisions of the Confirmed Plan from the First Case, SPLLC proposes to selectively modify other provisions. Clarification is required.

Seventh, SPLLC is using cash collateral without authorization. The Subject Deed of Trust contains an Assignment of Rents provision. However, SPLLC has yet to file a Motion to Use Cash Collateral or obtain written consent from Creditor to use the rental income generated by the Property for any purpose.

Finally, Creditor objects to SPLLC's attempt to transfer title to the Property (yet again), which would allow SPLLC and/or the Borrower to transfer the real properties to another shell entity (post-confirmation) for purposes of filing a **fourth** bankruptcy case.

Based on the clear violations of the Bankruptcy Code, SPLLC's Chapter 11 Plan is patently unconfirmable and the Disclosure Statement must be denied. *See e.g. In re Silberkraus*, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000).

## II.  FACTUAL AND PROCEDURAL SUMMARY[2]

### A.    LOAN HISTORY

On April 30, 2001, Melani Schulte (the "Borrower") executed a promissory note in the principal sum of $152,000.00 (the "Note"). The Note reflects it was indorsed in blank. (*See* Claim No. 4-2).

The Note is secured by a deed of trust (the "Deed of Trust") encumbering the real property located at 5218 Misty Morning Drive Las Vegas NV 89118 ("Property"). (*See* Claim No. 4-2). The Deed of Trust prohibited transfers of interest in the Property without lender's prior written consent. (*See* Deed of Trust, ¶18).

The Deed of Trust contains an Assignment of Rents provision providing Creditor with an additional security interest in all rental income generated by the Property. (*See* Claim No. 4-2, Deed

---

[2] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure, Creditor requests that the Court take judicial notice of the documents and other records on file in the this case and the prior cases.

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

of Trust, 1-4 Family Rider, ¶H).

The Deed of Trust was assigned to Creditor. (*See* Claim No. 4-2).

**B.    THE FIRST BANKRUPTCY CASE**

On October 11, 2009, the Borrower, Melani Schulte and William Schulte filed a prior Chapter 11 Bankruptcy Case and were assigned Case No. 09-29123 (the "First Case"). (*See* First Case, Dkt No. 1).

On March 8, 2011, the court entered an Order Confirming an Amended Plan of Reorganization (the "First Plan") in the First Case (*See* First Case, Dkt No 834, 912).  The First Plan provided Creditor with a secured claim of $141,640.60 ("Secured Claim") amortized over thirty (30) years at 5.00% interest per annum. Principal and Interest Payments of $760.36 were to commence upon the Effective Date of the Plan and continue each month thereafter until the Secured Claim is paid in full. (*See* First Case, Dkt No 834, 912).

On December 15, 2015, Borrower obtained a chapter 11 discharge in the First Case.  (*See* First Case, Dkt No 1181-2).

The First Case is currently closed. Borrower has yet to reopen the First Case to enforce the Confirmation Order or Discharge Order.

**C.    THE SECOND BANKRUPTCY CASE**

Thereafter, the Borrower allegedly transferred her interest in the Property to Schulte Properties, LLC, the Debtor herein.

Pursuant to the Nevada Secretary of State, SPLLC is registered as a business on **May 26, 2017**. Melani Schulte is listed as the manager member and only officer of SPLLC. A copy of the entity profile from the Nevada Secretary of State's website is attached as **Exhibit A**.

Five (5) days after registering the entity with the Nevada Secretary of State, on **May 31, 2017**, SPLLC, filed a second Chapter 11 Bankruptcy Case and was assigned case number 17-12883 (the "Second Case"). The Borrower, Melani Schulte signed the petition as Managing Member of the SPLLC. (*See* Second Case, Dkt. No. 1).

SPLLC failed to confirm a Chapter 11 Plan in the Second Case.

On January 16, 2018, the Court entered an Order Dismissing the Second Case. (*See* Second Case, Dkt. No. 99).

**D.    THE INSTANT BANKRUPTCY CASE**

Several months later, on May 10, 2018, SPLLC commenced the instant Bankruptcy Case by filing a third voluntary petition under Chapter 11 of the Bankruptcy Code and was assigned case number 18-12734-mkn (the "Bankruptcy Case"). The Borrower, Melani Schulte signed the petition as Managing Member of SPLLC. (Dkt No. 1).

On October 11, 2018, Creditor filed its Amended Proof of Claim reflecting a secured claim of $152,080.87, including *pre-petition* arrears of $29,082.85 (the "Claim"). (*See* Claim No. 4-2). The Proof of Claim reflects Creditor updated its system to reflect the treatment of its Claim in the Plan from the First Case. Specifically, a secured claim of $141,640.60 amortized over thirty (30) years at 5.00% interest per annum with principal and Interest Payments of $760.36. Indeed, Creditor attached a copy of the First Plan from First Case to its filed Claim. Pursuant to the filed Claim, Borrower failed to make payments as required under the Confirmed Plan from the First Case. (*See* Claim No. 4-2).

On February 27, 2019, SPLLC filed its proposed Chapter 11 Plan ("Plan") and Disclosure Statement. (Dkt Nos. 201-202). SPLLC seeks to modify the terms of the Confirmed Plan from the First Case. With respect to the Subject Loan, the claim is listed in Class 2(u) and states:

> *Secured Claim holders shall be paid in accordance with all other terms as set forth in the 2009 Bankruptcy Case Order of Confirmation except as otherwise set forth herein. The Debtor believes that the total amount owing on this claim is $120,581.18. The Allowed Claims of this class shall be paid on a true bi-weekly basis, with payments applied every other week by way of an ACH payment or similar payment as determined by the Debtor in the amount of $298.61, and the Creditor shall apply each payment to principal and interest towards the Allowed Claim amount as each payment is received. The Debtor shall pay, outside of escrow, all taxes, insurance, and HOA dues applicable to this Claim when each is due, and shall provide Creditor with proof of payment of such upon the reasonable request of Creditor. Creditor shall not attempt to pay any taxes, insurance, or HOA dues applicable to the Property or to make changes related to the taxes or insurance for the Property unless Debtor has failed to make any such payment and Debtor has failed to cure any default in payment within ten (10) days after written notice…Arrearages, if any, shall*

*be included in the Plan payment.*

*The cure amount shall be $0. In the event that the Court reduces any Allowed Claim owing to this creditor or enters an award for damages against the holder of this claim, any payment due to the holder of this claim shall be reduced by the amount set forth in any such Order.*

(*See* Plan, Class 2(u)).

Further, the Plan suggests SPLLC intends to transfer title to the Property to a "Holding Company." Specifically, the Plan states "On or after the effective date of the Plan, the Debtor may, but is not required, transfer title to its properties to a Nevada limited liability company or other entity deemed appropriate by the Debtor (the "Holding Company"), for liability purposes. (*See* Plan, §6.4).

In addition, the Plan requires creditors to send monthly mortgage statements to the non-borrower Debtor entity following confirmation of the Plan. (*See* Plan, §6.5).

### III. LEGAL ARGUMENT

**A.    THE DISCLOSURE STATEMENT FAILS TO CONTAIN ADEQUATE INFORMATION AS REQUIRED BY 11 U.S.C. § 1125(a)(1)**

Section 1125 of the Bankruptcy Code requires that a disclosure statement contain adequate information that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about a Chapter 11 Plan. 11 U.S.C. § 1125(a)(1). In determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information. *Id.* Further, Section 1125(b) provides that acceptance or rejection of a proposed plan of reorganization may not be solicited unless the holder of a claim or interest to whom the solicitation is made is provided with the proposed plan or summary thereof and "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. §1125(b). "If, on the face of the plan, the plan could not be confirmed, then the Court will not subject the estate to the expense of soliciting votes and seeking confirmation." *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986); *see also*, *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (disapproval of the adequacy of a disclosure statement may be appropriate "where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible."). In order for a Plan to be confirmed, the Plan

proponent bears the burden of proof with respect to each and every element of Bankruptcy Code § 1129(a).

First, the Disclosure Statement fails to include an adequate discussion of the Debtors' prior bankruptcy cases and why the former attempts at reorganization failed. While SPLLC admits to defaults under the Confirmed Plan from the First Case, SPLLC attempts to blame creditors for the Borrower's failure to comply with the Confirmed Plan, while offering no explanation as to why she were unable to comply with the Plan. Accordingly, it is unclear why or how SPLLC believes the third attempt at reorganization will be successful.

Second, the Disclosure Statement and Plan fail to address the violation of §1127, which prohibits a Chapter 11 debtor from modifying the terms of a substantially consummated Plan.

Third, while SPLLC suggests the Confirmed Plan from the First Case will continue to bind creditors, the current Plan contains conflicting and confusing statements suggesting otherwise. Although SPLLC's Plan incorporates some of the provisions of the prior Confirmed Plan, SPLLC proposes to selectively modify other provisions. Clarification is required.

Fourth, the Disclosure Statement fails to contain any discussion of how SPLLC intends to modify a loan in which it lacks privity of contract. Any Plan which proposes to modify the Subject Loan would violate 11 U.S.C. §524(e) as it would effectively modify the liability of a non-filing party (aka the Borrower) in bad faith.

Fifth, the Disclosure Statement contains no information regarding the purpose or nature of SPLLC's business. From what Creditor is able to ascertain from the disclosures, the sole purpose of the entity is to hold title to the real properties for purposes of filing Chapter 11 bankruptcy cases. While SPLLC states the real properties were "held at different times by various entities and people including William R. Schulte, Melani Schulte, family trust entities, and holding companies," the properties have now been transferred to SPLLC. (*See* Disclosure Statement, Page 5). However, no information is given regarding the nature and operations of SPLLC's business. At a minimum, the Disclosure Statement must be amended to included detailed information regarding SPLLC's business operations, cash flow, and financial projections.

Sixth, the Disclosure Statement and Plan fail to address the violation of the absolute priority

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

rule.

Seventh, while SPLLC alleges the value of the Property exceeds the amount of Creditor's secured Claim, SPLLC fails to provide for the full amount of Creditor's Claim, or the cure of the contractual arrears.

Eighth, while SPLLC states it intends to pursue a claim for damages against Creditor, which will further reduce Creditor's claim, its is unclear when said action will be filed, what claims SPLLC has against Creditor, or the amount of the alleged damages, to allow Creditor to ascertain the amount or allowance of its claim in the Plan.

Based on the foregoing, the Disclosure Statement contains inadequate information and must be denied. 11 U.S.C. § 1125(a)(1).

**B.     THE PARTIES ARE OPERATING UNDER A SUBSTANTIALLY CONSUMMATED CONFIRMED PLAN**

Creditor objects to any modification of its Claim to the extent the terms of this Plan conflict with the terms of the Confirmed Plan from the Borrower's First Case. Creditor asserts SPLLC's current Plan proposes to drastically alter the terms of the prior Plan. Specifically, Creditor objects to the incorrect Claim amount ($152,080.87 vs. $120,581.18), principal and interest payment amount ($760.36 vs. $298.61), interest rate (5.00% vs. ???)[3]; and payment schedule (monthly vs. bi-weekly). (*See* First Plan vs. Plan, Class 2(u)).

**1.     Schulte Properties, LLC is the Alter Ego of Melani Schulte**

SPLLC does not dispute the Confirmed Plan from the First Case continues to bind the parties. Rather, SPLLC attempts to distinguish itself from the original Borrower, Melani Schulte. SPLLC argues that because SPLLC is "an entirely new entity" and is "not the same debtor as Melani Schulte and her husband," no violation of §1127 exists. (*See* Opposition to Motion to Dismiss, Page 19). Creditor disagrees.

The instant case represents the **third bankruptcy filing** involving the **same parties** and **same real properties**. While SPLLC attempts to distinguish itself from the original Borrower, it is

---

[3] It is unclear which interest rate debtor used to arrive at the P&I payment amount listed in the Plan. As the Debtor proposes to change the payment schedule from monthly to bi-weekly, Creditor would assume the P&I payment would be half of the P&I payment listed in the First Plan. However, the P&I payment is less than half suggesting the Debtor

clear Melani Schulte is the sole owner and managing member of SPLLC. Pursuant to the Nevada Secretary of State, SPLLC registered as a business on May 26, 2017, days before the filing of the Second Bankruptcy Case. Melani Schulte is listed as the manager member and only officer of SPLLC. (*See* Exhibit A).

Melani Schulte signed the Second Bankruptcy Case petition as Managing Member of SPLLC. (*See* Second Case, Dkt. No. 1). Similarly, Melani Schulte signed the instant petition as Managing Member of SPLLC. (Dkt No. 1). It is clear the parties are one in the same as SPLLC now seeks to enforce some (but not all) provisions of the Confirmed Plan from the Borrower's First Case in the present Bankruptcy Case. While SPLLC would like the benefit of enforcing the Confirmed Plan under §1141, at the same time, SPLLC alleges §1127 should not apply in this case as SPLLC is a separate and distinct entity. SPLLC cannot have it both ways by cherry picking the terms of the Code it wants the Court to enforce while requesting the Court ignore applicable and binding Code provisions.

Creditor asserts the Confirmed Plan from the First Case continues to bind the parties and the Debtors are prohibited from modifying the substantially consummated Plan simply by transferring their interest to a third party entity (exclusively controlled by Melani Schulte) for purposes of filing a new bankruptcy case and plan. (*See e.g. In re BNEVMA, LLC*, Case No. 18-13392 (Bankr. S.D. Fla. 2018).

### 2.    SPLLC Attempts to Impermissibly Modify a Substantially Consummated Plan.

Under § 1141(a), the terms of a confirmed plan are binding on all parties, including the debtor. 11 U.S.C. § 1141(a). Further, 11 U.S.C. §1127(b) provides:

> (b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan ***and before substantial consummation of such plan***, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan ***only if circumstances warrant such modification*** and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title. 11 U.S.C. §1127(b) [emphasis added].

proposes an alternative interest rate as well. Again, clarification is needed.

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

Further, 11 U.S.C. §1101(2) provides:

"substantial consummation" means —

(A)     transfer of all or substantially all of the property proposed by the plan to be transferred;

(B)     assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C)     commencement of distribution under the plan. 11 U.S.C. §1101(2).

The standard for modification is significantly more restrictive for post-confirmation modifications than for pre-confirmation modifications. *In re Antiquities of Nevada, Inc.*, 173 B.R. 926, 928 (B.A.P. 9th Cir. 1994). Congress drafted the statute to safeguard the finality of plan confirmation. *See In re U.S. Repeating Arms Co.*, 98 B.R. 138, 140 (Bankr. D. Conn. 1989). "If this were not the case, a proponent of the plan could file an endless series of motions to modify the plan, at every bump in the road, seriously jeopardizing the incentive for creditors to vote in favor of a plan." *In re Antiquities of Nevada, Inc.*, 173 B.R. 926, 928 (B.A.P. 9th Cir. 1994). Confirmation is the equivalent of a final judgment in a civil litigation. 7 Collier ¶ 1127.04[3], at 1127–9. Section 1127(b) reinforces the principle of finality by preserving the rights bought and paid for under the plan. *In re Antiquities of Nevada, Inc.,* 173 B.R. 926, 928 (9th Cir. BAP 1994); *In re U.S. Repeating Arms Co.,* 98 B.R. 138, 140 (Bankr.D.Conn.1989); *In re Charterhouse, Inc.,* 84 B.R. 147, 152 (Bankr.D.Minn.1988); *see In re UNR Indus., Inc.,* 20 F.3d 766, 769 (7th Cir.1994); *In re Diamond Mortgage Corp.,* 105 B.R. 876, 880 (Bankr.N.D.Ill.1989) ("[c]onfirmation of a plan in effect sets the plan in stone unless the proponent chooses to alter it before it is substantially consummated").

Accordingly, "pursuant to 11 U.S.C. § 1127(b), a plan can only be modified *before* it is substantially consummated." *In re Stevenson,* 148 B.R. 592, 595 (D.Idaho 1992). "The word 'substantial' suggests more than halfway, more than a mere preponderance." *In re Jorgensen*, 66 B.R. 104, 107 (9th Cir. BAP 1986). The proponent of the plan bears the burden of proving "substantial consummation" has *not* occurred. *In re Scotland Guard Services, Inc.,* 139 B.R. 264, 266 (Bankr.D.P.R.1991).

While 11 U.S.C. §1127(e) permits **an individual** debtor to modify a plan any time after

confirmation, but before the completion of a plan, whether or not the plan has been substantially consummated, the modification must occur within the same case after notice and a hearing. *In re McMahan*, 481 B.R. 901 (S.D. Tex. Bankr. 2012). Stated more directly, modification requires disclosure, notice, hearing, and court approval. The Court in *McMahan* held that "while the Code permits modification of an individual debtor's confirmed plan, this modification should be obtained through the procedures afforded by the Code. By filing the (separate) Case, the Debtor utterly failed to follow these procedures—hardly a hallmark of good faith". *Id.* As discussed in greater detail below, to demonstrate that a serial petition was filed in good faith, *a debtor* must show an extraordinary and unforeseen change in circumstances.

> *a.    The First Plan has Been Substantially Consummated*

There is no percentage or specific number of payments needed to have been paid in order to qualify as "commenced". *In re Scotland Guard Services, Inc.,* 139 B.R. 264, 266 (Bankr. D. Puerto Rico 1991). For example, the court in *In re Stevenson,* 138 B.R. 964 (Bankr. D. Idaho 1992), held that a plan had been substantially consummated after the debtor had made only two (2) of twenty-six (26) payments to creditors. Likewise, in *In re Earley,* 74 B.R. 560 (Bankr.C.D.Ill.1987), the court held that a plan had been substantially consummated one day after the first payments were made to creditors under the confirmed plan. *In re Bullion Hollow Enterprises, Inc.*, 185 B.R. 726, 729 (W.D. Va. 1995).

In the present case, the court entered an Order Confirming the Plan in the First Case on March 8, 2011. (*See* First Case, Dkt No 834, 912). On December 15, 2015, Borrower obtained a chapter 11 discharge in the First Case. (*See* First Case, Dkt No 1181-2). Based on the plain language of §1127(b), the First Plan has been substantially consummated and the Borrower is prohibited from modifying the terms by filing a serial Chapter 11 case.

> *b.    SPLLC has failed to Establish Circumstances to Justify Modification of the Second Plan*

As discussed above, 11 U.S.C. §1127(b) prohibits the Borrower from modifying a Plan which has been substantially consummated. 11 U.S.C. §1127(b). Notwithstanding the foregoing, several courts have approved a modification of a substantially consummated plan if it was filed "in good

faith and as a result of unforeseen changed circumstances." *Matter of Savannah, Ltd.,* 162 B.R. 912, 915 (Bankr.S.D.Ga.1993). However, the majority of the cases permitting a modification of a confirmed plan involve a significant change in circumstances. *See Elmwood Dev. Co. v. Gen. Electric Pension Trust (In re Elmwood Dev. Co.),* 964 F.2d 508, 511–12 (5th Cir.1992) Cases in which a chapter 11 debtor has been successful at showing unforeseen changed circumstances to warrant a second chapter 11 filing are clearly the exception rather than the rule. *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 47 (B.A.P. 9th Cir. 2012).

In *Caviata*, the Bankruptcy Appellate Panel for the Ninth Circuit summarized the debtor's burden in a serial Chapter 11 case to demonstrate a substantial change in circumstances:

> "Even extraordinary and unforeseeable changes will not support a new Chapter 11, if these changes do not substantially impair the debtor's performance under the confirmed plan." *In re Adams,* 218 B.R. at 602; *see also In re Woods,* 2011 WL 841270, at *4. Thus, for the bankruptcy court to consider a debtor's second chapter 11 filing and plan, the unforeseeable or unanticipated change in circumstances must have affected the debtor's ability to fully perform under its confirmed plan. *In re Woods,* 2011 WL 841270, at *4; *In re Adams,* 218 B.R. at 602; *In re Northtown Realty, Co.,* 215 B.R. at 913; *In re Woodson,* 213 B.R. at 405; *In re Roxy Real Estate,* 170 B.R. at 576; *In re Casa Loma Assocs.,* 122 B.R. at 818. Examples of unforeseen changed circumstances in the above cases include a change in federal law affecting tenancy of an apartment building, termination of service by major airlines which had provided vital customers for an airport hotel, lost crops due to hail, cattle and pasture lost due to fire, and substantial adverse judgments.
>
> In cases of economic change, courts have held generally that changed market conditions alone are insufficient to warrant a second chapter 11 filing. *In re Elmwood Dev. Co.,* 964 F.2d at 512–13 (event of national "credit crunch" in early 1990's might be a changed circumstance justifying a second chapter 11 filing but appellate court upheld bankruptcy court's decision to reject it); *In re 1633 Broadway Mars Rest. Corp.,* 388 B.R. at 502 n. 17 (recession of late 2007 was a change in general economic condition and insufficient basis for second chapter 11 filing); *In re Motel Props., Inc.,* 314 B.R. at 896 (foreseeable risk of operating any business is the fluctuation in supply and demand and its impact on the market); *In re Tillotson,* 266 B.R. at 569 (changes associated with realities of economic change are an insufficient reason to allow second chapter 11 filing); *In re Adams,* 218 B.R. at 602 (same); *In re Northtown Realty Co.,* 215 B.R. at 913; *Bouy Hall,* 208 B.R. at 745; *In re Roxy Real Estate Co.,* 170 B.R. at 576 (a change in market condition for rental properties or real estate is insufficient changed circumstance); *In re Mableton–Booper Assocs.,* 127 B.R. at 944; *In re Casa Loma Assocs.,* 122 B.R. at 818.

*In re Caviata Attached Homes, LLC,* 481 B.R. 34, 46-47 (B.A.P. 9th Cir. 2012*); See also In re Cabral,* 2012 WL 8441317 (Bankr. E.D. Cal. 2012);

In the present case, SPLLC failed to demonstrate any "extraordinary" or "unforeseen" change in circumstances, which greatly impaired performance under the confirmed Plan to warrant the

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

modification of the Plan through a third bankruptcy filing. While SPLLC alleges the new case is justified based on allegations of creditor non-compliance with the Confirmed Plan from the First Case, the proper remedy is to reopen the First Case to enforce the Plan, not file a new Chapter 11 case. Notably, the SPLLC's Opposition to the Motion to Dismiss states "Debtor would have had no reason to file the 2017 Bankruptcy or the instant proceeding if lenders had honored this Court's Confirmation Order." (*See* Opposition to Motion to Dismiss, Page 13). Accordingly, pursuant to SPLLC's own statement, the instant case is unnecessary as the Borrower may seek to reopen the First Case to enforce the Confirmed Plan should grounds exist to warrant such action.

As stated in *In re Caviata*, the change in circumstances must have been "extraordinary" and "unforeseeable." For the bankruptcy court to consider a debtor's second chapter 11 filing and plan, the unforeseeable or unanticipated change in circumstances must have affected the debtor's ability to fully perform under its confirmed plan. *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 46-47 (B.A.P. 9th Cir. 2012*).*

Here, SPLLC has not cited any post-confirmation issues in the present Bankruptcy Case as a justification for the new filing or as a justification for the Borrower's default under the First Plan. While SPLLC attempts to blame creditors for the new filing, Debtors take no responsibility for their own admitted defaults under the Confirmed Plan. Furthermore, it is hard to fathom that any post-confirmation issues which the Debtors have potentially faced (such as defaults on the Confirmed Plan after confirmation) could be described as significant or unforeseen to justify a new chapter 11 case (or two new cases). If anything, these issues are foreseeable given the issues which were previously faced in the prior cases, which involved numerous creditors and real properties which had delinquent loans. Additionally, contempt actions by debtors seeking to compel compliance with confirmed Chapter 11 Plans are very common and are filed and argued just about daily in this Court. For SPLLC to state otherwise is disingenuous. Also if debtors were allowed to file subsequent bankruptcy cases and modify confirmed Chapter 11 Plans every time a debtor alleged a creditor was not in compliance with a Chapter 11 Plan, judges' dockets would be comprised of newly filed Chapter 11 cases and a confirmed Chapter 11 Plan would be rendered basically meaningless. As discussed above, if the Borrower alleges Creditor is not in compliance with the First Plan, the proper

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

remedy to enforce a Chapter 11 Plan is to file a Motion for Contempt in the Borrower's Bankruptcy Case.

Put simply, the Debtors have been protected by the provisions of the Bankruptcy Code for the past ten (10) years through two reorganizations and are now seeking to dupe creditors and this Court into enduring another "reorganization" while they fail to meet their obligations under the confirmed Plan. Based on the foregoing, the Debtors have acted in bad faith and are prohibited from modifying the confirmed Plan through a subsequent bankruptcy filing.

## C.    THE PLAN IS NOT PROPOSED IN GOOD FAITH

### 1.    Legal Standard

§ 1129(b)(3) expressly provides that every plan of reorganization be "proposed in good faith and not by any means forbidden by law." § 1129(b) has been construed to require that a plan "achieves a result consistent with the objectives and purposes of the Code." See *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070 (9th Cir. 2002) *cert. denied* 123 S. Ct. 2097 (2003) (considering the totality of the circumstances to find a plan was not proposed in good faith where its sole purpose was to enable the debtors to cure and reinstate an obligation, thereby avoiding a contractual liability for default interest, but refusing to apply a per se rule); *In re Stolrow's Inc*., 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) ("[Good faith] also requires a fundamental fairness in dealing with one's creditors."); *see also In re Bd. of Directors of Telecom Argentina, S.A*., 528 F.3d 162, 174 (2d Cir. 2008) (requiring a showing that the plan "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected."). The court's good faith review of a proposed plan under 11 U.S.C. § 1129(a)(3) requires an analysis of the totality of circumstances, conducted on a case by case basis. *See, e.g.*, *In re Sylmar Plaza, L.P.*, 314 F.3d at 1070.

"Bad faith" is somewhat of misnomer. It is *not necessary* to show ill will or malicious conduct on the part of the debtor or intentional abuse of the bankruptcy laws. All that need to be shown is that the petition was filed for a purpose other than that sanctioned by the Code. (*See In re McCormick Road Assocs.*, 127 B.R. 410, 415 (Bankr. N.D. Il. 1991); *In re Southern Calif. Sound*

1  *Systems, Inc.*, 69 B.R. 896, 901, fn. 2 (Bankr. S.D. Cal. 1987).

2       Serial filings are not considered to be per se bad faith. *See Downey Sav. & Loan Ass'n v. Metz*

3  *(In re Metz),* 820 F.2d 1495, 1497 (9th Cir.1987); *see also Johnson v. Home State Bank,* 501 U.S. 78,

4  87 (1991) (permitting serial filings under chapter 7 and then chapter 13). Instead, the court must

5  review the totality of the circumstances to determine the issue of bad faith. *Little Creek Develop. Co.*,

6  779 F2d 1068, 1072 (5th Cir. 1986); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984).

7  All facts and circumstances *leading up to the filing of the bankruptcy case are considered, as well as*

8  *the debtors' conduct during the case*. *See In re Charfoos*, 979 F.2d 390, 394-395 (6th Cir. 1992); *In*

9  *re Laguna Assocs. Ltd. P'ship*, 30 F3d 734, 738 (6th Cir. 1994); *In re Robino*, 243 B.R. 472, 487

10  (Bankr. N.D. Al. 1999).

11      As a general principle,  **where debtors file a second case in order to propose a plan that**

12  **they would have otherwise been prohibited from proposing in their first case . . . the second**

13  **case may nevertheless be dismissed for cause**. *In re Cabral*, No. 12-12050-A-12, 2012 WL

14  8441317, at *4-5 (Bankr. E.D. Cal. Oct. 10, 2012). (emphasis added). Though the filing of a second

15  petition may otherwise meet the statutory requirements, the filing may nevertheless violate the

16  purpose and spirit of chapter 11 and thus not be filed in good faith. *In re Metz,* 820 F.2d at 1498.

17  Lack of good faith may be shown through the **manipulation** of the Bankruptcy Code. *See In re*

18  *Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982). A manipulation may exist when a debtor files a second

19  case primarily to propose some action in the second case that was otherwise prohibited or

20  unavailable to the debtors during the first case. *See In re Caviata Attached Homes, LLC*, 481 B.R.

21  34, 47 (B.A.P. 9th Cir. 2012).

22      **2.    Multiple Bankruptcy Filings, Defaults, and Transfers**

23      Here, the instant Bankruptcy Case represents the **third filing** between the Borrower/ SPLLC.

24  Notably, Melani Schulte signed each bankruptcy petition. The Court already entered a confirmed

25  Plan in the Borrower's First Case, which modified the Subject Loan. However, the Borrower

26  defaulted under the terms. Rather, than honoring her contractual obligations, Borrower, transferred

27  their interest to SPLLC without Creditor's consent. Days after registering the newly formed entity

28  with the Nevada Secretary of State, Borrower then filed as new bankruptcy case through the SPLLC

shell entity. Indeed, the Borrower knew she would be prohibited from filing a new case shortly after entry of the discharge order in their First Case. Accordingly, the Borrower transferred interest to SPLLC for purpose of filing a new bankruptcy case.

The Borrower is not a party to the instant Bankruptcy Case.  Although the terms of the Deed of Trust prohibited the Borrower from transferring interest in the Property without Creditor's consent, the Borrower transferred interest in the Property to SPLLC for the sole purpose of filing a new bankruptcy case. Creditor did not consent to the unauthorized transfer. As a result, Creditor has no contractual relationship with SPLLC. The aforementioned multiple bankruptcy filings and unauthorized fraudulent transfers have prevented Creditor from lawfully exercising its state law remedies with regard to the Property.

In evaluating the good faith of the proposed Plan of Reorganization, this Court must investigate SPLLC's motives for commencing a bankruptcy case without the "attendance" of the Borrower within Chapter 11. Here, it is apparent SPLLC has sought recourse to Chapter 11 protection as an illegitimate means to restructure the non-debtor Borrower's financially troubled loans. Put another way, the Borrower's decision not to be part of the Chapter 11 process is an impermissible use of the powerful provisions of federal Bankruptcy law. To adjust your obligation in a bankruptcy proceeding, you must be part of the bankruptcy case. The proposed treatment of Creditor's Claim in the Plan is based on the strategic filing of the case by SPLLC, and the non-filing by the Borrower.

As stated above, lack of good faith may be shown through the manipulation of the Bankruptcy Code. *See In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982). A manipulation may exist when a debtor files a second case primarily to propose some action in the second case that was otherwise prohibited or unavailable to the debtors during the first case. *See In re Caviata Attached Homes, LLC*, 481 B.R. 34, 47 (B.A.P. 9th Cir. 2012).

As the Borrower already filed bankruptcy and received a discharge, the Borrower transferred interest in the Property to SPLLC entity to file for bankruptcy. Thus the petition was filed for an improper purpose, to allow the non-debtor Borrower to benefit from Chapter 11 without being subjected to the disclosure and investigation integral to the Chapter 11 process, at the creditors'

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

expense. This is easily demonstrated by the fact that the proposed Plan deprives Creditor of its ongoing rights without subjecting the Borrower to being involved in the Chapter 11 process or responsible for their defaults. This Plan fails to treat the creditors with the fundamental fairness required by the Bankruptcy Code. Creditor asserts the Debtors have acted in bad faith by filing multiple bankruptcy cases, transferring interest in the Property without Creditor's consent, failing to make payments, and failing to comply with the prior confirmed Plan. Under the totality of the circumstances, this treatment is not proposed in good faith, and the Plan is thus not confirmable pursuant to § 1129(a)(3). There is no need to approve a Disclosure Statement that will not support a confirmable Plan or Reorganization.

### 3. Debtors' Bad Faith Actions are Contrary to Public Policy

The Court should consider the public policy concerns in permitting an individual Chapter 11 debtor to bypass the protections of §1141 and §1127 by confirming a Chapter 11 Plan, defaulting thereunder, transferring interest to a shell entity, and then refiling a new case/plan, seeking to modify the prior plan. Surely this is not what Congress intended in enacting the anti-modification provision of the Bankruptcy Code. Permitting a modification and such bad faith conduct in this case would send a message to other debtors that it is acceptable to default on a Chapter 11 Plan and then refile as a new party to obtain the benefits and protections of reorganization. If this is permitted, §1141 and §1127 would serve no purpose.

Based on the foregoing, Creditor asserts the Debtors have acted in bad faith based on (1) the filing multiple bankruptcy cases, (2) the unauthorized transfers of interest in the Property; and (3) the default under the confirmed Plan.

### D. THE PARTIES LACK PRIVITY OF CONTRACT

To the extent the Court concludes SPLLC is a separate party with the ability to modify the confirmed Plan from the First Case, Creditor asserts the parties lack privity of contract. SPLLC is not an obligor under the Subject Loan documents. Nor was SPLLC a party to the Confirmed Plan from the Borrower's First Case. As a result, SPLLC lacks standing to modify the terms of the Subject Loan.

Creditor objects to confirmation of the Plan as it violates 11 U.S.C. § 524(e) as it seeks to

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

discharge the liability of a non-filing party, the Borrower. 11 U.S.C. § 524(a)(2) states that the effect of a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). In other words, section 524(a) provides for the discharge of personal liability on certain debts of the debtor. Section 524 does not, however, provide for the release of personal liability for a third party non-debtor. To the contrary, 11 U.S.C. § 524(e) provides that a "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The bankruptcy court does not have the authority to release the liability of non-debtors, and a plan which contains such a provision may not be confirmed. *In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995).

Courts have repeatedly reiterated this principal when a debtor seeks to affect the liability of a non-debtor in his bankruptcy. *See In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir. 1989) (§ 105(a)'s grant of equitable powers does not permit a court to issue an injunction against creditors that would prevent creditors from enforcing the obligations of non-debtors); *In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 77 (9th Cir. BAP 1994) (holding reorganization plans which proposed to release non-debtor guarantors violated § 524(e) and were therefore unconfirmable). "[T]he mechanics of administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liabilities." *Seaport Automotive Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto Parts, Inc.)*, 113 B.R. 610, 616 (9th Cir. BAP 1990) citing *Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir. 1982). The court in *In re Solis* relied on § 524(e), in part, in denying confirmation of a debtor's plan that proposed to cram down a claim secured by a vehicle as it sought to affect the liability of a non-debtor. *In re Solis*, 356 B.R. 398 (Bankr. S.D. Tex. 2006).

In the present case, the original Borrower, Melani Schulte, is not a party to the bankruptcy. Despite this fact, SPLLC is proposing to modify the terms of the Subject Loan and confirmed Plan from the First Case. Clearly, such proposed treatment of the loan amounts to a drastic modification of the Borrower's obligation under the Subject Loan and Confirmed Plan from the First Bankruptcy

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

Case. If SPLLC is permitted to modify the Subject Loan in its Plan, it will result in substantial confusion as to the rights and obligations between the William and Melani Schulte, SPLLC, and Creditor, which, in turn, will result in conflicting obligations under competing plans and pre-petition contracts. Assuming SPLLC's Plan proposes to completely eliminate the Lender-Borrower relationship (which appears to be the case); it clearly violates Section 524(e) as it seeks to discharge the liability of a non-debtor under the loan. Specifically, if the non-debtor obligor (i.e., the Borrower) is no longer required to make principal and interest payments on the loan or otherwise comply with the terms of the loan documents or confirmed Plan from the First Case, the Plan necessarily seeks to discharge the personal liability of a non-filing obligors.

The lack of privity poses additional challenges to Creditor. For instance, the Plan requires Creditor to send monthly statements directly to SPLLC following the Effective Date.  However, the Plan provision conflicts with the Mortgage Servicing Rules. Moreover, Creditor is prohibited from releasing account information to a third party without written consent from the Borrower.

Based on the foregoing, the Plan violates 11 U.S.C. §§ 524(e) and 1129 and must be denied.

**E.    THE PLAN VIOLATES 11 U.S.C. § 506**

11 U.S.C. section 506(a) provides that "an allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a).

In the present case, SPLLC alleges the Property has a value of $321,108.00. (*See* Schedule A, Dkt No. 26). Pursuant to Creditor's Proof of Claim, the outstanding balance owed as of the petition date was $152,080.87, including *pre-petition* arrears of $29,082.85. (*See* Claim No. 4-2). However, the Plan proposes to limit Creditor's Claim to only $120,581.18, without explanation. SPLLC has yet to object to Creditor's Proof of Claim. As a result the Claim is deemed allowed and entitled to a presumption of validity. As the value of the Property *exceeds* the amount of Creditor's lien, the Claim must be treated as fully secured in the Plan, including the cure of all contractual arrears. As the Plan proposes to reduce Creditor's claim below of the fair market value of the Property, the Plan violates §506(a) and cannot be confirmed.

/././

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**

## F.   THE PLAN FAILS TO PROVIDE FOR THE CURE OF THE CONTRACTUAL ARREARS

Chapter 11 of the Bankruptcy Code provides that a plan of reorganization must, among other things, "provide adequate means for the plan's implementation," including the "curing or waiving of any default." 11 U.S.C. § 1123(a)(5)(G). If a debtor is seeking to "cure" a default under 11 U.S.C. § 1124, then the debtor must generally cure said default by the effective date of the Plan or within a reasonable time and in accordance with the contractual documents, which would include *interest* on said arrears in accordance with the Note. *See* 11 U.S.C. §1123(d); *In re Tri-Growth Centre City, Ltd*., 136 B.R. 848, 852 (Bankr. S.D. Cal. 1992); *In re Lennington,* 288 B.R. 802, 804-06 (Bankr. C.D. Ill. 2003). Bankruptcy courts that have addressed cure amounts under 11 U.S.C. § 1124(2)(A) appear to be virtually uniform in their opinion that the cure "must occur, in full, prior to or on the effective date of the plan in order to restore of the parties to their pre-default state. The effect of § 1124(2) is to treat the claim as if default had not occurred, but this can only be accomplished if 'cure' occurs in full and immediately." *In re Schatz,* 426 B.R. 24, 27 (Bankr.D.N.H.2009). *See also Tri–Growth Centre City, Ltd.,* 136 B.R. 848, 852 (Bankr.S.D.Cal.1992); *In re Jones,* 32 B.R. 951 (Bankr.D.Utah 1983); *In re Cottonwood Corners Phase V, LLC*, 2012 WL 566426, at *13 (Bankr. D.N.M. 2012).

As discussed above, SPLLC alleges the Property has a value of $321,108.00. (*See* Schedule A, Dkt No. 26). Pursuant to Creditor's Proof of Claim, the outstanding balance owed as of the petition date was $152,080.87, including *pre-petition* arrears of $29,082.85. (*See* Claim No. 4-2). As the value of the Property exceeds the amount of Creditor's lien, the Claim must be treated as fully secured in the Plan, including the cure of all contractual arrears. However, the Plan states the cure amount for Creditor's arrearages shall be zero. (*See* Plan, Class 2(u)).

As Borrower defaulted under the terms of the Confirmed Plan from the First Case, the *pre-petition* arrears total $29,082.85 and must be cured upon the Effective Date of the Plan. As the Plan fails to provide for the cure of the arrears, the Plan cannot be confirmed.

## G.   THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE

Pursuant to 11 U.S.C. §1129(b)(2)(B) a plan is fair and equitable with respect to a class of

OBJECTION TO DISCLOSURE STATEMENT AND PLAN

unsecured creditors if they are paid in full or no junior class retains any interest in estate property except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14). This provision is commonly known as the absolute priority rule.

Recently, the Ninth Circuit Court of Appeals affirmatively held the absolute priority rule applies to all Chapter 11 cases, adopting the "narrow view" of the rule. *In re Zachary*, 811 F.3d 1191 (9th Cir. 2016).

In this case, Creditor's security interest in the Property is senior to SPLLC's interest in the Property. The Plan does not provide for Creditor's claim in full, but SPLLC attempts to retain an interest in the Property as a junior class member in violation of the absolute priority rule. Specifically, the Plan proposes to reduce Creditor's secured claim of $152,080.87 to $120,581.18. (*See* Plan, Class 2(u)).  Presumably, the remainder of the Claim ($31,499.69) would be treated as unsecured and paid its *pro rata* share of the dividend issued to general unsecured creditors. Therefore, the Plan is in violation of the absolute priority rule and the Plan cannot be confirmed.

## H.    DEBTOR IS USING CREDITOR'S CASH COLLATERAL WITHOUT AUTHORIZATION

The Bankruptcy Code unequivocally prohibits a debtor from using cash collateral unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use.  11 U.S.C. §363(c)(2). There is no affirmative duty for creditors or the court to raise the issue. Rather, *a debtor* is required to obtain permission *before* using cash collateral. Here, Debtor failed to do so. The unauthorized use of cash collateral <u>alone</u> constitutes cause to dismiss or convert a Chapter 11 Case. 11 U.S.C. § 1112(b)(4)(D).

11 U.S.C. § 552(b) provides:

Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, products, offspring, rents, or profits acquired by

the estate after the commencement of the case to the extent provided by such security agreement and the applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.Moreover, 11 U.S.C. § 363(a) provides:

> In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, product, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before of after the commencement of a case under this title.

In the instant case, the Deed of Trust contains an Assignment of Rents provision providing Creditor with an additional security interest in all rental income generated by the Property. (*See* Claim No. 4-2, Deed of Trust, 1-4 Family Rider, ¶H). Pursuant to 11 U.S.C. § 363(a), SPLLC is prohibited from using the rental income without court authorization or creditor consent.

Pursuant to SPLLC's monthly operating reports, the SPLLC is collecting rental income. (*See e.g.* Dkt. No. 163). The rental income constitutes cash collateral within the meaning of the Bankruptcy Code. To date, SPLLC has yet to file a proposed motion seeking court authorization to use the cash collateral for any purpose. Accordingly, it appears SPLLC has been using cash collateral in violation of the Bankruptcy Code. Creditors are being harmed by SPLLC's use of cash collateral as the Subject Loan remains in default while SPLLC enjoy access to the rental income in violation of the Bankruptcy Code. Based on the foregoing, the Plan must be denied and dismissal of the case is warranted under 11 U.S.C. § 1112(b)(4)(D).

**WHEREFORE**, Creditor respectfully requests:

1.     That the Court deny approval of the Disclosure Statement;

2.     That the Court deny confirmation of the Plan;

3.     Reasonable attorneys' fees and costs; and

4.     For such other and further relief as this Court deems just and proper.

Respectfully submitted,

**ALDRIDGE PITE, LLP**

Dated: April 3, 2019

/s/ Eddie R. Jimenez
EDDIE R. JIMENEZ
Attorney for Fifth Third Mortgage Company

**OBJECTION TO DISCLOSURE STATEMENT AND PLAN**