**TIFFANY & BOSCO, P.A.**
Jason C. Kolbe, Esq.
Nevada Bar No. 11624
Ace C. Van Patten, Esq.
Nevada Bar No. 11731
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone: 702 258-8200
Fax: 702 258-8787
nvbk@tblaw.com
TB File No. 18-72351

Attorney for *Secured Creditor* Ditech Financial LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | BK Case No. 18-12734-mkn |
| SCHULTE PROPERTIES LLC | Chapter 11 |
| Debtor. | **OBJECTION TO AMENDED CHAPTER 11 DISCLOSURE STATEMENT** |
| | **Subject Property**: <br> 3729 Discovery Creek Avenue <br> North Las Vegas, NV 89031 |

### OBJECTION TO AMENDED CHAPTER 11 DISCLOSURE STATEMENT

Ditech Financial LLC ("Creditor"), secured creditor of the above-entitled Debtor, Schulte Properties LLC, ("Debtor"), hereby objects to the Debtor's Amended Disclosure Statement Describing Chapter 11 Plan filed by Debtor in the above-referenced matter. Creditor's objection is supported by the memorandum of points and authorities cited herein and the record currently before the court. The basis of the objection is stated below:

/././

/././

/././

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    LOAN HISTORY**

Creditor's claim is evidenced by a promissory note executed by William Schulte and dated May 13, 2005, in the original principal sum of $260,000.00 (the "Note").  The Note is secured by a deed of trust (the "Deed of Trust") encumbering the real property commonly known as **3729 Discovery Creek Avenue, North Las Vegas, NV  89031** (the "Subject Property" or "Property").  Creditor holds possession of the Note, which is endorsed in blank.  The beneficial interest in the Deed of Trust was also subsequently transferred to Creditor.  Together, the Note and Deed of Trust are collectively referred to hereafter as the "Loan".

On or about May 14, 2005, Melani Schulte, as spouse of the grantee, executed a Quitclaim Deed to convey the property to William Schulte, a married man, as his sole and separate property.

On or about May 18, 2005, William R. Schulte executed a Grant, Bargain, Sale Deed to convey the property to William R. Schulte and Melani Schulte, husband and wife as joint tenants, with right of survivorship.

On or about July 13, 2005, William R. Schulte and Melani Schulte executed a Grant, Bargain, Sale Deed to convey the property to 3729 Discovery Creek, LLC.

On or about October 28, 2010, 3729 Discovery Creek, LLC through its "member", Melani Schulte, executed a Grant, Bargain, Sale Deed to convey the property to William R. Schulte and Melani Schulte, husband and wife, as Joint Tenants, with right of survivorship.

On or about July 17, 2013, William R. Schulte and Melani Schulte executed a Grant, Bargain, Sale Deed to convey the property to Melani Schulte, a single unmarried woman, as her sole and separate property.

On or about May 30, 2017, Melani Schulte executed a Grant, Bargain, Sale Deed to convey the property to Schulte Properties LLC.

**B.     BANKRUPTCY HISTORY**

*William and Melani Schulte*

On June 8, 2009, William R. Schulte and Melani Schulte filed a voluntary petition under Chapter 7 as Case Number 09-19658-bam. Said case was dismissed on or about August 4, 2009.

On October 11, 2009, Melani Schulte filed a voluntary petition under Chapter 11 as Case Number 09-29123-mkn (the "Second 2009 Bankruptcy").

On January 12, 2010, BAC Home Loans Servicing, LP filed its Proof of Claim the Second 2009 Bankruptcy secured by the Subject Property with a total outstanding balance in the amount of $253,539.46, and a pre-petition arrearage claim of $15,893.18. *See* Claim No. 44-1 in the Second 2009 Bankruptcy. Said claim was assigned/transferred to Green Tree Servicing LLC. *See* Assignment/Transfer of Claim filed on April 16, 2013 in the Second 2009 Bankruptcy.

On December 1, 2010, the court entered an Agreed Order Resolving Secured Creditor's Opposition to Debtors' Motion to Value Collateral, "Strip Off" and Modify Rights of Unsecured Creditors Pursuant to 11 U.S.C. §506(a) and §1123 for the Real Property Located at 3729 Discovery Creek Avenue, Las Vegas, NV 89031. *See* the Second 2009 Bankruptcy Docket No. 841. Said Order provided that Creditor's claim would be secured in the amount of $125,446.93 to be amortized over 30 years at 5.25% interest per annum, via monthly payments to Creditor in the amount of $692.72 to commence December 1, 2010. *Id.*

3

On March 8, 2011, the court entered an Order Confirming Third Amended Plan of Reorganization, which reflected the terms of the stipulated order. *See* the Second 2009 Bankruptcy Docket No. 912.

On December 15, 2015, Melani Schulte obtained a chapter 11 discharge in Case Number 09-29123-mkn. *See* the Second 2009 Bankruptcy Docket No. 1182.

*Schulte Properties LLC*

One day after the Property had been conveyed to Schulte Properties LLC and just five (5) days after registering the business entity with the Nevada Secretary of State, Schulte Properties LLC on May 31, 2017 filed a voluntary petition under Chapter 11 as Case Number 17-12883-mkn (the "2017 Bankruptcy"). The 2017 Bankruptcy was voluntarily dismissed on January 16, 2018, after Wells Fargo Bank, N.A. obtained relief from the automatic stay on the property located at 1528 Splinter Rock Way, North Las Vegas, NV 89031.

On May 10, 2018, Schulte Properties LLC filed the instant voluntary petition under Chapter 11 as Case Number 18-12734-mkn. Melani Schulte is the President and Manager of Schulte Properties LLC.

On October 29, 2018, Creditor filed its amended proof of claim secured by the Subject Property with a total outstanding balance in the amount of $135,528.95, and a pre-petition arrearage claim of $25,322.92 as Claim 23. Pursuant to the filed Claim, the interest rate and principal balance reflect and conform to the Order Confirming Plan entered in the Second 2009 Bankruptcy, and the loan is due approximately for the June 2016 payment.

On April 10, 2019, Debtor filed its proposed Amended Chapter 11 Plan and Amended Disclosure Statement. With regard to the Subject Property and its related loan, the treatment proposed under Class 2(j) is as follows:

> *All Allowed Claims held by Class 2 Secured Claim holders shall be paid in accordance with all other terms as set forth in the 2009 Bankruptcy Case Order of Confirmation except as otherwise set forth herein. The Debtor believes that the total amount owing on this claim is $107,445.04. The Allowed Claims of this class shall be paid on a true bi-weekly basis, with*

4

*payments applied every other week by way of an ACH payment or similar payment as determined by the Debtor in the amount of $273.71, and the Creditor shall apply each payment to principal and interest towards the Allowed Claim amount as each payment is received. The Debtor shall pay, outside of escrow, all taxes, insurance, and HOA dues applicable to this Claim when each is due, and shall provide Creditor with proof of payment of such upon the reasonable request of Creditor. Creditor shall not attempt to pay any taxes, insurance, or HOA dues applicable to the Property or to make changes related to the taxes or insurance for the Property unless Debtor has failed to make any such payment and Debtor has failed to cure any default in payment within ten (10) days after written notice of default by Creditor sent to Debtor at the Debtor's mailing address, 9811 W. Charleston Suite 2-351, Las Vegas, Nevada 89117. The Debtor may make additional payments of principal, which shall immediately reduce the principal balance, without penalty. Arrearages, if any, shall be included in the Plan payment. The cure amount shall be $0. In the event that the Court reduces any Allowed Claim owing to this creditor or enters an award for damages against the holder of this claim, any payment due to the holder of this claim shall be reduced by the amount set forth in any such Order.*

Creditor now objects to the Chapter 11 Disclosure Statement filed herein by the Debtor.

## II.

## LEGAL ARGUMENT

**A.  THE DEBTOR'S DISCLOSURE STATEMENT FAILS TO CONTAIN ADEQUATE INFORMATION IN VIOLATION OF SECTION 1125 OF THE BANKRUPTCY CODE.**

    **1.  Legal Standard**

Title 11 U.S.C. § 1125(b) provides that acceptance or rejection of a proposed Plan of reorganization may not be solicited unless the holder of a claim or interest to whom the solicitation is made is provided with the proposed plan or summary thereof and "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. §1125(b). To approve a Disclosure Statement, the court must first determine that it contains "adequate information." *In re Unichem Corp.*, 72 B.R. 95, 96 (Bankr. N.D. Ill. 1987). Adequate information means that the Disclosure Statement must clearly and succinctly inform the average creditor "what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991). "Adequate information" is information of a kind, and in sufficient detail, to enable a "hypothetical investor" typical of the holders of claims and interests in a

5

case to make an informed judgment about the Plan. 11 U.S.C. § 1125(a)(1). This includes financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 Plan and information relevant to the risks posed to creditors under the Plan. *See, In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

**2.     The Debtor's Disclosure Statement fails to provide sufficient information regarding the possible claims it may assert against creditors, which prevents Creditor from determining how its claim may be affected and the feasibility of the Plan.**

The Debtor's Disclosure Statement reflects that potential claims against creditors may exist, but provides no information regarding the nature, extent, value, specific creditors which would be affected, or the ability of the Debtor to assert any such causes of action when it was not a party to the Second 2009 Bankruptcy Case confirmation order. While the Debtor has filed ex-parte motions relating to 2004 examinations of creditors, there is no explanation in the Disclosure Statement as to the timeline of that litigation and/or the effect it may have on the individual claims or the reorganization as a whole. Without such information, Creditor is unable to adequately assess the treatment of its claim or the likelihood that any proposed reorganization would be successful, much less comply with the various demands included in the Disclosure Statement and Plan relating to the monthly mortgage statements, for example, when the Plan does not provide for what actual terms are binding.

**3.     The Disclosure Statement fails to provide sufficient information regarding how this reorganization is likely to be successful in light of the previous confirmation by the Schultes and bankruptcy filings by the Debtor.**

Debtor's Disclosure Statement fails to provide sufficient information regarding why the current bankruptcy case is necessary when a prior bankruptcy case was voluntarily dismissed a mere four (4) months prior to the instant case and when there is a confirmed Plan in the Second 2009 Bankruptcy Case. The claims asserted here regarding inaccuracies in the application of payments are more appropriately asserted as part of the Second 2009 Bankruptcy Case, but moreover, given that the Schultes were unwilling and/or unable to comply with the payment requirements in the Second 2009

Bankruptcy Case, there is no explanation as to why or how this bankruptcy case is likely to be any different. The Schultes became delinquent on payments owed pursuant to the Second 2009 Bankruptcy Case and likely because of that delinquency, now attempt to remodify the loans instead of exercising their remedies in the Second 2009 Bankruptcy Case for adjudicating a dispute relating to any contempt of the confirmation order. Without further information as to why this Debtor – a shell holding company for the Schulte's properties – will now be able to maintain ongoing operations, Creditor is unable to assess the relevant risks posed by the Plan and any good or bad faith relating to the same.

**4.    The Disclosure Statement fails to provide sufficient information regarding how a reorganization is possible given that the loans cannot be modified.**

As argued more fully below, Creditor's claim, if not every creditor's claim in the case, cannot be modified without running afoul of 11 U.S.C. §524(e)'s prohibition on modifying the liability of a non-debtor, in this case William and Melani Schulte. In light of the inability of the loans to be modified, Creditor lacks information in order to allow it to be able to ascertain the likelihood that the reorganization will be effective and feasible. As the Disclosure Statement both fails to provide this information, and because the Plan cannot be confirmed in its current state anyway, the Disclosure Statement must be denied.

**5.    The Disclosure Statement fails to provide information regarding the basis of the modification of Creditor's claim.**

Creditor's Proof of Claim reflects and outstanding balance of $135,528.95 with a pre-petition arrearage of $25,322.92. See, Claim #23. The Claim has not been objected to and the Disclosure Statement indicates the Property is oversecured. Despite that, the Plan proposes to limit the amount of Creditor's claim to $107,445.04 without any explanation or legal basis. 11 U.S.C. § 506(a) provides that "an allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a).

As the Debtor's own Disclosure Statement indicates the value of the Property is above Creditor's claim, there is no basis for the reduction and no information which would allow Creditor to determine the same. Moreover, the Disclosure Statement does not indicate how the $28,083.91 difference would be treated – whether it would be disallowed, treated as an unsecured claim, or otherwise provided for. Again, there is also no information regarding the possibility of reorganization in the event the claim were not allowed to be reduced or otherwise modified. As such, the Disclosure Statement must be denied.

**B.    THE APPROVAL OF THE DISCLOSURE STATEMENT MUST BE DENIED AS THE DEBTOR'S PLAN IS PATENTLY UNCONFIRMABLE.**

  1.    **Legal Standard**

The Court may refuse to permit solicitation of a plan acceptances if, based on the proposed disclosure statement, it were to determine that the proposed Plan violates applicable provisions of the Bankruptcy Code on its face. *In re Arnold*, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012); *see also* 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1125.03[4] at 1125–23 (16th ed. 2011) ("most courts will not approve a disclosure statement if the underlying plan is clearly unconfirmable on its face") (citations omitted); *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003); *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999). "If, on the face of the plan, the plan could not be confirmed, then the Court will not subject the estate to the expense of soliciting votes and seeking confirmation." *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986); *see also, In re Cardinal Congregate* I, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (disapproval of the adequacy of a disclosure statement may be appropriate "where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible."). Here, even without addressing the specific valuation, maturity date, payment amount, and interest rate terms of the claim proposed, for which Creditor objects to but for which are more appropriately addressed at confirmation, the Plan facially violates the bankruptcy code and cannot be confirmed.

**2. There is no contractual privity between the parties and Debtor cannot modify Creditor's claim without violating 11 U.S.C. §524(e).**

The most substantially fatal flaw with the Debtor's Disclosure Statement and Plan is that the Debtor cannot modify the underlying claim as the Debtor, Schulte Properties, LLC, does not have contractual privity with Creditor, and any modification would impermissibly modify the liability of non-debtors William and Melani Schulte. The Debtor has no contractual relationship with Creditor or liability on the underlying debt. By proposing to modify the instant claim, Debtor is unilaterally forcing Creditor to extend financing to Debtor on terms that the Debtor proposes. Indeed, Debtor proposes to pick and choose which portions of the prior loan agreement and confirmation most benefit it, and discard those which do not. This modification, however, is impermissible under the Bankruptcy Code and the Debtor cannot confirm any plan which proposes to do the same.

Even if there was a good faith basis for a modification, such a modification of William and Melani's respective personal liability, as proposed by the Plan, would violate 11 U.S.C. §524. Section 524(a) provides for the discharge of personal liability on certain debts *of the debtor*. Section 524 does not, however, provide for the release or modification of personal liability for a third party non-debtor. To the contrary, 11 U.S.C. § 524(e) expressly provides that a discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt. 11 U.S.C. § 524(e). The Ninth Circuit has repeatedly recognized this and reiterated for over two decades that the bankruptcy court does not have the authority to release the liability of non-debtors, and a plan which contains such a provision may not be confirmed. *Deocampo v. Potts*, 836 F.3d 1134, 1143 (9th Cir. 2016)(noting that "we have 'repeatedly held without exception' that, in a Chapter 11 proceeding, '§524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors.")(citing *In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995)); *see also, Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 (9th Cir. 2002); *In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir. 1989); *In re Sun Valley Newspapers, Inc.,* 171 B.R. 71, 77 (9th Cir. B.A.P. 1994).

The Debtor's Plan, however, seeks to alter and modify the liability and obligations of non-debtors William Schulte and Melani Schulte – the President and Manager of the Debtor. Here, Debtor

is neither liable for nor a party to any of the Note and Deed of Trust or the Second 2009 Bankruptcy Case's confirmation order. Despite this fact, Debtor's Plan seeks to modify the terms of the Loans on the basis that Debtor received an interest in the Property from the Schultes. The Schulte's however, remain liable for the debts pursuant to the loan documents and Second 2009 Bankruptcy Case's confirmation order. The discharge in their prior case may have limited any liability from being personally asserted against them, but the debts and obligations contained in the Plan and loan documents still exist and are enforceable against the Schulte's on that basis. The Plan proposes to reduce the secured claim of Creditor, disposes of the arrears, extends the loan term, and alters the payment structure of the loan. Clearly, Debtor's proposed treatment of the claim, then, amounts to a drastic modification of the obligations of the Schultes, neither of whom are debtors in the instant case. Assuming Debtor's Plan proposes to completely eliminate the creditor-borrower relationship (which appears to be the case), the Plan clearly violates Section 524(e) as it seeks to discharge the liability of a non-debtor on the Notes and Deeds of Trust. Specifically, if the non-debtor obligor is no longer required to make principal and interest payments on the loan or otherwise comply with the terms of the Notes and Deeds of Trust, the Plan necessarily seeks to alter and otherwise discharge the liability of the non-filing obligors (i.e., the Schultes), who – even with the prior discharge in the previous case – still have obligations under the Plan and loan documents for which performance is required. Based upon the foregoing, Creditor's claim cannot be modified in the Debtor's Plan as such a modification would effectively discharge the liability of the non-filing Schultes in violation of Section 524(e).

Further, if Debtor is permitted to modify Creditor's claim in his Plan, it will result in substantial confusion as to the rights and obligations between the Schultes, Debtor, and Creditor, which, in turn, will result in two conflicting obligations. Indeed, the two parties (i.e., the Schultes and Debtor) would be responsible for making payments on the loan under different terms. The Schultes would be responsible for making principal and interest payments pursuant to the terms of the note and deed of trusts, as modified by the confirmed Plan, and would be subject to the various rights and responsibilities prescribed under those documents. However, Debtor would be obligated to make payments on the loan

pursuant to the provisions of its confirmed Plan. These conflicting obligations pose an administrative burden for all parties.

### 3. The Debtor violates the absolute priority rule.

Pursuant to 11 U.S.C. §1129(b)(2)(B) a plan is fair and equitable with respect to a class of unsecured creditors if they are paid in full or no junior class retains any interest in estate property except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14). The Ninth Circuit has confirmed that the absolute priority rule applies in all Chapter 11 cases. *In re Zachary,* 811 F.3d 1191 (9th Cir. 2016).

In this case, Creditor's security interest in the Property is senior to Schulte Properties, LLC's interest in the Property. The Plan does not provide for Creditor's claim in full, but the entity attempts to retain an interest in the Property as a junior class member in violation of the absolute priority rule. However, as noted above, because the Plan proposes to de facto bifurcate Creditor's claim, the remainder of Creditor's claim would be treated as an unsecured claim to be paid pro rata with the other unsecured creditors and the absolute priority rule would prevent the confirmation of the Plan as a result of its failure to provide for the unsecured creditors in full.

Moreover, the $100,000 proposed contribution made from an insider, Melani Schlute, who is the holder of 100% of the Debtor's membership interest, does not satisfy the new value corollary to the absolute priority rule, most significantly, because it is not "new." *See e.g., In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 654 (9th Cir. 1997). The source of funds is from rental income generated by the properties involved in the instant bankruptcy proceeding – funds that should have been paid to the creditors as part of the previously confirmed Chapter 11 Plan but for the defaults by the Schultes. The Debtor cannot now suggest that those funds are new value simply because they transferred the properties into a holding company on the verge of filing the bankruptcy. As such, Debtor has failed to meet its burden in establishing the new value exception to the absolute priority rule, and approval of the Disclosure Statement must be denied.

As such, the Plan violates the absolute priority rule and cannot be confirmed.

**4. The Debtor is not entitled to any offsetting of the accounting as a result of Creditor's own bankruptcy.**

Creditor, itself, is currently in the midst of its own Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York, jointly administered as case number 19-10412. While the Debtor's Plan indicates Creditor's claim may be reduced in the event the Court enters an award of damages, no such damages can be sought against Creditor as a result of the automatic stay in place in Creditor's bankruptcy case. As noted above, Debtor does not describe what potential claims it would have against Creditor, or any other Creditors, but any such claim would be prevented from being assessed against Creditor and no damages or offsetting of the same is available.

## III.

## CONCLUSION

Based on the foregoing, Ditech Financial LLC, respectfully requests that the Court sustain this Objection to Debtor's Amended Disclosure Statement.

WHEREFORE, Secured Creditor prays as follows:

1. That the Court deny approval of the proposed Disclosure Statement;
2. For reasonable attorney's fees and costs incurred herein;
3. For such other and further relief as this Court deems just and proper.

DATED this 15th day of May, 2019.

**TIFFANY & BOSCO, P.A.**

By /s/ Ace C. Van Patten, Esq.
ACE C. VAN PATTEN, ESQ.
Attorney for Secured Creditor
10100 W. Charleston Boulevard
Suite 220
Las Vegas, NV 89135

**TIFFANY & BOSCO, P.A.**
Jason C. Kolbe, Esq.
Nevada Bar No. 11624
Ace C. Van Patten, Esq.
Nevada Bar No. 11731
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone:  702 258-8200
Fax:  702 258-8787
nvbk@tblaw.com
TB File No. 18-72351

Attorney for *Secured Creditor* Ditech Financial LLC

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| IN RE:<br><br>SCHULTE PROPERTIES LLC<br><br>Debtor. | BK Case No. 18-12734-mkn<br><br>Chapter 11<br><br>**CERTIFICATE OF MAILING** |
|---|---|

### **CERTIFICATE OF MAILING**

1. On May 15, 2019, I served the following documents:

    **OBJECTION TO AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

2. I caused to be served the above-named document by the following means to the persons as listed below:

    X   a. ECF System

    >   Matthew L. Johnson
    >   annabelle@mjohnsonlaw.com
    >   Attorney for Debtor

    >   Karen L. Kellett
    >   akbecf@gmail.com
    >   Attorney for Debtor

13

Jason Blumberg
jason.blumberg@usdoj.gov
U.S. Trustee

Edward M. McDonald
Edward.m.mcdonald@usdoj.gov
U.S. Trustee

X   **b. United States mail, postage fully prepaid:**

| | |
|---|---|
| Schulte Properties LLC<br>9811 W. Charleston Blvd., Ste 2-351<br>Las Vegas, NV 89117<br>Debtor | Karen L. Kellett<br>Caitlyn N. Wells<br>11300 N. Central Expy., Ste. 301<br>Dallas, TX 75243<br>Attorney for Debtor |
| Schulte Properties LLC<br>Attn: Melani Schulte<br>9811 W. Charleston Blvd., Ste 2-351<br>Las Vegas, NV 89117 | Jason Blumberg<br>Office of the U.S. Trustee<br>501 I Street, Suite 7-500<br>Sacramento, CA 95814<br>Attorney for U.S. Trustee |
| Matthew L. Johnson<br>Johnson & Gubler, P.C.<br>8831 W. Sahara Avenue<br>Las Vegas, NV 89117<br>Attorney for Debtor | Edward M. McDonald<br>Office of the U.S. Trustee<br>300 Las Vegas Blvd., So., Ste. 4300<br>Las Vegas, NV 89101<br>Attorney for U.S. Trustee |

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 15th day of May, 2019.

By:   /s/ Michelle Benson

14