**TIFFANY & BOSCO, P.A.**
Jason C. Kolbe, Esq.
Nevada Bar No. 11624
Ace C. Van Patten, Esq.
Nevada Bar No. 11731
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone:  702 258-8200
Fax:  702 258-8787
nvbk@tblaw.com
TB File No. 09-74063

Attorney for *Secured Creditor* The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-27

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | BK Case No. 18-12734-mkn |
| SCHULTE PROPERTIES LLC | Chapter 11 |
| Debtor. | **OBJECTION TO AMENDED CHAPTER 11 DISCLOSURE STATEMENT** |
| | **Subject Property**:<br>509 Canyon Greens Drive<br>Las Vegas, NV  89144 |

### OBJECTION TO AMENDED CHAPTER 11 DISCLOSURE STATEMENT

The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-27 ("Creditor"), secured creditor of the above-entitled Debtor, Schulte Properties, LLC, ("Debtor"), hereby objects to the Debtor's Amended Disclosure Statement Describing Chapter 11 Plan filed by Debtor in the above-referenced matter. Creditor's objection is supported by the memorandum of points and authorities cited herein and the record currently before the court. The basis of the objection is stated below:

/././

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

**A.    LOAN HISTORY**

Creditor's claim is evidenced by a promissory note executed by *William R. Schulte* and dated May 5, 2003, in the original principal sum of $960,000.00 (the "Note"). The Note is secured by a deed of trust (the "Deed of Trust") encumbering the real property commonly known as **509 Canyon Greens Drive, Las Vegas, NV 89144**. Creditor holds possession of the Note, which is indorsed in blank. The beneficial interest in the Deed of Trust was also subsequently transferred to Creditor. Together, the Note and Deed of Trust are collectively referred to hereafter as the "Loan".

On or about May 13, 2003, William Schulte executed a Grant, Bargain, Sale Deed to convey the property to William R. Schulte and Melanie Schulte, Husband and Wife, as joint tenants with right of survivorship.

On or about July 2, 2004, William R. Schulte and Melani Schulte executed a Grant, Bargain, Sale Deed to convey the property to William R. Schulte and Melani Schulte, Trustees of the William and Melanie Schulte Trust.

On or about July 26, 2005, William R. Schulte and Melani Schulte, Trustees of the William and Melanie Schulte Trust executed a Quitclaim Deed to William R. Schulte and Melani Schulte, husband and wife, as joint tenants.

Also on or about July 26, 2005, William R. Schulte, executed a Quitclaim Deed to Melani Schulte, a married woman, as her sole and separate property.

/././

/././

2

On or about August 2, 2005, Melani Schulte executed a Grant, Bargain, Sale Deed to convey the property to William R. Schulte and Melani Schulte, husband and wife, as joint tenants with right of survivorship.

Also on or about August 2, 2005, William R. Schulte and Melani Schulte executed a Grant, Bargain, Sale Deed to convey the property to William R. Schulte and Melani Schulte, Trustees of the William and Melanie Schulte Trust.

On or about October 25, 2011, William R. Schulte and Melani Schulte, Trustees of the William and Melanie Schulte Trust executed a Grant, Bargain, Sale Deed to convey the property to William R. Schulte and Melani Schulte, husband and wife, as joint tenants with right of survivorship.

On or about July 17, 2013, William R. Schulte and Melani Schulte executed a Grant, Bargain, Sale Deed to convey the property to Melani Schulte, a single unmarried woman, as her sole and separate property.

On or about June 10, 2015, Melani Schulte executed a Grant, Bargain, Sale Deed to convey the property to Melani Schulte, Trustee of the Melani Schulte Living Trust.

On or about April 6, 2018, Melani Schulte, Trustee of the Melani Schulte Living Trust, executed a Grant, Bargain, Sale Deed to convey the Property to Schulte Properties LLC, a Nevada Limited Liability Company.

**B.**     **BANKRUPTCY HISTORY**

*William and Melani Schulte*

On June 8, 2009, William R. Schulte and Melani Schulte filed a voluntary petition under Chapter 7 as Case Number 09-19658-bam. Said case was dismissed on or about August 4, 2009.

On October 11, 2009, Melani Schulte filed a voluntary petition under Chapter 11 as Case Number 09-29123-mkn (the "Second 2009 Bankruptcy").

/././

3

On February 17, 2010, Creditor filed its Proof of Claim in Case Number 09-29123-mkn secured by the Subject Property with a total outstanding balance in the amount of $873,415.57, and a pre-petition arrearage claim of $77,562.88.  *See* Claim No. 63-1 in the Second 2009 Bankruptcy.

On November 23, 2010, the Melani Schulte filed a proposed Third Amended Plan of Reorganization in Case Number 09-29123-mkn, which provided that the claim for 509 Canyon Greens Drive, Las Vegas, NV 89144 would be "unimpaired and paid in full in accordance with the terms of its related note and mortgage".  *See* Second 2009 Bankruptcy Docket No. 834.

On March 8, 2011, the court entered an Order Confirming the above-referenced Third Amended Plan of Reorganization.  *See* Second 2009 Bankruptcy Docket No. 912.

On December 15, 2015, Melani Schulte obtained a chapter 11 discharge in Case Number 09-29123-mkn.  *See* the Second 2009 Bankruptcy Docket No. 1182.

*Schulte Properties, LLC*

One day after the Property had been conveyed to Schulte Properties, LLC and just five (5) days after registering the business entity with the Nevada Secretary of State, Schulte Properties, LLC on May 31, 2017 filed a voluntary petition under Chapter 11 as Case Number 17-12883-mkn (the "2017 Bankruptcy"). The 2017 Bankruptcy was voluntarily dismissed on January 16, 2018, after Wells Fargo Bank, N.A. obtained relief from the automatic stay on the property located at 1528 Splinter Rock Way, North Las Vegas, NV  89031.

On May 10, 2018, Schulte Properties, LLC filed the instant voluntary petition under Chapter 11 as Case Number 18-12734-mkn. Melani Schulte is the President and Manager of Schulte Properties, LLC.

On October 11, 2018, Creditor filed its amended proof of claim secured by the Subject Property with a total outstanding balance in the amount of $1,357,150.48, and a pre-petition arrearage claim of $802,507.89

as Claim 11-2. Pursuant to the filed Claim, prior to the filing of the instant bankruptcy proceeding, no payments had been made on the loan since November, 2011.

On April 10, 2019, Debtor filed its proposed Amended Chapter 11 Plan and Amended Disclosure Statement. With regard to the subject property and its related loan, the treatment proposed under Class 1(a) is as follows:

> *BYNM's claim shall be impaired and paid the amount of its Allowed Claim, amortized at 5% interest over 30 years (26 payments per year, or a total of 780 payments), and in accordance with all other terms of its related note and mortgage except as otherwise set forth herein. The Debtor believes that the amount owing on this claim is $640,905.96. The Allowed Claim shall be paid on a true biweekly basis, with payments applied every other week by way of an ACH payment or similar payment as determined by the Debtor in the amount of $1,587.17, and the Creditor shall apply each payment to principal and interest towards the Allowed Claim amount as each payment is received. The Debtor shall pay, outside of escrow, all taxes, insurance, and HOA dues applicable to this Claim when each is due, and shall provide Creditor with proof of payment of such upon the reasonable request of Creditor. Creditor shall not attempt to pay any taxes, insurance, or HOA dues applicable to the Property or to make changes related to the taxes or insurance for the Property unless Debtor has failed to make any such payment and Debtor has failed to cure any default in payment within ten (10) days after written notice of default by Creditor sent to Debtor at the Debtor's mailing address, 9811 W. Charleston Suite 2-351, Las Vegas, Nevada 89117. The Debtor may make additional payments of principal, which shall immediately reduce the principal balance, without penalty. Arrearages, if any, shall be included in the Plan payment. The cure amount shall be $0. In the event that the Court reduces any Allowed Claim owing to this creditor or enters an award for damages against the holder of this claim, any payment due to the holder of this claim shall be reduced by the amount set forth in any such Order.*

Creditor now objects to the Chapter 11 Disclosure Statement filed herein by the Debtor.

## II.

## LEGAL ARGUMENT

**A.   THE DEBTOR'S DISCLOSURE STATEMENT FAILS TO CONTAIN ADEQUATE INFORMATION IN VIOLATION OF SECTION 1125 OF THE BANKRUPTCY CODE.**

### 1.   Legal Standard

Title 11 U.S.C. § 1125(b) provides that acceptance or rejection of a proposed Plan of reorganization may not be solicited unless the holder of a claim or interest to whom the solicitation is made is provided with the proposed plan or summary thereof and "a written disclosure statement

5

approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. §1125(b). To approve a Disclosure Statement, the court must first determine that it contains "adequate information." *In re Unichem Corp.*, 72 B.R. 95, 96 (Bankr. N.D. Ill. 1987). Adequate information means that the Disclosure Statement must clearly and succinctly inform the average creditor "what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991). "Adequate information" is information of a kind, and in sufficient detail, to enable a "hypothetical investor" typical of the holders of claims and interests in a case to make an informed judgment about the Plan. 11 U.S.C. § 1125(a)(1). This includes financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 Plan and information relevant to the risks posed to creditors under the Plan. *See, In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

**2.     The Debtor's Disclosure Statement fails to provide sufficient information regarding the possible claims it may assert against creditors, which prevents Creditor from determining how its claim may be affected and the feasibility of the Plan.**

The Debtor's Disclosure Statement reflects that potential claims against creditors may exist, but provides no information regarding the nature, extent, value, specific creditors which would be affected, or the ability of the Debtor to assert any such causes of action when it was not a party to the Second 2009 Bankruptcy Case confirmation order. While the Debtor has filed ex-parte motions relating to 2004 examinations of creditors, there is no explanation in the Disclosure Statement as to the timeline of that litigation and/or the effect it may have on the individual claims or the reorganization as a whole. Without such information, Creditor is unable to adequately assess the treatment of its claim or the likelihood that any proposed reorganization would be successful, much less comply with the various demands included in the Disclosure Statement and Plan relating to the monthly mortgage statements, for example, when the Plan does not provide for what actual terms are binding.

Moreover, Debtor asserted in its opposition to Creditor's Motion for Relief from the Automatic Stay in the instant case, that it believes the instant claim was modified as part of the Second 2009

Bankruptcy confirmation order, reducing the claim amount to $807,141.58. *See e.g.,* ECF 73, p. 7. The Second 2009 Bankruptcy Plan and related documents, however, confirm that Creditor's claim was unimpaired. The Plan which was confirmed reflects the claim was "shall be unimpaired and paid in full accordance with the terms of its related note and mortgage" and that because Creditor was unimpaired, it was not entitled to vote to accept or reject the Plan. *See,* Second 2009 Bankruptcy, ECF 834, p. 2. The ballot summary filed in the Second 2009 Bankruptcy confirms that Creditor's class was not entitled to vote on the Plan. *See,* Second 2009 Bankruptcy, ECF 880, p. 3. Similarly, Debtors' Memorandum in Support of Confirmation confirms "Class 1 is subdivided into separate classes, comprised of the Debtors secured first trust deed claims, all of which are unimpaired." Second 2009 Bankruptcy, ECF 879, p. 4. It further notes that "The Plan reflects that Classes 1, 3, and 4 are unimpaired and, thus, are conclusively presumed to have accepted the Plan." *Id.* at p. 11. As such, it appears that the language upon which the Debtors rely in the confirmation order was not a bifurcation or modification of Creditor's claim as it is inconsistent with the bankruptcy code, inconsistent with the Plan, would deprive Creditor of its unsecured claim for the remainder of the claim, and would all have required the Debtor to have intentionally taken such fraudulent action surreptitiously for the sole purpose of depriving Creditor of notice and the opportunity to either object or vote and, in doing so, would have likely further constituted intentional misrepresentations made to the Court. As such, without further clarification on the basis and scope of the Debtor's alleged claims against Creditor, Creditor cannot determine what amount it will receive under the Plan, what claims it may have against the Schultes and their prior counsel as it relates to the 2009 Bankruptcy Case, the impact on the feasibility of the Plan, and whether, for example, an §1111(b) election would be in Creditor's best interest. For this reason, the Disclosure Statement must be denied.

    **3.    The Disclosure Statement fails to provide sufficient information regarding how this reorganization is likely to be successful in light of the previous confirmation by the Schultes and bankruptcy filings by the Debtor.**

Debtor's Disclosure Statement fails to provide sufficient information regarding why the current bankruptcy case is necessary when a prior bankruptcy case was voluntarily dismissed a mere four (4)

months prior to the instant case and when there is a confirmed Plan in the Second 2009 Bankruptcy Case. The claims asserted here regarding inaccuracies in the application of payments are more appropriately asserted as part of the Second 2009 Bankruptcy Case, but moreover, given that the Schultes were unwilling and/or unable to comply with the payment requirements in the Second 2009 Bankruptcy Case, there is no explanation as to why or how this bankruptcy case is likely to be any different. The Schultes became delinquent on payments owed pursuant to the Second 2009 Bankruptcy Case and likely because of that delinquency, now attempt to remodify the loans instead of exercising their remedies in the Second 2009 Bankruptcy Case for adjudicating a dispute relating to any contempt of the confirmation order. Without further information as to why this Debtor – a shell holding company for the Schulte's properties – will now be able to maintain ongoing operations, Creditor is unable to assess the relevant risks posed by the Plan and any good or bad faith relating to the same.

**4.     The Disclosure Statement fails to provide sufficient information regarding how a reorganization is possible given that the loans cannot be modified.**

As argued more fully below, Creditor's claim, if not every creditor's claim in the case, cannot be modified without running afoul of 11 U.S.C. §524(e)'s prohibition on modifying the liability of a non-debtor, in this case William and Melani Schulte. In light of the inability of the loans to be modified, Creditor lacks information in order to allow it to be able to ascertain the likelihood that the reorganization will be effective and feasible. As the Disclosure Statement both fails to provide this information, and because the Plan cannot be confirmed in its current state anyway, the Disclosure Statement must be denied.

**5.     The Disclosure Statement fails to provide information regarding the basis of the modification of Creditor's claim.**

Creditor's Proof of Claim reflects and outstanding balance of $1,357,150.48 with a pre-petition arrearage of $802,507.89. See, Claim #11-2. The Claim has not been objected to and the Disclosure Statement indicates the Property is oversecured. Despite that, the Plan proposes to limit the amount of Creditor's claim to $640,905.96 without any explanation or legal basis. 11 U.S.C. § 506(a) provides that "an allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured

8

claim to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). As the Debtor's own Disclosure Statement indicates the value of the Property is above Creditor's claim, there is no basis for the reduction and no information which would allow Creditor to determine the same. Moreover, the Disclosure Statement does not indicate how the $716,244.52 difference would be treated – whether it would be disallowed, treated as an unsecured claim, or otherwise provided for. Again, there is also no information regarding the possibility of reorganization in the event the claim were not allowed to be reduced or otherwise modified. As such, the Disclosure Statement must be denied.

**B.    THE APPROVAL OF THE DISCLOSURE STATEMENT MUST BE DENIED AS THE DEBTOR'S PLAN IS PATENTLY UNCONFIRMABLE.**

**1.    Legal Standard**

The Court may refuse to permit solicitation of a plan acceptances if, based on the proposed disclosure statement, it were to determine that the proposed Plan violates applicable provisions of the Bankruptcy Code on its face. *In re Arnold*, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012); *see also* 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1125.03[4] at 1125–23 (16th ed. 2011) ("most courts will not approve a disclosure statement if the underlying plan is clearly unconfirmable on its face") (citations omitted); *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003); *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999). "If, on the face of the plan, the plan could not be confirmed, then the Court will not subject the estate to the expense of soliciting votes and seeking confirmation." *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986); *see also, In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (disapproval of the adequacy of a disclosure statement may be appropriate "where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible."). Here, even without addressing the specific valuation, maturity date, payment amount, and interest rate terms of the claim proposed, for which Creditor objects to but for which are more appropriately addressed at confirmation, the Plan facially violates the bankruptcy code and cannot be confirmed.

### 2. There is no contractual privity between the parties and Debtor cannot modify Creditor's claim without violating 11 U.S.C. §524(e).

The most substantially fatal flaw with the Debtor's Disclosure Statement and Plan is that the Debtor cannot modify the underlying claim as the Debtor, Schulte Properties, LLC, does not have contractual privity with Creditor, and any modification would impermissibly modify the liability of non-debtors William and Melani Schulte. The Debtor has no contractual relationship with Creditor or liability on the underlying debt. By proposing to modify the instant claim, Debtor is unilaterally forcing Creditor to extend financing to Debtor on terms that the Debtor proposes. Indeed, Debtor proposes to pick and choose which portions of the prior loan agreement and confirmation most benefit it, and discard those which do not. This modification, however, is impermissible under the Bankruptcy Code and the Debtor cannot confirm any plan which proposes to do the same.

Even if there was a good faith basis for a modification, such a modification of William and Melani's respective personal liability, as proposed by the Plan, would violate 11 U.S.C. §524. Section 524(a) provides for the discharge of personal liability on certain debts *of the debtor*. Section 524 does not, however, provide for the release or modification of personal liability for a third party non-debtor. To the contrary, 11 U.S.C. § 524(e) expressly provides that a discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt. 11 U.S.C. § 524(e). The Ninth Circuit has repeatedly recognized this and reiterated for over two decades that the bankruptcy court does not have the authority to release the liability of non-debtors, and a plan which contains such a provision may not be confirmed. *Deocampo v. Potts*, 836 F.3d 1134, 1143 (9th Cir. 2016)(noting that "we have 'repeatedly held without exception' that, in a Chapter 11 proceeding, '§524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors.")(citing *In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995)); *see also, Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 (9th Cir. 2002); *In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir. 1989); *In re Sun Valley Newspapers, Inc.,* 171 B.R. 71, 77 (9th Cir. B.A.P. 1994).

The Debtor's Plan, however, seeks to alter and modify the liability and obligations of non-debtors William Schulte and Melani Schulte – the President and Manager of the Debtor. Here, Debtor

is neither liable for nor a party to any of the Note and Deed of Trust or the Second 2009 Bankruptcy Case's confirmation order. Despite this fact, Debtor's Plan seeks to modify the terms of the Loans on the basis that Debtor received an interest in the Property from the Schultes. The Schulte's however, remain liable for the debts pursuant to the loan documents and Second 2009 Bankruptcy Case's confirmation order. The discharge in their prior case may have limited any liability from being personally asserted against them, but the debts and obligations contained in the Plan and loan documents still exist and are enforceable against the Schulte's on that basis. The Plan proposes to reduce the secured claim of Creditor, disposes of the arrears, extends the loan term, and alters the payment structure of the loan. Clearly, Debtor's proposed treatment of the claim, then, amounts to a drastic modification of the obligations of the Schultes, neither of whom are debtors in the instant case. Assuming Debtor's Plan proposes to completely eliminate the creditor-borrower relationship (which appears to be the case), the Plan clearly violates Section 524(e) as it seeks to discharge the liability of a non-debtor on the Notes and Deeds of Trust. Specifically, if the non-debtor obligor is no longer required to make principal and interest payments on the loan or otherwise comply with the terms of the Notes and Deeds of Trust, the Plan necessarily seeks to alter and otherwise discharge the liability of the non-filing obligors (i.e., the Schultes), who – even with the prior discharge in the previous case – still have obligations under the Plan and loan documents for which performance is required. Based upon the foregoing, Creditor's claim cannot be modified in the Debtor's Plan as such a modification would effectively discharge the liability of the non-filing Schultes in violation of Section 524(e).

Further, if Debtor is permitted to modify Creditor's claim in his Plan, it will result in substantial confusion as to the rights and obligations between the Schultes, Debtor, and Creditor, which, in turn, will result in two conflicting obligations. Indeed, the two parties (i.e., the Schultes and Debtor) would be responsible for making payments on the loan under different terms. The Schultes would be responsible for making principal and interest payments pursuant to the terms of the note and deed of trusts, as modified by the confirmed Plan, and would be subject to the various rights and responsibilities prescribed under those documents. However, Debtor would be obligated to make payments on the loan

pursuant to the provisions of its confirmed Plan. These conflicting obligations pose an administrative burden for all parties.

### 3. The Debtor violates the absolute priority rule.

Pursuant to 11 U.S.C. §1129(b)(2)(B) a plan is fair and equitable with respect to a class of unsecured creditors if they are paid in full or no junior class retains any interest in estate property except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14). The Ninth Circuit has confirmed that the absolute priority rule applies in all Chapter 11 cases. *In re Zachary,* 811 F.3d 1191 (9th Cir. 2016).

In this case, Creditor's security interest in the Property is senior to Schulte Properties, LLC's interest in the Property. The Plan does not provide for Creditor's claim in full, but the entity attempts to retain an interest in the Property as a junior class member in violation of the absolute priority rule. However, as noted above, because the Plan proposes to de facto bifurcate Creditor's claim, the remainder of Creditor's claim would be treated as an unsecured claim to be paid pro rata with the other unsecured creditors and the absolute priority rule would prevent the confirmation of the Plan as a result of its failure to provide for the unsecured creditors in full.

Moreover, the $100,000 proposed contribution made from an insider, Melani Schlute, who is the holder of 100% of the Debtor's membership interest, does not satisfy the new value corollary to the absolute priority rule, most significantly, because it is not "new." *See e.g., In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 654 (9th Cir. 1997). The source of funds is from rental income generated by the properties involved in the instant bankruptcy proceeding – funds that should have been paid to the creditors as part of the previously confirmed Chapter 11 Plan but for the defaults by the Schultes. The Debtor cannot now suggest that those funds are new value simply because they transferred the properties into a holding company on the verge of filing the bankruptcy. As such, Debtor has failed to meet its burden in establishing the new value exception to the absolute priority rule, and approval of the Disclosure Statement must be denied.

As such, the Plan violates the absolute priority rule and cannot be confirmed.

### III.

### CONCLUSION

Based on the foregoing, The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-27, respectfully requests that the Court sustain this Objection to Debtor's Amended Disclosure Statement.

WHEREFORE, Secured Creditor prays as follows:

1. That the Court deny approval of the proposed Disclosure Statement;
2. For reasonable attorney's fees and costs incurred herein;
3. For such other and further relief as this Court deems just and proper.

DATED this 15th day of May, 2019.

**TIFFANY & BOSCO, P.A.**

By /s/ Ace C. Van Patten, Esq.
ACE C. VAN PATTEN, ESQ.
Attorney for Secured Creditor
10100 W. Charleston Boulevard
Suite 220
Las Vegas, NV 89135

13

**TIFFANY & BOSCO, P.A.**
Jason C. Kolbe, Esq.
Nevada Bar No. 11624
Ace C. Van Patten, Esq.
Nevada Bar No. 11731
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone:  702 258-8200
Fax:  702 258-8787
nvbk@tblaw.com
TB File No. 09-74063

Attorney for *Secured Creditor* The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank, N.A., successor in interest to Bank One, National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-27

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE: | BK Case No. 18-12734-mkn |
| SCHULTE PROPERTIES LLC | Chapter 11 |
| | **CERTIFICATE OF MAILING** |
| Debtor. | |

**CERTIFICATE OF MAILING**

1. On May 15, 2019, I served the following documents:

   **OBJECTION TO AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

2. I caused to be served the above-named document by the following means to the persons as listed below:

   X   **a. ECF System**

   Matthew L. Johnson
   annabelle@mjohnsonlaw.com
   Attorney for Debtor

   Karen L. Kellett
   akbecf@gmail.com
   Attorney for Debtor

14

Jason Blumberg
jason.blumberg@usdoj.gov
U.S. Trustee

Edward M. McDonald
Edward.m.mcdonald@usdoj.gov
U.S. Trustee

X   **b. United States mail, postage fully prepaid:**

Schulte Properties LLC
9811 W. Charleston Blvd., Ste 2-351
Las Vegas, NV  89117
Debtor

Schulte Properties LLC
Attn:  Melani Schulte
9811 W. Charleston Blvd., Ste 2-351
Las Vegas, NV  89117
Debtor

Matthew L. Johnson
Johnson & Gubler, P.C.
8831 W. Sahara Avenue
Las Vegas, NV  89117
Attorney for Debtor

Karen L. Kellett
Caitlyn N. Wells
11300 N. Central Expy., Ste. 301
Dallas, TX  75243
Attorney for Debtor

Jason Blumberg
Office of the U.S. Trustee
501 I Street, Suite 7-500
Sacramento, CA  95814
Attorney for U.S. Trustee

Edward M. McDonald
Office of the U.S. Trustee
300 Las Vegas Blvd., So., Ste. 4300
Las Vegas, NV  89101
Attorney for U.S. Trustee

**I declare under penalty of perjury that the foregoing is true and correct.**

DATED this 15th day of May, 2019.

By:   /s/ Michelle Benson