# EXHIBIT "A"

# NOTE

SCHULTE
LOAN NUMBER:

JUNE 11, 2001            LAS VEGAS            NEVADA
[Date]                   [City]              [State]

4521 W. LA MADRE WAY NORTH LAS VEGAS, NV 89031
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  116,800.00
(this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    AMERA
MORTGAGE CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  7.000    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1ST  day of each month beginning on
AUGUST 2001    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JULY 1, 2016
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    3515 W. CHARLESTON BLVD., LAS VEGAS
NV 89102
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   1,049.83

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01
DOCUCPA1                              (page 1 of 3 pages)
DOTICPA1.VTX  11/11/2000

LOAN NUMBER:

then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200 1/01
DOCUCFA2
DOCUCFA3.VTX  11/24/2000                          (page 2 of 3 pages)

LOAN NUMBER:                    1 4 2001

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
MELANI SCHULTE                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 Borrower

[Sign Original Only]

PAY TO THE ORDER OF RBMG, INC.
WITHOUT RECOURSE
7909 PARKLANE ROAD
COLUMBIA, SC 29223

Pay To The Order Of

BY AMERA MORTGAGE CORPORATION
3515 W. CHARLESTON BLVD.

LAS VEGAS, NV 89102

THIS 11th DAY OF June 2001

SIGNED _____
GARY R. HORNS
VICE PRESIDENT
AMERA MORTGAGE CORPORATION

Without Recourse

Cindi Callaham
Cindi Callaham, Senior Vice President
RBMG, Inc.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01
DOCUCFA1                                   (page 3 of 3 pages)
DOCUCFA1.VTX  01/03/2001

# EXHIBIT "B"

*A P N*

After Recording Return To:

**AMERA MORTGAGE CORPORATION**

3515 W. CHARLESTON BLVD.
LAS VEGAS, NV 89102

200106 11
.01724



[Space Above This Line For Recording Data]

**DEED OF TRUST**

SCHULTE
LOAN NUMBER
PARCEL NUM:

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) **"Security Instrument"** means this document, which is dated   JUNE 11, 2001
together with all Riders to this document.
(B) **"Borrower"** is      MELANI SCHULTE, A MARRIED WOMAN AS HER SOLE AND
SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is     AMERA MORTGAGE CORPORATION

Lender is a     CORPORATION                                 organized and existing under the
laws of     NEVADA                        Lender's address is     3515 W.
CHARLESTON BLVD. LAS VEGAS, NV 89102
Lender is the beneficiary under this Security Instrument.
(D) **"Trustee"** is    FIDELITY NATIONAL TITLE

(E) **"Note"** means the promissory note signed by Borrower and dated    JUNE 11, 2001
The Note states that Borrower owes Lender
ONE HUNDRED SIXTEEN THOUSAND EIGHT HUNDRED AND 00/100
Dollars (U.S. $  116,800.00             ) plus interest. Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than    JULY 1, 2016
(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

NEVADA--Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3029 1/01
DOCUKN1
DOCUKN1.VTX  11/16/2000                       *(Page 1 of 12 pages)*

20010611
01724

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☒ 1-4 Family Rider     ☐ Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the    **COUNTY**
(Type of Recording Jurisdiction)

of    **CLARK**
(Name of Recording Jurisdiction)
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**
**ASSESSORS PARCEL NO.** ▊▊▊▊▊▊▊▊▊▊

which currently has the address of    **4521 W. LA MADRE WAY**
                                                   [Street]
**NORTH LAS VEGAS**     , Nevada    **89031**      ("Property Address").
     [City]                                  [Zip Code]

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029 1/01
DOCUINV2
DOCUINV2.VTX  11/18/2000             *(Page 2 of 12 pages)*

20010611
01724

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.
3. **Funds for Escrow Items.** Borrower
Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3029 1/01
DOCUINV3
DOCUINV3.VTX  11/19/2000        *(Page 3 of 12 pages)*



Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or

In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make be a covenant and agreement contained in

this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3029 1/01
DOCU1NV4
DOCU1NV4.VTX   11/16/2000                                *(Page 4 of 12 pages)*

that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3029 1/01
DOCUINV5                                        *(Page 5 of 12 pages)*
DOCU2NV5.VTX  11/10/2000



are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        **Form 3029 1/01**
DOCUINV4
DOCUINV6.VTX  11/16/2000        *(Page 6 of 12 pages)*

the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3029 1/01
DOCUINV7
DOCUINV7.VTX   11/18/2000                                     (Page 7 of 12 pages)

20010611
.01724

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any

200106 11
.01724

other fees, the absence of express authority in

be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b)

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029 1/01
DOCUINVS
DOCUINVS.VTX  11/18/2000          (Page 9 of 12 pages)



such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029 1/01
DOCUSVY10
DOCUMNA.VTX   11/18/2000         (Page 10 of 12 pages)

20010611
01724

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S.

$



200106 11
.01724

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
                    Borrower

_____ (Seal)
                    Borrower

_____ (Seal)         _____ (Seal)
**MELANI  SCHULTE**         Borrower                    Borrower

_____ (Seal)         _____ (Seal)
                    Borrower                    Borrower

**[Space Below This Line For Acknowledgment]**

STATE OF Nevada
COUNTY OF Clark

This instrument was acknowledged before me on June  11, 2001
by Melani Schulte

_____
NOTARY PUBLIC

Title (and Rank)_____

My Commission expires:_____

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
P. WALTER
Appt. No. 92-1387-1
My Appt. Expires June 21, 2004

RECORDER'S MEMO
POSSIBLE POOR RECORD DUE TO
QUALITY OF ORIGINAL DOCUMENT

NEVADA--Single Family--**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT
DOCUINV12
DOCUINVC.VTX  11/18/2000
                    *(Page 12 of 12 pages)*

Form 3029 1/01

2001 06 11
.01724

## EXHIBIT "ONE"

Lot One Hundred Seventeen (117) in Block Five (5) of Summer Breeze Phase 1 Unit 3, as shown by map thereof on file in Book 53 of Plats, Page 37 in the Office of the County Recorder of Clark County, Nevada.

Assessor's Parcel No: ███████████████

2

200106 11
01724

## 1-4 FAMILY RIDER
(Assignment of Rents)

SCHULTE
LOAN NO. :

THIS 1-4 FAMILY RIDER is made this **11TH** day of **JUNE, 2001**,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's
Note to **AMERA MORTGAGE CORPORATION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**4521 W. LA MADRE WAY NORTH LAS VEGAS, NV 89031**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:
   **A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In
addition to the Property described in Security Instrument, the following items now or hereafter attached
to the Property to the extent they are fixtures are added to the Property description, and shall also
constitute the Property covered by the Security Instrument: building materials, appliances and goods of
every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection
with the Property, including, but not limited to, those for the purposes of supplying or distributing
heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus,
security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges,
stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor
coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with the Property
described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold)
are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3170 1/01
DOCUMLL
DOCU84A1.VTX  11/20/2000
*(page 1 of 3 pages)*

20010611
01724

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3170 1/01
DOCUBA2                                                      (page 2 of 3 pages)
DOCUMA3 .VTX   11/29/1960

20010611
.01724

remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

    **I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
MELANI SCHULTE                     -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 1/01
DOCU8443
DOCU8443.VTX  11/28/2000                    (page 3 of 3 pages)

CLARK COUNTY, NEVADA
JUDITH A. VANDEVER, RECORDER
RECORDED AT REQUEST OF:
FIDELITY NATIONAL TITLE

06-11-2001 14:37   DBI      16
          OFFICIAL RECORDS
BOOK: 20010611   INST:   01724

FEE:     22.00   RPTT:           .00

# EXHIBIT "C"

Inst #: 20190722-0001267
Fees: $40.00
07/22/2019 08:07:57 AM
Receipt #: 3773889
Requestor:
MERIDIAN ASSET SERVICES - A
Recorded By: MAYSM    Pgs: 2

**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**
Src: ERECORD
Ofc: ERECORD

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

APN/PIN ███████

Loan No: ███████

_____ Space above for Recorder's use _____

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE LODGE SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **6/11/2001**
Original Loan Amount: **$116,800.00**
Executed by (Borrower(s)): **MELANI SCHULTE**
Original Trustee: **FIDELITY NATIONAL TITLE**
Original Beneficiary: **AMERA MORTGAGE CORPORATION**
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: **01724** in the Recording District of **CLARK**, NV, Recorded on 6/11/2001. **THIS SECURITY INSTRUMENT WAS RE-RECORDED ON 03/03/2005 AS INSTR# 20050303-0002072, IN THE CLERK'S OFFICE OF CLARK, NV.**

Property more commonly described as: **4521 W. LA MADRE WAY, NORTH LAS VEGAS, NEVADA 89031**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **7/3/2019**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MATTHEW KRUEGER**
Title: **VICE PRESIDENT**

Witness Name: **JASON MURCH**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          **FLORIDA**
County of       **PINELLAS**

On **7/3/2019**, before me, **RYAN M. MAUCK**, a Notary Public, personally appeared **MATTHEW KRUEGER, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify MATTHEW KRUEGER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **RYAN M. MAUCK**
My commission expires: **1/16/2022**

RYAN M. MAUCK
Commission # GG 175956
Expires January 16, 2022
Bonded Thru Budget Notary Services

Inst #: 20190116-0000900
Fees: $40.00
01/16/2019 10:25:10 AM
Receipt #: 3609975
Requestor:
MERIDIAN ASSET SERVICES - A
Recorded By: WIHD   Pgs: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

Recording Requested By:

Prepared By: Audrey B Trumble
855-369-2410
When recorded mail to:

Case Nbr:
Ref Number:
Tax ID:
Property Address:
4521 W LA MADRE WAY
NORTH LAS VEGAS, NV 89031

NV0-ADT ██████ 11/26/2018 BALBECWLS

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 2001 Ross Avenue, Suite 2800, Dallas, TX 75201 does hereby grant, sell, assign, transfer and convey unto U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST whose address is 7114 E Stetson Dr., Suite 250, Scottsdale, AZ 85251 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Beneficiary:          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
                      FOR AMERA MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS

Made By:              MELANI SCHULTE, A MARRIED WOMAN AS HER SOLE AND SEPARATE
                      PROPERTY

Trustee:              FIDELITY NATIONAL TITLE

Date of Deed of Trust: 6/11/2001       Original Loan Amount: $116,800.00

Recorded in Clark County, NV on: 6/11/2001, book N/A, page N/A and instrument number 2001061101724



I the undersigned hereby affirm that this document submitted for recording does not contain the social security number of any person or persons.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on **DEC 1 8 2018**

MTGLQ INVESTORS, L.P.

By: _____

Betsy Hanson, Vice President

State of TX, County of Dallas

On **DEC 1 8 2018**, before me, ____Natalie Flowers____, a Notary Public, personally appeared Betsy Hanson, Vice President of MTGLQ INVESTORS, L.P. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: ____Natalie Flowers____

My Commission Expires : **NOV 2 9 2022**

Natalie Flowers
My Commission Expires
11/29/2022
ID No. 124227602

Inst #: **20170706-0001432**
Fees: $18.00
N/C Fee: $0.00
07/06/2017 12:24:19 PM
Receipt #: 3133135
Requestor:
NATIONWIDE TITLE CLEARING I
Recorded By: SCHIABLE   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

The undersigned does hereby affirm that this document submitted for recording does not contain personal information about any person.

Parcel#: ▉▉▉▉▉▉▉

When Recorded Mail To:
**Fannie Mae**
**C/O Nationwide Title Clearing, Inc.**
**2100 Alt. 19 North**
**Palm Harbor, FL 34683**

NTC Order # ▉▉▉▉▉▉
Meridian Loan # ▉▉▉▉▉▉▉
Fannie Mae Loan # ▉▉▉▉▉▉

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to **MTGLQ INVESTORS, L.P., WHOSE ADDRESS IS 6011 CONNECTION DR., IRVING, TX 75039, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE),.**

Said Deed of Trust is dated , made by **MELANI SCHULTE** and recorded as **Instrument # 20010611-0001724**, in the Recorder's office of **CLARK** County, **Nevada**.

**Dated this 06th day of July in the year 2017**
**FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact**

By: _Susan Schotsch_ _____
**SUSAN SCHOTSCH**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

FNMA ▉▉▉▉▉▉ 2017-NPL1-PL2-4-SALE    DOCR T061707-10:01:34 [C-2]  EFRMNV1

Parcel#: 
NTC Order ███████████
Meridian Loan # ███████
Fannie Mae Loan # ████████████

**STATE OF FLORIDA**
**COUNTY OF PINELLAS**

The foregoing instrument was acknowledged before me on this 06th day of July in the year 2017, by Susan Schotsch as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**EWA IWONA KIRSANOV**
**COMM EXPIRES: 10/13/2020**

EWA IWONA KIRSANOV
Notary Public - State of Florida
Commission # GG 038558
My Comm. Expires Oct 13, 2020
Bonded through National Notary Assn.

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
FNMA ████████017-NPL1-PL2-4-SALE    DOCR T061707-10:01:34 [C-2]  EFRMNV1

Inst #: **201402130000266**
Fees: $18.00
N/C Fee: $0.00
02/13/2014 08:02:57 AM
Receipt #: 1931658
Requestor:
NATIONWIDE TITLE CLEARING
Recorded By: RYUD   Pgs: 2
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

The undersigned does hereby affirm that this document submitted for recording does not contain personal information about any person.

Parcel# ███████████

**When Recorded Mail To:**
**CitiMortgage, Inc.**
**C/O Nationwide Title Clearing, Inc.**
**2100 Alt. 19 North**
**Palm Harbor, FL 34683**

**Citi Loan No** ███████████
**Seterus Loan No** ███████████
**Fannie Loan No** ███████████

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CITIMORTGAGE, INC.,WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO, 63368, (ASSIGNOR)**, by these presents does convey, grant, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 100, DALLAS, TX 75254, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust is  dated , made by **MELANI SCHULTE** and recorded as Instrument # 01724, and/or Book 20010611, Page , in the Recorder's office of CLARK COUNTY, Nevada.

**Dated this 12th day of February in the year 2014**
**CITIMORTGAGE, INC.**

By: *Deborah Turner-Bey*

**DEBORAH TURNER-BEY**
**VICE PRESIDENT**

All Authorized Signatories whose signatures appear above have reviewed this document and supporting documentation prior to signing.

CMOAV ████████ - MSR-2014-02-01    DOCR T1614015818   [C-2]  EFRMNV1

**Parcel#:** 
**Citi Loan No**
**Seterus Loan No**
**Fannie Loan No**

**STATE OF FLORIDA**
**COUNTY OF PINELLAS**
The foregoing instrument was acknowledged before me on this 12th day of February in the year 2014, by Deborah Turner-Bey as VICE PRESIDENT of CITIMORTGAGE, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**NICOLE BALDWIN - NOTARY PUBLIC**
**COMM EXPIRES:  08/05/2016**

> Nicole Baldwin
> Notary Public State of Florida
> My Commission # EE 222285
> Expires August 5, 2016

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
CMOAV     -- MSR-2014-02-01    DOCR    [C-2]  EFRMNV1

20090728-0004805
Fee: $15.00      RPTT: $0.00
N/C Fee: $25.00
07/28/2009        14:40:02
T20090259411
Requestor:
 FIRST AMERICAN NATIONAL DEFA
Debbie Conway         DBX
Clark County Recorder      Pgs: 2

Requested and Prepared by:
CR Title Services Inc.

When Recorded Mail To:
**CR Title Services Inc.**
**1000 TECHNOLOGY DRIVE MS 314**
**O'FALLON, MO 63368**

APN: █████████

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: ████████         Order No █████████

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

CITIMORTGAGE INC.

all beneficial interest under that certain Deed of Trust dated: **06-11-2001** executed by **MELANI SCHULTE, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor(s), to **FIDELITY NATIONAL TITLE**, as Trustee, and recorded as Instrument No. **01724**, on **06-11-2001**, in Book **20010611**, Page   of Official Records, in the office of the County Recorder of **CLARK** County, **NEVADA** together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Date: July 28, 2009

Investor No.
TS No: ████████████ - APN : NV

Date: 7-28-09

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

**TAMRA WILLIAMS, ASSISTANT VICE PRESIDENT**

STATE OF MISSOURI
COUNTY OF SAINT CHARLES

On 7-28-09 before me, Shannon Munro, Personally appeared, **TAMRA WILLIAMS, ASSISTANT VICE PRESIDENT** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Missouri that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature of Officer

Shannon Munro

SHANNON MUNRO
Notary Public - Notary Seal
State of Missouri
St. Charles County
Commission #08639373
My Commission Expires 09/18/2012

# EXHIBIT "D"

1

2

3

4

**Entered on Docket**
**March 18, 2011**

*Bruce A. Markell*

5
_____
**Hon. Bruce A. Markell**
**United States Bankruptcy Judge**

6

7

8    PITE DUNCAN, LLP
     ACE VAN PATTEN (NV Bar #11731)
9    EDDIE R. JIMENEZ (NV Bar #10376)
     701 Bridger Avenue, Suite 700
10   Las Vegas, Nevada 89101
     Telephone: (858) 750-7600
11   Facsimile: (619) 590-1385
     E-mail: ecfnvb@piteduncan.com
12
     MAILING ADDRESS:
13   4375 Jutland Drive, Suite 200
     P.O. Box 17933
14   San Diego, California 92177-0933

15   Attorneys for CITIMORTGAGE, INC.

16

17

18

19                          UNITED STATES COURT

20                          DISTRICT OF NEVADA

21   In re                              Bankruptcy Case No. BK-S-09-29123-BAM
                                        Chapter 13
22   MELANI SCHULTE  AND WILLIAM R.
     SCHULTE,                           ORDER ON STIPULATED ORDER
23                                      REGARDING TREATMENT OF
              Debtors.                  CREDITOR'S CLAIM PURSUANT TO
24                                      CHAPTER 11 PLAN

25   /././

26   /././

27   /././

28

**Exhibit A**

1    The parties having agreed to the terms set forth in the Stipulated Order Regarding

2  Treatment of Creditor's Claim Pursuant to Chapter 11 Plan are bound by the terms of their

3  stipulation, which shall be the Order of this court.

4  <u>ALTERNATIVE METHOD re: RULE 9021:</u>

5  In accordance with LR 9021, counsel submitting this document certifies that the order accurately

6  reflects the court's ruling and that (check one):

7  ☐    The court has waived the requirement set forth in LR 9021(b)(1).

8
9  ☐    No party appeared at the hearing or filed an objection to the motion.

10  ☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing,

11  and any unrepresented parties who appeared at the hearing, and each has approved or

12  disapproved the order, or failed to respond, as indicated below [list each party and whether the

13  party has approved, disapproved, or failed to respond to the document]:

14  ☒    Failed to respond. - Debtors' Attorney

15  ☐    I certify that this is a case under Chapter 7 or 11, that I have served a copy of this order

16  with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of

17  the order.

18                                    ###

19  By: <u>Ace Van Patten</u>
20      4375 Jutland Drive, Suite 200
        P.O. Box 17933
21      San Diego, CA 92177-0933
        (702) 413-9692
22      NV Bar #11731
        Attorney for CITIMORTGAGE, INC.
23

24

25

26

27

28

**Exhibit A**

1   EDDIE R. JIMENEZ (NV Bar #10376)
    ACE VAN PATTEN (NV Bar #11731)
2   PITE DUNCAN, LLP
    4375 Jutland Drive, Suite 200
3   P.O. Box 17933
    San Diego, CA 92177-0933
4   Telephone: (858) 750-7600
    Facsimile: (619) 590-1385
5

6   Attorneys for CITIMORTGAGE, INC.

7

8

9                    UNITED STATES BANKRUPTCY COURT

10           DISTRICT OF NEVADA – LAS VEGAS DIVISION

11  In re                                    09-29123-bam

12  MELANI SCHULTE AND WILLIAM R.            Chapter 11
    SCHULTE,
13
            Debtor(s).
14                                           **STIPULATION RE: TREATMENT OF
                                             CITIMORTGAGE, INC.'S CLAIM
15                                           UNDER DEBTORS' CHAPTER 11
                                             PLAN OF REORGANIZATION**
16

17

18

19

20         This Stipulation is entered into by and between Secured Creditor, CitiMortgage, Inc.

21  ("Creditor"), by and through its attorneys of record, and Melani Schulte and William R. Schulte,

22  the Debtors and Debtors-In-Possession herein (the "Debtors"), by and their attorneys of record.

23         The property which is the subject of this matter is commonly known as 4521 W. La

24  Madre Way, North Las Vegas, Nevada 89031 (hereinafter the "Subject Property").

25         On or about June 11, 2001, Melani Schulte ("Borrower"), for valuable consideration,

26  made, executed and delivered to Amera Mortgage Corporation ("Lender") a Note in the principal

27  sum of $116,800.00 (the "Note").

28  /./.

                                          - 1 -

                                                              **Exhibit A**

On or about June 11, 2001, Borrower made, executed and delivered to Lender a Deed of Trust (the "Deed of Trust") granting Lender a security interest in the Subject Property. The Deed of Trust was recorded on June 11, 2001, in the Official Records of Clark County, State of Nevada.

Subsequently, Lender's beneficial interest in the Note and Deed of Trust was sold, assigned and transferred to Creditor.

On or about October 11, 2009, Debtors filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code and were assigned Bankruptcy Case No. 09-29123-bam.

**THE PARTIES STIPULATE AS FOLLOWS:**

1.     Creditor's claim shall remain fully secured over a term of thirty (30) years at a rate of 5.25% interest per annum.

2.     Debtors shall commence monthly payments as of March 1, 2011 in the amount of $410.31.

3.     In addition to Principal and Interest Payments, Debtors shall tender to Creditor regular monthly escrow payments for advances made by Creditor for the maintenance of real property taxes and real property hazard insurances for the Subject Property.

4.     Except as otherwise expressly provided herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of Creditor's Secured Claim.

5.     In the event of any future default on any of the above-described provisions, inclusive of this Stipulation, Creditor shall provide written notice via certified mail to Melani Schulte and William R. Schulte, 7201 West Lake Mead Blvd, #500, Las Vegas, Nevada 89128, and to the Debtors' attorney of record, provided the Debtors' bankruptcy remains active, Bryan A. Lindsey, 701 E. Bridger Ave., Ste 120, Las Vegas, Nevada 89101, indicating the nature of default.  If Debtors fail to cure the default with certified funds after passage of thirty (30) calendar days from the date said written notice is placed in the mail, then the Automatic Stay shall terminate and Creditor may proceed to foreclose its security interest in the Subject Property under the terms of the Note and Deed of Trust and pursuant to applicable state law and thereafter /././

- 2 -

**Exhibit A**

1  commence any action necessary to obtain complete possession of the Subject Property without
2  further notice, order, or proceeding of this Court.

3      6.    The acceptance by Creditor of a late or partial payment shall not act as a waiver of
4  Creditor's right to proceed hereunder.

5      7.    In the event that Creditor is granted relief from the automatic stay, the parties
6  hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

7      8.    In the event the Debtors default under this Stipulation and Creditor forwards a 30-
8  day letter to Debtors, they shall be required to tender $100.00 for each default letter submitted in
9  order to cure the default.

10     9.    At the request of the Creditor, the Debtors shall execute such documents and
11 instruments as are necessary to reflect the Debtors as the borrowers of the Secured Claim, and to
12 modify the terms of the obligation to conform with the provisions of the this Stipulation.

13     10.   The terms of this Stipulation may not be modified, altered, or changed by the
14 Plan, any confirmation order thereon, any subsequently filed Amended Chapter 11 Plan of
15 Reorganization and confirmation order thereon without the express written consent of the
16 Creditor. The terms of this Stipulation shall be incorporated into the Plan and/or any
17 subsequently filed Amended Chapter 11 Plan of Reorganization.

18     11.   In the event the Debtors' case is dismissed or converted to any other chapter
19 under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full
20 amount due under the Note and the automatic stay shall be terminated without further notice,
21 order, or proceeding of the court.

22     12.   Each party shall bear their own attorneys' fees and costs in connection with the
23 preparation and filing of this Stipulation.

24 /././

25 /././

26 /././

27 /././

28 /././

- 3 -

**Exhibit A**

13.   In exchange for the foregoing, Creditor hereby accepts the Debtors' Chapter 11 Plan of Reorganization with respect to the Subject Property.

Dated: January 31, 2011                    /s/ Bryan A. Lindsey
                                           BRYAN A. LINDSEY
                                           Attorney for the Debtors

Dated: January 31, 2011                    PITE DUNCAN, LLP


                                           /s/ Ace Van Patten
                                           ACE VAN PATTEN
                                           Attorneys for Creditor

- 4 -

**Exhibit A**

# EXHIBIT "E"

1   ACE VAN PATTEN (SBN 11731)
    avanpatten@piteduncan.com
2   **PITE DUNCAN, LLP**
    520 South 4th St., Suite 360
3   Las Vegas, Nevada 89101
    Telephone: (858) 750-7600
4   Facsimile:  (619) 590-1385

5   **MAILING ADDRESS**:
    4375 Jutland Drive, Suite 200
6   P.O. Box 17933
    San Diego, California 92177-0933
7
    Attorneys for *Movant*
8   Federal National Mortgage Association

9          **UNITED STATES BANKRUPTCY COURT**

10        **DISTRICT OF NEVADA - LAS VEGAS DIVISION**

11  | In re | Case No. 09-29123-btb |

12  MELANI SCHULTE AND          Chapter 11
13  WILLIAM R. SCHULTE,

14          Debtors.            **NOTICE OF TERMINATION OF
                                AUTOMATIC STAY**
15

16       **TO ALL INTERESTED PARTIES**:

17          **NOTICE IS HEREBY GIVEN** that, pursuant to the terms of the Order on Stipulated Order

18  Regarding Treatment of Creditor's Claim Pursuant to Chapter 11 Plan ("Order") entered by the Court

19  on March 18, 2011, the automatic stay imposed by virtue of 11 U.S.C. § 362 is terminated effective

20  January 3, 2015, to allow Federal National Mortgage Association ("Seterus"), to enforce its state law

21  remedies against the security described in that certain Deed of Trust recorded on June 11, 2001, in

22  the Office of the County Recorder of Clark County, State of Nevada, with respect to the real property

23  located at 4521 W. La Madre Way, North Las Vegas, Nevada 89031 (the "Property") which is legally

24  described as follows:

25          LOT ONE HUNDRED SEVENTEEN (117) IN BLOCK FIVE (5) OF
            SUMMER BREEZE PHASE 1 UNIT 3, AS SHOWN BY MAP
26          THEREOF ON FILE IN BOOK 53 OF PLATS, PAGE 37 IN THE
            OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY.
27          NEVADA

28

Pursuant to the terms of the Order, the Debtor is required to tender regular monthly principal and interest payments in the amount of $410.31 commencing March 1, 2011. Additionally, the Debtor is required to tender monthly escrow payments for real property tax and hazard insurance advances made by Seterus related to the Property. In the event the Debtors default under the terms of the Order, the Order requires Seterus to provide a written notice of said default and afford the Debtor an opportunity to cure said default. In the event the Debtor fails to cure said default, the automatic stay of 11 U.S.C. § 362 shall terminate without further notice, order, or proceeding of this court. A copy of the Order is attached hereto as **Exhibit A** and incorporated herein by reference.

On December 4, 2014, a written notice of default in the amount of $15,736.99 (the "Default Amount") was mailed to Debtor and Debtor's counsel (the "Default Notice") and provided the Debtor thirty (30) days to cure the Default Amount. The Debtor failed to cure the Default Amount within the time period prescribed in the Default Notice. A true and correct copy of the Default Notice is attached hereto as **Exhibit B** and is incorporated herein by this reference.

Based on the Debtor's failure to cure the Default Amount, the automatic stay is terminated effective January 3, 2015 and Movant may proceed with post-petition foreclosure remedies in accordance with applicable law.

Respectfully submitted,

**PITE DUNCAN, LLP**

Dated: February 5, 2015

/s/ *Ace Van Patten*
ACE VAN PATTEN (SBN 11731)
Attorney for *Movant* FEDERAL
NATIONAL MORTGAGE ASSOCIATION

- 2 -