ARIEL E. STERN, ESQ.
Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ.
Nevada Bar No. 12125
NICHOLAS E. BELAY, ESQ.
Nevada Bar No. 15175
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: ariel.stern@akerman.com
Email: natalie.winslow@akerman.com
Email: nicholas.belay@akerman.com

*Attorneys for NewRez LLC dba Shellpoint Mortgage Servicing*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In Re:<br><br>Schulte Properties, LLC,<br><br>Debtor. | Case No.: 18-12734-mkn<br><br>Chapter 11<br><br>**RESPONSE TO DEBTOR'S OBJECTION TO CLAIM #16 (SHELLPOINT MORTGAGE SERVICING/1392 ECHO FALLS)** |

NewRez LLC dba Shellpoint Mortgage Servicing responds to Schulte Properties, LLC's objection to claim #16 on behalf of The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificate Holders of the CWALT, Inc. Alternative Loan Trust 2004-28CB, Mortgage Pass-Through Certificates, Series 2004-28CB.

**I.   INTRODUCTION.**

Schulte Properties and its principal continue to muddy the bankruptcy record through misleading arguments and incorrect factual assertions. The latest attempt involves Schulte Properties' request to reduce Shellpoint's properly supported claim by roughly $90,000 based on perceived inaccuracies in non-operative accounting records and a misreading of Shellpoint's proof of claim. What Schulte Properties neglects to inform the court is that the outstanding principal balance,

61851466;1

accrued interest, escrow payments, and fees are a direct result of Ms. Schulte's own failure to make *more than five years' worth* of payments under the confirmed plan in 09-29123-BAM and associated loan documents. This critical omission renders Schulte Properties' objection entirely meritless. Shellpoint has conducted multiple internal reviews and audits of its accounting records to ensure full compliance with the confirmed plan and accuracy of the balance owed. These records were included in support of Shellpoint's claim and constitute *prima facie* evidence of the claim's validity. Because Schulte Properties has not (and cannot) provide competent evidence to rebut Shellpoint's claim, its objection must be denied.

## II.    BACKGROUND.

### A.    The Loan

1. In October 2004, Melanie Schulte executed a promissory note in the principal amount of $167,000.00 (**note**). *See* **Exhibit 1**, Shellpoint Declaration ¶ 5. The note was specially indorsed to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-28CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-28CB (**BoNYM**). *Id.*

2. The note was secured by a deed of trust in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Countrywide Home Loans, Inc, and encumbering the real property located at 1392 Echo Falls Ave., Las Vegas, NV 89123 (**property**). **Exhibit 2**. The note and deed of trust collectively comprise the loan.

3. The deed of trust was assigned to BoNYM on June 22, 2016. **Exhibit 3**. BoNYM remains the beneficiary of the deed of trust. *Id.*; Ex. 1 at ¶ 6.

4. Pursuant to the terms of the deed of trust, the borrower is required to maintain real property taxes and hazard insurance for the property. Ex. 3 at ¶¶ 1-5, 9. The lender is entitled to pay these taxes/insurance obligations on the borrower's behalf and include these amounts in an escrow impound. *Id.* The deed of trust sets forth the manner in which payments are applied to the loan, including the priority of payments in the event of a delinquency. *Id.* at ¶¶ 1, 2.

5. In August 2015, Shellpoint acquired the servicing rights to the subject loan. Ex. 1 at ¶ 8. Shellpoint remains the authorized servicer on behalf of BoNYM. *Id.*

61851466;1

6. On May 30, 2017, Melani Schulte transferred her interest in the property to Schulte Properties pursuant to a Grant, Bargain, Sale Deed recorded with the Clark County Recorder's office. **Exhibit 4**.

### B. The First Bankruptcy

7. Melani Schulte filed for chapter 11 bankruptcy relief on October 11, 2009 as Case No. 09-29123-mkn. *See* First Bankruptcy, ECF No. 1.

8. Ms. Schulte and the prior loan servicer entered a stipulation for adequate protection on September 22, 2010. **Exhibit 5**. The stipulation required Ms. Schulte to make monthly adequate protection payments in the amount of $708.60 commencing on October 1, 2010. The stipulation further required Ms. Schulte to timely perform all obligations under the loan documents "as they come due, including but not limited to the payment of real estate taxes, maintaining insurance coverage, and any and all senior liens." *Id.* The stipulation made clear that Ms. Schulte's obligations remained consistent with "the terms of the Note and Deed of Trust." *Id.* The court entered an order approving the stipulation for adequate protection on September 24, 2010. **Exhibit 6**.

9. On March 8, 2011, the court entered the confirmation order, modifying the subject loan. **Exhibit 7**. The terms of the confirmed plan listed BoNYM's claim in Class 2(m) and provided for a secured claim of $132,000.00 amortized over thirty (30) years at 5.00% interest per annum with principal and interest payments of $708.60 per month. *Id.* at 9, 10. The plan did not address payment of taxes or insurance, or else include any mandatory default provisions. *Id.* Instead, just like the order on adequate protection, treatment under the confirmation plan was made "in accordance with all other terms of [BoNYM's] related note and mortgage." *Id.*

10. The confirmed plan had an effective date of March 23, 2011, or the "eleventh business day following the date of entry of the confirmation order" or March 23, 2011. *Id.* at § 6.02. As a result, the first payments under the modified claim were to commence April 1, 2011 and continue each month until March 1, 2041.

11. On December 15, 2015, Ms. Schulte obtained a Chapter 11 discharge. *See* First Bankruptcy, ECF No. 1181-2.

///

3

61851466;1

1    12.    Ms. Schulte transferred her interest in the property to Schulte Properties on May 30, 2017. Ex. 4.

### C.    The Second Bankruptcy

13.    Schulte Properties filed a second Chapter 11 bankruptcy case on May 31, 2017 as Case No. 17-12883—just five (5) days after Schulte Properties was registered with the Nevada Secretary of State. **Exhibit 8**. Ms. Schulte signed the petition as managing member of Schulte Properties. *See* Second Bankruptcy, ECF No. 1.

14.    Schulte Properties failed to confirm a Chapter 11 plan in the second bankruptcy and requested dismissal. Accordingly, the court entered an order of dismissal on January 16, 2018. *Id.* at ECF No. 99.

### D.    The Third Bankruptcy

15.    Less than five months after receiving dismissal of its second bankruptcy, Schulte Properties commenced the instant third bankruptcy case by filing a Chapter 11 petition on May 10, 2018. ECF No. 1. Ms. Schulte signed the petition as managing member of Schulte Properties. *Id.*

16.    On September 12, 2018, Shellpoint filed its proof of claim reflecting a secured claim of $171,520.96, including pre-petition arrears of $54,510.99. **Exhibit 9**, Claim No. 16-1. The claim included supporting documentation, including payment history, payment breakdown, loan documents, an escrow analysis, and copies of the relevant court orders. These documents itemized the amounts owed under the loan and indicated Shellpoint updated its system to reflect treatment of its claim in accordance with the confirmation plan from the first bankruptcy. *Id.*

17.    Specifically, the proof of claim reflects a reduced principal balance of $128,870.89, with an interest rate of 5.00% and monthly payments of $708.60. Pursuant to the 410(A) Attachment, **<u>Schulte Properties and Ms. Schulte failed to make sixty-seven principal and interest payments between November 1, 2012 and May 1, 2018</u>**. *Id.* at 13.

18.    The loan history shows Shellpoint made various advances for taxes and insurance, resulting in an escrow balance. *Id.* These advances were made in accordance with the terms of the loan documents, as incorporated in the order on adequate protection and confirmation plan.

///

4

61851466;1

19. Shellpoint also incurred other post-confirmation/pre-petition fees associated with the debtor's default under the confirmed plan and loan documents, including late charges, attorneys' fees, foreclosure fees, inspection fees, appraisal fees, and property preservation fees. *Id.*

### III.  Legal Standard.

A proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *In re King St. Invs., Inc.*, 219 B.R. 848, 858 (B.A.P. 9th Cir. 1998). To rebut this presumption, a debtor must "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 COLLIER ON BANKRUPTCY § 502.02, at 502–22 (Lawrence King, 15th ed.1991)). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). "A response to an objection is sufficient if it states that written documentation in support of the proof of claim has already been provided to the objecting party and that the documentation will be provided at any evidentiary hearing or trial on the matter." LR 3007(b).

### IV.  ARGUMENT.

#### A.  Shellpoint's Claim is Entitled to a Presumption of Validity.

A proof of claim filed in accordance with 11 U.S.C. § 501 and the rules of procedure "constitutes prima facie evidence of the validity and amount of the claim." *In re Garner*, 246 B.R. 617, 621 (B.A.P. 9th Cir. 2000). To obtain the benefits of this presumption, the proof of claim must be in writing and substantially conform to the appropriate Official Form. Fed. R. Bankr. P. 3001(a). The form may be executed by the creditor or the creditor's authorized agent. Fed. R. Bankr. P. 3001(b). When the claim is based on a writing, there must be attached either the writing or an explanation of why or how the writing has been lost or destroyed. Fed. R. Bankr. P. 3001(c).

Here, Shellpoint filed a proper proof of claim using the appropriate form and attached relevant documentation to establish both the validity and amount of its interest against the property. The claim documents show that Shellpoint has a secured claim for $171,520.96, with pre-petition arrears of $54,510.99. This is based on an updated accounting ledger reflecting a principal balance

5

61851466;1

of $128,870.89, interest rate of 5.00%, and principal and interest payments of $708.60. Shellpoint's claim is presumptively valid. The burden thus rests on Schulte Properties to rebut Shellpoint's claim through evidence with "equal" probative force—a burden it has not, and cannot, satisfy.

### B.    The Principal Balance in Shellpoint's Claim is Correct.

Schulte Properties does not object to Shellpoint's claim on procedural grounds. Rather, Schulte Properties contends Shellpoint's claim does not constitute *prima facie* evidence because "the claimed amount is inconsistent with the Loan History attached to the claim" and thus is "self-contradictory." Objection, ECF No. 926 at 19 (citing *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)). Schulte Properties bases this argument on a fundamental misreading of the applied payments—a misreading that permeates throughout its entire objection.

According to Schulte Properties, the claim's loan history shows Shellpoint "received between $87,614.17 and $93,188.59" post-confirmation payments from Schulte Properties and Ms. Schulte. *See* Objection at 21. Schulte Properties does not provide an explanation for how it arrived at these numbers. As best Shellpoint can discern, Schulte Properties simply added every amount contained in the "funds received" column of Shellpoint's loan history without any regard to actual context. From this, Schulte Properties improperly presumes without basis that each of these supposed payments were timely made following the confirmed plan's effective date. *Id.* Schulte Properties then concludes that the actual principal balance should be "$86,286.79" based on approximately "127.58 payments of $708.60," rather than the correct principal balance of $128,870.89. *Id.*

As a preliminary matter, Schulte Properties is well aware that neither it nor Ms. Schulte paid anywhere near "127.58 payments of $708.60." For it to suggest otherwise to the court is nothing more than deception and borders on bad faith. It is also based on a blatant misreading of the accounting ledger.

Shellpoint acquired servicing rights of the subject loan in August 2015. Up until a few months before Shellpoint became involved, the prior servicers had not updated the loan history to reflect all the terms of the confirmed plan. Specifically, the original servicer failed to reset the principal balance to $132,000 and interest rate to 5.00%. This can be seen in the loan history entries

beginning 12/11/12, which reflect a starting principal balance well-below the actual balance detailed in the confirmed plan.

| Part 5: Loan Payment History from First Date of Default | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance |
| | 708.60 | | 708.60 | Regular Payment | 11/1/12 | 708.60 | | | | | | 101319.21 |
| | 708.60 | | 708.60 | Regular Payment | 12/1/12 | 1417.20 | | | | | | |
| 12/11/12 | | 708.60 | | Unapplied Payment | 7/1/09 | | | | | | 708.60 | |
| 12/11/12 | | 708.60 | | Unapplied Payment | 7/1/09 | | | | | | 708.60 | |
| 12/21/12 | | -317.76 | | Tax Bill 1 Disbursement | 7/1/09 | | | | -317.76 | | | |
| | 708.60 | | 708.60 | Regular Payment | 1/1/13 | 2125.80 | | | | | | |
| | 708.60 | | 708.60 | Regular Payment | 2/1/13 | 2834.40 | | | | | | |
| 2/19/13 | | -317.76 | | Tax Bill 1 Disbursement | 7/1/09 | | | | -317.76 | | | |
| | 708.60 | | 708.60 | Regular Payment | 3/1/13 | 3543.00 | | | | | | |
| 3/5/13 | | 708.60 | | Unapplied Payment | 7/1/09 | | | | | | 708.60 | |
| 3/5/13 | | 1397.99 | 1397.99 | Regular Payment | 2/1/10 | 3543.00 | 868.35 | 529.64 | | | | 100450.86 |
| 3/5/13 | | 218.19 | 218.19 | Regular Payment | 7/1/09 | 3543.00 | | | 218.19 | | | |
| | 708.60 | | 708.60 | Regular Payment | 4/1/13 | 4251.60 | | | | | | |
| 4/2/13 | | 708.60 | | Unapplied Payment | 7/1/09 | | | | | | 708.60 | |

Offical Form 410A                                                                                   Mortgage Proof of Claim Attachment

Ex. 9 at 4. This can also be seen in the CFR 1024 loan history entries beginning 7/17/11—just three months after the first payment due date under the confirmed plan—attached to Schulte Properties' objection, which shows an incorrect principal balance of $113,304.10.

| 09/21/11 | 07/01/09 | Tax Bill 1 Disbursement | 0 | 0 | (334.85) | 113,304.10 |
|---|---|---|---|---|---|---|
| 09/14/11 | 07/01/09 | Unapplied Payment | 0 | 0 | 708.60 | 113,304.10 |
| 09/14/11 | 07/01/09 | Unapplied Payment | 0 | 0 | 708.60 | 113,304.10 |
| 09/05/11 | 07/01/09 | Unapplied Adjust | 0 | 0 | 0.00 | 113,304.10 |
| 07/17/11 | 07/01/09 | Escrow Adjustment | 0 | 0 | (3,492.31) | 113,304.10 |

Objection, Ex. 2 at 36. This issue was corrected in the string of entries dated 3/30/15 – 4/16/15, in which previously applied payments (including those predating the confirmed plan) were zeroed out to obtain the correct starting principal figure of $132,000.00, and the interest/escrow payments were adjusted accordingly.

| 4/16/15 | 1616.18 | 1616.18 | Regular Payment | 8/1/09 | 21258.00 | 831.01 | 566.98 | 218.19 | 132000.00 |
|---|---|---|---|---|---|---|---|---|---|

*See* Ex. 9 at 7 (final 4/16/15 entry showing the correct principal balance of $132,000.00). As part of this curative process, the prior servicer re-applied twenty (20) mortgage payments of $1,616.18 **which pre-date the confirmed plan**. *See, e.g.*, **Exhibit 10** (monthly statement dated 7/15/2009 showing contractual monthly payments of $1,616.18); *compare with* Ex. 9 at 7 (showing contractual due dates predating confirmed plan); *see also* Ex.1 at ¶ 10. These were not "funds received" post-

7

61851466;1

1  confirmation as Schulte Properties erroneously contends in its objection, and Schulte Properties does
2  not provide any evidence to show otherwise.
3      Having reset the status quo, the payment history then shows that each of the $708.60
4  payments that Ms. Schulte *did* make were properly re-applied to the loan in accordance with the
5  confirmed plan.  These payments range from 4/1/11 (the first payment date under the confirmed
6  plan) through 10/1/12.

| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, Int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 10/1/12 | 21258.00 | 170.93 | 537.67 | | | | 131829.07 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 9/1/12 | 21258.00 | 170.22 | 538.38 | | | | 131658.85 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 8/1/12 | 21258.00 | 169.51 | 539.09 | | | | 131489.34 |

Offical Form 410A                                                              Mortgage Proof of Claim Attachment

**Mortgage Proof of Claim Attachment**

Case Number:     1812734
Debtor 1:        LLC Schulte Properties

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, Int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 7/1/12 | 21258.00 | 168.81 | 539.79 | | | | 131320.53 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 6/1/12 | 21258.00 | 168.11 | 540.49 | | | | 131152.42 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 5/1/12 | 21258.00 | 167.41 | 541.19 | | | | 130985.01 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 4/1/12 | 21258.00 | 166.71 | 541.89 | | | | 130818.30 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 3/1/12 | 21258.00 | 166.02 | 542.58 | | | | 130652.28 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 2/1/12 | 21258.00 | 165.33 | 543.27 | | | | 130486.95 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 1/1/12 | 21258.00 | 164.65 | 543.95 | | | | 130322.30 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 12/1/11 | 21258.00 | 163.96 | 544.64 | | | | 130158.34 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 11/1/11 | 21258.00 | 163.28 | 545.32 | | | | 129995.06 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 10/1/11 | 21258.00 | 162.61 | 545.99 | | | | 129832.45 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 9/1/11 | 21258.00 | 161.93 | 546.67 | | | | 129670.52 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 8/1/11 | 21258.00 | 161.26 | 547.34 | | | | 129509.26 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 7/1/11 | 21258.00 | 160.59 | 548.01 | | | | 129348.67 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 6/1/11 | 21258.00 | 159.92 | 548.68 | | | | 129188.75 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 5/1/11 | 21258.00 | 159.26 | 549.34 | | | | 129029.49 |
| 4/17/15 | | 708.60 | 708.60 | Regular Payment | 4/1/11 | 21258.00 | 158.60 | 550.00 | | | | 128870.89 |
| 4/17/15 | | -18311.98 | | Unapplied Adjust | 3/1/11 | | | | | | -18311.98 | |

24  Ex. 9 at 7, 8.  It is from these payments—which the servicer actually did receive following post-
25  confirmation—that the accounting reflects the proper outstanding principal balance of $128,870.89.
26  The loan history then shows that Ms. Schulte failed to make sixty-seven (67) monthly payments of
27  $708.60 between November 1, 2012 – May 1, 2018.  *Id.* at 8-12; Ex. 1 at ¶ 13.  This fact is
28  consistent with Ms. Schulte's *own* deposition testimony:

AKERMAN LLP
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS, NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

> **Q**.  Okay. So every single month, you sent in a payment of $708.60?
>
> **A**.  I did until when I got the return envelope back in 2013 saying that there was no forwarding address for Litton Loan Servicing . . ..
>
> * * *
>
> **A**   All payments were made in a timely manner until 2013, when that envelope came back.
>
> **Q**.  Okay.
>
> **A**.  After the envelope came back with no forwarding address to get to Litton or anybody else, **those payments were not made**.

**Exhibit 11** at 26, 31 (emphasis added).

In short, Shellpoint's system incorporates the modification of the loan in the Debtor's confirmed bankruptcy plan, and its records reflect a secured claim of $132,000.00 amortized over thirty (30) years at 5.00% interest per annum with principal and interest payments of $708.60 per month commencing April 1, 2011 and continuing until March 1, 2041. Ex. 1 at ¶ 10. Ms. Schulte made roughly nineteen (19) payments under the plan before failing to make sixty-seven (67) payments in violation of her obligations. This resulted in a principal balance of **$128,870.89**. Shellpoint verified completion of system updates to reflect the terms of the confirmed plan and completed multiple audits to verify its compliance with the confirmed plan. *Id*. Schulte Properties offers nothing but a misreading of the accounting records and a flagrant misrepresentation of its own payments. It attaches no evidence showing it made any payments under the plan that were not included in Shellpoint's claim. The court should reject Schulte Properties' attempt to improperly reduce the principal balance.[1]

///

---

[1] Schulte Properties also argues the principal should be reduced by $3,543 to reflect post-filing, pre-confirmation payments made pursuant to the parties' stipulated adequate protection order and the $702.97 "funds on hand." *See* Objection at 21. These arguments lack merit. Nothing in the adequate protection order modified Shellpoint's claim prior to confirmation of the plan. The protection order simply required Ms. Schulte to make monthly payments based on a *presumed* principal claim value of $132,000.00. These payments were applied to the loan; however, the confirmation plan reset the principal value to $132,000.00 notwithstanding any prior payments. The pre-confirmation payments have no bearing on the current principal amount. Further, the $702.97 "funds on hand" do not reduce the principal balance until they are applied as such. To argue these funds should preemptively reduce Shellpoint's claim is illogical. In fact, the funds are already accounted for as a credit in the arrearages owed. *See* Ex. 9 at 13.

61851466;1

**C.     The Fees and Costs in Shellpoint's Claim are Correct.**

Schulte Properties objects to Shellpoint's fees and costs.  Schulte Properties contends the fees and costs are improper because it already "overpaid its obligations by over $30,000."  Objection at 23.  This argument is based on the same flawed and deceptive representation regarding its supposed payments on the loan addressed above and fails for the same reasons.  Schulte Properties and its principal did not overpay; they failed to make any payments for roughly five years and are severely delinquent on their obligations.  The fees and costs were incurred due to Schulte Properties and Ms. Schulte's *own* failure to abide by the terms of the confirmation plan.  *See* Section B.  Schulte Properties must live with the consequences.

With respect to Schulte Properties' specific objections as to the reasonableness of the costs, these objections also fail:

- Schulte Properties argues the $329 fee for property inspection is not reasonable because they are unlikely to "garner information" that is "essential to proper prosecution of a foreclosure suit." Objection at 23 (citing *In re Burwell*, 107 B.R. 62, 66–67 (Bankr. E.D. Pa. 1989)).  It is unclear where Schulte Properties obtained this number.  Shellpoint claims $286 in property inspection fees.  Ex. 9 at 13.  Further, Shellpoint is not engaged in a foreclosure suit.  The purpose of the property inspections is to ensure the property is being maintained so that Shellpoint's interest remains protected.  This is a routine aspect of loan servicing.

- Schulte Properties argues the $660 for two appraisals is unreasonable because the property value is not at issue.  It is unclear where Schulte Properties obtained this number.  Shellpoint claims $310 in appraisal costs.  Ex. 9 at 13.  Schulte Properties argument is also incorrect.  Schulte Properties' own objection recognizes that the property value is relevant to secured claims under 11 U.S.C. § 506(b).  Further, due to Schulte Properties' failure to abide by the confirmation plan, Shellpoint may ultimately need to pursue foreclosure.  Monitoring property value is a critical aspect of that preparation.

10

61851466;1

- Schulte Properties objects to the $3,662 and $3,640 in foreclosure costs, citing a case in which the debtors had cured the default under the loan, rendering foreclosure costs inapplicable. It is again unclear where Schulte Properties obtained these numbers. Shellpoint claims $4,079 in foreclosure related costs. Ex. 9 at 13. Further, this is not a case where the debtor cured the default. Schulte Properties remains severely delinquent on the loan.

- Schulte Properties objects to $550 in attorney costs. Attorneys fees were incurred to evaluate foreclosure proceedings due to Schulte's default.

Shellpoint's fees and costs are properly supported in its claim, and the court should allow these amounts in full.

### D. The Past Interest Due in Shellpoint's Claim are Correct.

Schulte Properties does not dispute Shellpoint is generally entitled to interest due prior to its petition. Rather, Schulte Properties objects to Shellpoint's interest as improperly calculated based on the effective date of the confirmation plan. Schulte Properties' argument is again premised on an entirely incorrect representation regarding the amount it and Ms. Schulte have paid towards the loan. Schulte Properties simply ignores the fact that no payments were made over a five-year period and asks the court to adjust the interest accrued based on an *assumption* of full and timely payments in the erroneous amount of $90,401.38. Neither law nor fact support this argument. *See* Section B.

Shellpoint's system reflects the correct interest rate commencing April 1, 2011. *See* Ex. 1 at ¶¶ 10, 11. The loan history confirms that interest adjustments were made to the outstanding balance to ensure accurate compliance with the confirmation plan. *See* Ex. 9 at 6. Shellpoint further confirmed the accuracy of these amounts through multiple internal audits. *See* Ex. 1 at ¶ 10. Schulte Properties offers no evidence to rebut the accuracy of these amounts. The court should summarily reject Schulte Properties' objection as to interest.

### E. The Escrow Deficiency in Shellpoint's Claim is Proper.

Schulte Properties objects to Shellpoint's inclusion of an escrow deficiency in its claim. *See* Objection at 26, 27. Schulte Properties bases this objection on two arguments: (1) Shellpoint should not have paid taxes and property insurance through an escrow account pursuant to the orders in Ms.

11

61851466;1

Schulte's personal bankruptcy action; and (2) Shellpoint's claim does not meet its burden of showing the amounts in question were actually paid and non-duplicative. Both arguments lack merit.

**First**, Shellpoint was fully within its contractual rights under the loan documents to pay taxes and insurance on the debtor's behalf and seek recovery through an escrow impound. Ex. 3 at ¶¶ 1-5, 9. While the stipulated adequate protection order contemplated Ms. Schulte's maintenance of taxes and insurance for the property, it did not modify the loan documents with respect to escrow. *See* Ex. 5 (noting Ms. Schulte's obligations under the protection order remained consistent with "the terms of the Note and Deed of Trust."). Further, the confirmation plan did not address payment of taxes or insurance, or else include any mandatory default provisions. *Id.* Instead, just like the order on adequate protection, treatment under the confirmation plan was made "in accordance with all other terms of [BoNYM's] related note and mortgage." *Id.* Accordingly, the subject loan documents fully control payment of the taxes/insurance post confirmation. As Ms. Schulte concedes she did not pay all taxes and insurance in a timely manner, Shellpoint was fully justified in advancing escrow funds.

**Second**, Shellpoint has more than met its initial burden of showing the escrow deficiency is proper. Shellpoint's proof of claim includes an accounting of escrow payments and deductions made on the account. *See* Ex. 9 at 4-12. To the extent any duplicative payments for taxes and/or insurance for the property were made by both Ms. Schulte and Shellpoint, these amounts were refunded and applied to the loan and reflected in Shellpoint's system. Ex. 1 at ¶ 14. Shellpoint's proof of claim also includes an escrow analysis and copies of the relevant confirmation order and confirmed plan demonstrating the loan documents control this issue. *See* Ex. 9 at 15, 16; Attachments to Claim. These documents constitute *prima facie* evidence of the escrow deficiency's validity.

Schulte Properties concedes Shellpoint is entitled to reimbursement of these out of pocket expenses but argues Shellpoint has not shown the advances were paid "to the appropriate entities, not later refunded, and which did not provide a duplication of services." Objection at 28. But this is precisely what Shellpoint's claim documents demonstrate. *See* Ex. 9 at 4-12.; Ex. 1 at ¶ 14. Schulte Properties' objection offers nothing but metaphysical doubt as to the veracity of these escrow

12

61851466;1

1 amounts.[2]  This is plainly insufficient to overcome the presumption of validity.  The court should reject Schulte Properties' objection as to the escrow deficiency.

### F. Shellpoint Did Not Violate the Automatic Stay/Confirmation/Discharge Order

In a final attempt to obtain a windfall and reduce Shellpoint's valid claim, Schulte Properties asks the court to consider alleged violations in evaluating Shellpoint's claim as a matter of equity. Shellpoint has not violated any orders in the prior bankruptcy and already fully addressed these meritless allegations in its opposition to Ms. Schulte's motion for contempt. *See* First Bankruptcy, ECF No. 1342.  Shellpoint incorporates this opposition by reference.  Shellpoint acted reasonably by sending informational statements to Ms. Schulte following her default under the confirmed plan and has reviewed its internal system on numerous occasions to ensure compliance with the confirmed plan.  If any party is in violation of the bankruptcy court's orders, it is Ms. Schulte and Schulte Properties for failure to make required payments and continuing to abuse the bankruptcy process. To the extent the court considers equity in evaluating Shellpoint's claim, equity clearly weighs in Shellpoint's favor.

### IV. CONCLUSION.

Shellpoint filed a proper proof of claim using the appropriate form and attached relevant documentation to establish both the validity and amount of its interest against the property. The claim documents show that Shellpoint has a secured claim for $171,520.96, with pre-petition arrears of $54,510.99.  This claim is entitled to a presumption of validity and nothing in Schulte Properties' objection overcomes this presumption.  The court should approve Shellpoint's claim in full.

DATED this 26th of January, 2022.         **AKERMAN LLP**

*/s/ Natalie L. Winslow*
ARIEL E. STERN, ESQ., Nevada Bar No. 8276
NATALIE L. WINSLOW, ESQ., Nevada Bar No. 12125
NICHOLAS E. BELAY, ESQ., Nevada Bar No. 15175
1635 Village Center Circle, Suite 200
Las Vegas, NV 89134
*Attorneys for NewRez LLC dba Shellpoint Mortgage Servicing*

---

[2] Schulte Properties notes the entries dated 3/31/15 appear to reference escrow payments with a 7/1/09 due date.  As explained in Section B, the original servicer had not adjusted the loan history to reflect the confirmation plan in certain respects.  These issues were corrected by way of the bulk entries dated 3/30/15 – 4/16/15, which included multiple escrow adjustments.  These entries do not reflect amounts received post-confirmation.

13

61851466;1

# CERTIFICATE OF SERVICE

On January 26, 2022, I served the following document: **RESPONSE TO DEBTOR'S OBJECTION TO CLAIM #16 (SHELLPOINT MORTGAGE SERVICING/1392 ECHO FALLS)**. I served the above-named document by the following means to the persons as listed below: *(Check all that apply)*

☒ **a.    ECF System -** The Court's CM/ECF systems sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

☐ **b.    United States mail, postage fully prepaid**

☐ **c.    Personal Service -** I personally delivered the document(s) to the persons at these addresses: N/A.

☐    For a party represented by an attorney, delivery was made by handing the document(s) to the attorney or by leaving the documents(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documents(s) in a conspicuous place in the office: N/A.

☐    For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there: N/A.

☐ **d.    By direct mail (as opposed to through the ECF System).**

☐ **e.    By fax transmission**

☐ **f.    By messenger**

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed on: January 26, 2022

| Carla Llarena | /s/ Carla Llarena |
|---|---|
| (Name of Declarant) | (Signature of Declarant) |

14

61851466;1

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | Declaration of Shellpoint Mortgage Servicing |
| Exhibit 2 | Deed of Trust |
| Exhibit 3 | Assignment of Deed of Trust |
| Exhibit 4 | Grant Bargain Sale Deed |
| Exhibit 5 | Stipulation for Adequate Protection |
| Exhibit 6 | Order on Stipulation for Adequate Protection |
| Exhibit 7 | Order Confirming the Debtor's Chapter 11 Plan for Reorganization |
| Exhibit 8 | Voluntary Petition for Bankruptcy |
| Exhibit 9 | Proof of Claim |
| Exhibit 10 | Monthly Statement |
| Exhibit 11 | Deposition of Melanie Schulte |

61851466;1