_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
January 28, 2022

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

In re:                                    ) Case No.: 18-12734-MKN
                                          ) Chapter 11
SCHULTE PROPERTIES LLC,                   )
                                          )
            Debtor.                       ) Date:  January 19, 2022
                                          ) Time:  9:30 a.m.
                                          )

**ORDER ON MOTION TO DISMISS OR, IN THE ALTERNATIVE, CONVERT CASE PURSUANT TO 11 U.S.C. § 1112(b)** [1]

On January 19, 2022, the court heard the Motion to Dismiss or, in the Alternative, Convert Case Pursuant to 11 U.S.C. § 1112(b) ("Motion") brought by U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust, Chalet Series III Trust, and Bungalow Series IV Trust ("USB"). The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.

**PRE-PETITION BACKGROUND** [2]

---

[1] In this Order, all references to "ECF No." are to the number assigned to the documents filed in the case as they appear on the docket maintained by the clerk of court. All references to "2009 ECF No." are to the number assigned to the documents filed in Case No. 09-29123-MKN. All references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure.

[2] Pursuant to Federal Rule of Evidence 201(b), the court takes judicial notice of all documents appearing on the docket in this bankruptcy proceeding. See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); Lawson v. Klondex Mines Ltd., 2020 WL 1557468, at *5 (D. Nev. March 31, 2020); Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015).

On October 11, 2009, William R. Schulte and Melani Schulte ("Schultes"), husband and wife, filed a voluntary petition for reorganization under Chapter 11 ("2009 Bankruptcy").[3] The Schultes' assets consisted of numerous rental properties located in Las Vegas, North Las Vegas, and Henderson, Nevada. Ownership of each rental property was held by separate entities, each of which filed separate Chapter 11 proceedings.[4] The 2009 Bankruptcy commenced by the Schultes was jointly administered with the Chapter 11 proceedings of the separate entities.[5]

On March 8, 2011, an order ("Confirmation Order") was entered confirming the Schultes' proposed "Third Amended Plan of Reorganization" ("Confirmed Plan") in the 2009 Bankruptcy.[6] Among other things, the Confirmed Plan also directed the Schultes to "transfer title to their properties to a Nevada limited liability company (the "Holding Company"), for liability purposes."[7] The Holding Company referenced in the Confirmed Plan was not immediately created. The Confirmation Order was not appealed, its provisions were never stayed, and no amendments to the Confirmation Order or the terms of the Confirmed Plan were ever sought.

On February 10, 2012, the Schultes filed for divorce and Melani Schulte was awarded the various rental properties as her sole and separate property. Thereafter, the properties were transferred to Melani Schulte pursuant to the divorce decree.

---

[3] Case No. 09-29123-MKN, ECF No. 1 (joint administration of multiple cases; originally assigned to Bankruptcy Judge Bruce A. Markell, later transferred to Chief Bankruptcy Judge Bruce T. Beesley, and then reassigned to Bankruptcy Judge Mike K. Nakagawa).

[4] Those separate Chapter 11 proceedings were: 2704 Sattley LLC, Case No. 09-27238-BAM; Hot Endeavor LLC, Case No. 09-27909-BAM; 1341 Minuet LLC, Case No. 09-27910-BAM; 1708 Plato Pico LLC, Case No. 09-27911-BAM; 2228 Warm Walnut LLC, Case No. 09-27912-BAM; 9425 Valley Hills LLC, Case No. 09-27913-BAM; 9500 Aspen Glow LLC, Case No. 09-27914-BAM; 5218 Misty Morning LLC, Case No. 09-27916-BAM; Cherish LLC, Case No. 09-28513-BTB; Sabreco Inc., Case No. 09-31584-MKN; and Keep Safe LLC, Case No. 09-31585-BAM.

[5] Case No. 09-29123-MKN, ECF No. 128.

[6] Case No. 09-29123-MKN, ECF No. 912.

[7] Case No. 09-29123-MKN, ECF No. 912, Exhibit A § 5.03 (Emphasis in original).

On December 15, 2015, in the 2009 Bankruptcy, the Schultes received their Chapter 11 discharge.[8]

On or about May 30, 2017, pursuant to the Confirmation Order, Melani Schulte transferred the rental properties to a holding company entitled Schulte Properties LLC ("Debtor").

On May 31, 2017, facing foreclosure proceedings, Debtor filed for Chapter 11 bankruptcy protection ("2017 Bankruptcy").[9]

On January 16, 2018, Debtor voluntarily dismissed the 2017 Bankruptcy in anticipation of resolving disputes surrounding the amounts owed to the various lenders as a result of the Confirmed Plan in the 2009 Bankruptcy and the individual discharge obtained by the Schultes.[10] Following dismissal of the 2017 Bankruptcy, and in further compliance with the Confirmation Order, Melani Schulte continued to transfer additional properties to the Debtor.

On May 10, 2018, facing continued foreclosure proceedings, Debtor again commenced the instant Chapter 11 bankruptcy proceeding ("2018 Bankruptcy"). (ECF No. 1). On the same date, a notice of the Chapter 11 filing was issued scheduling a meeting of creditors ("341 Meeting") for June 14, 2018, as well as a deadline of September 12, 2018, for creditors to file proofs of claim ("Claim Deadline"). (ECF No. 3). The 341 Meeting was concluded on September 23, 2018.

## POST-PETITION BACKGROUND

On May 24, 2018, Debtor filed its schedules of assets and liabilities ("Schedules"), Statement of Financial Affairs ("SOFA"), and other required information.[11]

---

[8] Case No. 09-29123-MKN, ECF No. 1182.

[9] Case No. 17-12883-MKN, ECF No. 1.

[10] Case No. 17-12883-MKN, ECF No. 99 (The court found cause exists to dismiss the Chapter 11 bankruptcy case "without prejudice pursuant to 11 U.S.C. [§] 1112(b).").

[11] FRBP 1007(c) allows a debtor to, within 14 days of filing a voluntary bankruptcy petition, file "the schedules, statements, and other documents" as required under this rule. Debtor filed its voluntary petition on May 10, 2018. (ECF No. 1). Debtor filed its Schedules, SOFA, and other documents on May 24, 2018. (ECF No. 26).

3

On September 12, 2018, the Claims Deadline expired, and numerous proofs of claim had been timely filed by creditors holding claims secured by the various rental properties. Some of the claims were filed by USB and other timely claims subsequently were assigned to USB.

On November 29, 2018, Debtor filed a motion for authority to borrow funds from Melani Schulte on a post-petition basis, as debtor in possession, pursuant to Section 364 ("DIP Financing Motion"). (ECF No. 138).

On February 14, 2019, an order was entered granting in part and denying in part the DIP Financing Motion ("DIP Financing Order"). (ECF No. 190).

On February 27, 2019, Debtor filed its first plan of reorganization and disclosure statement. (ECF Nos. 201-202). Debtor's disclosure statement was set for hearing on April 17, 2019 (ECF No. 205) and was further continued as a status hearing for May 29, 2019.

On April 10, 2019, Debtor filed its amended Disclosure Statement, along with Debtor's Amended Chapter 11 Plan No. 2 ("Plan No. 2"). (ECF Nos. 345-346). The amended Disclosure Statement and Plan No. 2 were noticed to be heard on May 29, 2019. The Disclosure Statement was approved at the hearing on May 29, 2019 but was further continued for status several times. As of the date of this order, no Chapter 11 plan has been confirmed.

On May 21, 2021, USB filed a motion in the instant 2018 Case seeking to "clarify" the treatment of its claims (or claims of its predecessors in interest) under the confirmed Chapter 11 plan in the Schultes' personal 2009 Bankruptcy. (ECF No. 855).

On May 25, 2021, USB filed its Clarification Motion in the 2009 Bankruptcy (2009 ECF No. 1351).

On May 28, 2021, Debtor issued 106 separate subpoenas seeking loan documents and other information from creditors asserting claims secured by the various rental properties. (ECF No. 860).

On July 20, 2021, an order was entered denying the Clarification Motion without prejudice. (2009 ECF No. 1372).

On November 17, 2021, the court heard and took under submission separate motions by secured creditors Shellpoint Mortgage Servicing and Fifth Third Mortgage Company seeking

protective orders from the document subpoenas issued by the Debtor.

On December 17, 2021, USB filed the instant Motion. Attached as exhibits to the Motion are copies of various documents previously filed by the Debtor in the instant 2018 Case. The Motion was noticed for hearing on January 19, 2022. (ECF Nos. 918, 919, and 920).

On January 5, 2022, Debtor filed an opposition to the Motion ("Opposition") along with a declaration of Melani Schulte ("Schulte Declaration"). (ECF Nos. 930-931).

On January 14, 2022, Selene Finance, LP, as servicer and attorney-in-fact for Wilmington Savings Fund Society, FSB, DBA Christiana Trust, Not Individually but as Trustee for Premium Mortgage Acquisition Trust and Community Loan Servicing, LLC f/k/a Community Loan Servicing, LLC f/k/a Bayview Loan Servicing, LLC filed a joinder to USB's Motion. (ECF No. 933). As of the date of the hearing, no reply to the Opposition had been filed by USB or any of the joining creditors.

**DISCUSSION**

USB seeks to dismiss the Chapter 11 proceeding or convert the case to Chapter 7 liquidation, whichever is in the best interests of creditors and the estate, for "cause" under Section 1112(b)(1). A non-exclusive list of examples of cause appears in Section 1112(b)(4). USB asserts that cause exists under subparagraphs (b)(4)(E) and (b)(4)(F). The former subparagraph describes cause as a "failure to comply with an order of the court," while the latter subparagraph describes cause as an "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." The burden of proof lies with USB as the moving party. See In re Rosenblum, 608 B.R. 529, 536 (Bankr. D. Nev. 2019).

In the event cause is established, Section 1112(b)(2) provides that dismissal or conversion may not be granted "if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that (A) there is a reasonable likelihood that a plan will be confirmed…within a reasonable time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than

paragraph (4)(A)…for which there exists a reasonable justification for the act or omission…and…that will be cured within a reasonable period of time fixed by the court." (Emphasis added).

    USB alleges that the Debtor violated the DIP Financing Order by borrowing excessive funds in October 2019 and November 2019, as well as in January 2020. The violation would constitute cause under Section 1112(b)(4)(E). USB also argues that the Debtor failed to timely file a monthly operating report ("MOR") on many occasions during this lengthy Chapter 11 proceeding. The violation would constitute cause under Section 1112(b)(4)(F).

    Effective January 23, 2019, Debtor was authorized "to borrow from Melani Schulte amounts up to $10,000 per month until such time that an order confirming a plan of reorganization is entered…" DIP Financing Order at 2:8-10. Loans made prior to that date were disallowed and the order was entered "without prejudice to the U.S. Trustee seeking appointment of a Chapter 11 trustee in the future." Id. at 2:18-19. There is no apparent dispute that the post-petition loans made to the Debtor prior to January 23, 2019, were in the total amount of $33,220. See DIP Financing Motion at 7:4-9.[12]

    On October 1, 2020, Debtor filed its MOR for the period ending August 31, 2020 ("October MOR"). (ECF No. 742). The Statement of Cash Receipts and Disbursements attached to that MOR includes 40-line items. See October MOR at p. 19 of 26. Line item 4 for "Borrowings" reflects $0.00 for August 2020, and $3,000.00 for the entire period of the 2018 Bankruptcy. Line item 5 for "Funds from Shareholders, Partners, or Other Insiders" reflects no such receipts for August 2020, nor for the entire period of the 2018 Bankruptcy Line item 6 for "Capital Contributions" reflects no such receipts for August 2020, nor for the entire period of the 2018 Bankruptcy. Line item 9 for "LLC Member Contribution," however, reflects the receipt of

---

[12] On January 17, 2019, Debtor filed its MOR for the period ending December 31, 2018. (ECF No. 163). Attached to that report is a Statement of Cash Receipts and Disbursements. For the entire period of the 2018 Bankruptcy, that report shows $3,000 in "Borrowings" and $17,500.00 in "LLC Member Contributions." It is not clear why the Debtor's report of cash receipts for borrowing and LLC member contributions through December 31, 2018, would be far less than the amount represented in the DIP Financing Motion.

6

$10,000 for August 2020 and $209,029.00 for the entire period of the 2018 Bankruptcy.[13]

Because a Chapter 11 plan has never been confirmed, Debtor has been authorized by the DIP Financing Order for the past thirty-six months to borrow $10,000 each month. For the 20-month period from January 2019 through August 2020, the authorized amount apparently would have been a total of $200,000. Because the $209,029 cumulative figure in the October MOR includes the post-petition amounts that were disallowed by the DIP Financing Order, it is not clear at all whether the Debtor exceeded the $200,000 total amount permitted by the subject order. While Debtor's written opposition is virtually non-responsive,[14] the materials on which USB bases its request[15] simply do not demonstrate that the DIP Financing Order actually was violated.

There is no question, however, that the Debtor has been delinquent in filing the MORs in this 2018 Bankruptcy. The filings have been sporadic and untimely, but prior to the hearing in this matter the Debtor filed operating reports through the end of 2020. (ECF Nos. 939, 940, 941, and 942). In response to the Motion, Debtor explains that the COVID-19 pandemic and other health-related problems have prevented operating reports from being prepared, reviewed, and

---

[13] It is not clear why the $10,000 amount for August 2020 appeared on the LLC Member Contribution line rather than the Borrowings line. If Melanie Schulte intended to make a capital contribution to the Debtor rather than a loan to the bankruptcy estate, it arguably would not have been an extension of credit encompassed by Section 364. The MOR Statement of Cash Receipts and Disbursements form specifically includes a line item for Capital Contributions.

[14] Rather than focusing on whether the Debtor ever borrowed more than $10,000 from Melanie Schulte in any given month after January 23, 2019, Debtor simply asserts that "it is not doing" the alleged violation of the DIP Financing Order. See Opposition at 2:7. Other than seeking to excuse the delinquent filing of the operating reports, Debtor then proceeds to address matters immaterial to the Motion, e.g., whether secured creditors violated the Schulte's prior confirmed plan and discharge, etc. Nowhere in the Schulte Declaration, however, does the Debtor's principal even address how much she loaned the Debtor each month.

[15] USB's only evidence in support of the Motion consists of documents filed by the Debtor for which USB apparently requests the court to take judicial notice. USB offers no declaration, affidavits, discovery responses, or other evidence, however, directly addressing whether the Debtor violated the DIP Financing Order.

7

filed on a timely basis. See Schulte Declaration at ¶¶ 6 and 7.[16]  Debtor represents that qualified and presumably healthy personnel are now available to ensure that the MORs are brought current shortly and will be timely filed in the future. Id.[17]

More than two years ago, Debtor filed proposed Plan No. 2 and obtained approval of the accompanying Disclosure Statement. Since then, several efforts to settle certain claims have been made, with limited success. The intervening COVID-19 pandemic has been unpredictable and devastating, and the responses arguably even worse. But none of these circumstances excuse significant further delay where the Debtor already had proposed Plan No. 2, presumably in good faith.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss or, in the Alternative, Convert Case Pursuant to 11 U.S.C. § 1112(b) brought by U.S. Bank Trust National Association as Trustee of the Lodge Series III Trust, Chalet Series III Trust, and Bungalow Series IV Trust, Docket Nos. 918 and 919, be, and the same hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that all monthly operating reports must be current no later than **February 28, 2022**, including the report due for the period ending January 31, 2022. In the event Debtor fails to bring all such reports current by February 28, 2022, or thereafter fails to timely file any subsequent monthly operating report, the Office of the United States Trustee shall submit an order directing the appointment of a Chapter 11 trustee.

---

[16] At the hearing, Debtor's counsel explained that the COVID pandemic also was impacting his law firm, and that other personnel assisting the Debtor had significant non-COVID health issues.

[17] Debtor apparently suggests "on information and belief" that its "bank statements have been sent to the Bankruptcy Court Clerk's office," see Schulte Declaration at ¶ 8, but there is no such requirement. Moreover, Debtor argues that it "would even be willing to concede to an Order requiring future timely filing of monthly operating reports as a requirement for the Debtor to remain in Chapter 11." See Opposition at 11:5-7. It is not quite clear why Debtor believes its willingness to "concede" to what it already is required to do is somehow important. By its terms, the DIP Financing Order was granted without prejudice to a Chapter 11 trustee being sought by the Office of the United States Trustee. For nearly four years, Debtor has operated under the protection of the automatic stay without confirming a Chapter 11 plan of reorganization. Whether a Chapter 11 trustee is more likely to achieve confirmation is not presently before the court.

**IT IS FURTHER ORDERED** that the Debtor shall have until **April 29, 2022,** to file a further amended plan of reorganization and accompanying disclosure statement.  In the event Debtor fails to timely file a further amended plan of reorganization and accompanying disclosure statement, the Office of the United States Trustee shall submit an order directing the appointment of a Chapter 11 trustee.

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:

SCHULTE PROPERTIES LLC
ATTN:  OFFICER OR MANAGING AGENT
9811 W. CHARLESTON BLVD STE 2-351
LAS VEGAS, NV 89117

# # #